Appeal No. 22-1148

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

EMINA GEROVIC,

*Plaintiff-Appellant,*

v.

CITY AND COUNTY OF DENVER, *et al.*

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Colorado in Case No. 1:19-cv-03710-RM-NRN
Judge Raymond P. Moore

_____

## APPELLANT'S CORRECTED OPENING BRIEF
## ORAL ARGUMENT REQUESTED

_____

Nathan Davidovich
Davidovich Law Firm, LLC
501 S. Cherry St.
Suite 1100
Denver, Colorado 80246-1325
Tel: 303-825-5529
Fax: 720-409-3668
nathandavidovich@talk-law.com
*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

Table of Contents.................................................................................................. ii

Table of Authorities ............................................................................................iv

Jurisdictional Statement ......................................................................................1

Statement of the Issues.........................................................................................1

Statement of the Case...........................................................................................3

    I.      Factual Background ...............................................................................3

    II.     Procedural History ..............................................................................13

Summary of the Argument.................................................................................16

Argument.............................................................................................................19

    I.      The District Court Erred by Granting the City Defendants' Motion for
           Summary Judgment .............................................................................19

          A. Standard of Review: The *McDonnell Douglas* Modified Summary
             Judgment Standard............................................................................19

          B. Gerovic submitted sufficient evidence to establish a reasonable
             probability that she would not have been fired were she not a non-
             Hispanic Caucasian.........................................................................21

          C. Gerovic properly exhausted her administrative remedies by raising a
             national origin discrimination claim in her EEOC complaint ...........32

          D. Gerovic submitted sufficient evidence giving rise to an inference of
             discrimination based on national origin.............................................34

          E. Gerovic submitted sufficient evidence linking her firing with a
             protected activity .............................................................................36

F.  Gerovic submitted sufficient evidence that the City Defendants' reasons for firing her were pretextual ................................................ 40

II.    The District Court Erred by Granting the HSS Defendants' Motion for Summary Judgment as to Gerovic's §1983 Claims ............................... 45

A.  Summary Judgment Standard ............................................................ 45

B.  Gerovic submitted sufficient evidence that the HSS Defendants were the proximate cause of the violation of her Fourteenth Amendment Equal Protection rights ...................................................................... 47

Conclusion ........................................................................................................ 49

Statement Regarding Oral Argument .................................................................. 49

Certificate of Compliance With Type-Volume Limit

Orders Under Review and Final Judgment

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136 (10th Cir. 2008).46

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998)........................28, 46

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .........................................47

*Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005)..................................................47

*Bonner v. Casaus,* No. CIV 07-1205 MV/WDS, 2009 WL 10708924 (D.N.M. Feb. 25, 2009).......................................................................... 22-23, 25-26

*Bowdish v. Fed. Express Corp.,* 699 F. Supp. 2d 1306 (W.D. Okla. 2010)......22, 29

*Bradley v. Denver Health & Hosp. Auth.,* 734 F. Supp. 2d 1186 (D. Colo. 2010).22

*Brill v. Correct Care Sols., LLC*, 286 F. Supp. 3d 1210 (D. Colo. 2018)...............48

*Cackovic v. HRH Chicago, LLC*, No. 12-CV-07386, 2014 WL 2893198 (N.D. Ill. June 26, 2014).......................................................................................35

*Carney v. City & Cnty. of Denver*, 534 F.3d 1269 (10th Cir. 2008)...........21, 34, 37

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................46

*Daneshvar v. Graphic Tech., Inc.,* 18 F.Supp.2d 1277 (D.Kan.1998) ...................33

*Drake v. City of Fort Collins,* 927 F.2d 1156 (10th Cir.1991)...............................19

*Dudark v. Sw. Med. Ctr., LLC*, No. CIV-13-401-M, 2014 WL 1745049 (W.D. Okla. May 1, 2014)..............................................................................22, 23, 30

*EEOC v. Flasher Co., Inc.,* 986 F.2d 1312 (10th Cir.1992)...................................20

*E.E.O.C. v. PVNF, LLC*, 487 F.3d 790 (10th Cir. 2007)........................................37

*Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253 (10th Cir.1998)......................32

*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215 (10th Cir. 2006) ....................40

*Herrera v. Santa Fe Pub. Sch.*, 41 F. Supp. 3d 1027 (D.N.M. 2014)....................48

*Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187 (10th Cir. 2008) ...............41, 45

*Horn v. United States Dep't of Health & Hum. Servs.*, 564 F. Supp. 3d 834 (D.S.D. 2021) ....................................................................................................................27

*Jackson v. City & Cty. of Denver*, 628 F. Supp. 2d 1275 (D. Colo. 2008).............41

*Jackson v. Curry Cty.*, 343 F. Supp. 3d 1103 (D.N.M. 2018)................................48

*Jones v. United Parcel Serv.,* 502 F.3d 1176 (10th Cir.2007)...............................32

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000)..20, 34, 40

*Kenworthy v. Conoco, Inc.,* 979 F.2d 1462 (10th Cir.1992) ..................................36

*Kimble v. Wisconsin Dep't of Workforce Dev.*, 690 F. Supp. 2d 765 (E.D. Wis. 2010) ................................................................................................................ 27-28

*Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018)....................................32

*Luke v. Hosp. Shared Servs.,* No. 10-CV-03087-WJM-BNB, 2012 WL 1833425 (D. Colo. May 21, 2012)........................................................................................36

*Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968 (10th Cir.1979) .....................34

*Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212 (10th Cir. 2021) ..............................................................................................................................19, 45

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)........19-20, 27, 40-41, 45

*McGarry v. Bd. of Cty. Comm'rs of Cty. of Pitkin*, 175 F.3d 1193 (10th Cir. 1999) ....................................................................................................................21

*Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434 (D. Colo. 2007) ..............37

*Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160 (10th Cir.2000) ................34, 41

*Napreljac v. John Q. Hammons Hotels, Inc.*, 461 F. Supp. 2d 981 (S.D. Iowa 2006) ....................................................................................................................35

*Nguyen v. Gambro BCT, Inc.,* 242 F. App'x 483 (10th Cir. 2007).........................36

*Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992).........................21, 35

*O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248 (10th Cir.2001) ...........................37

*Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213 (10th Cir. 2017)........37

*Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) .................................................................................................................19

*Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999) ..................................... 34-36

*Piercy v. Maketa*, 480 F.3d 1192 (10th Cir. 2007) ................................................40

*Proctor v. United Parcel Serv.,* 502 F.3d 1200 (10th Cir. 2007) ....................37, 40

*Ramirez v. Dep't of Corr., Colo*., 222 F.3d 1238 (10th Cir. 2000).........................34

*Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995) .......................................20

*Rivera v. City & County of Denver,* 365 F.3d 912 (10th Cir.2004)..................34, 41

*Sloan v. Boeing Co.,* No. CIV. A. 92-1014-MLB, 1994 WL 149197 (D. Kan. Apr. 1, 1994)..................................................................................................................22

*Slyter v. Bd. of Cty. Comm'rs for Anderson Cty., Kan.*, No. 11-4044-JAR, 2011 WL 6091745 (D. Kan. Dec. 7, 2011) ............................................................. 22-23

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ................................................................................................... 19, 20, 35

*Stroup v. United Airlines, Inc.*, 26 F.4th 1147 (10th Cir. 2022)............................41

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ...........................................................................................................20

*Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006)............................................47

*Walker v. Answer Topeka, Inc.,* No. 20-02049-EFM, 2020 WL 4200878 (D. Kan. July 21, 2020) ................................................................................................ 22-23

**Federal Statutes**

28 U.S.C. §1291......................................................................................................1

28 U.S.C. §1294......................................................................................................1

28 U.S.C. §1331......................................................................................................1

28 U.S.C. §1337......................................................................................................1

28 U.S.C. §1343......................................................................................................1

42 U.S.C. §1981...........................................................1, 13, 15, 16, 19, 34, 37, 49

42 U.S.C. §1983.............................1, 3, 13, 15, 16, 18, 19, 21, 34, 37, 45, 47, 48, 49

42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964)

........................................................................ 1, 2, 13, 15, 16, 19, 21, 22, 34, 37, 38

**State Statutes**

C.R.S. §24-34-402.5 ...............................................................................14

**Rules**

Fed. R. Civ. P. 59.....................................................................................1

Fed. R. Civ. P. 4.......................................................................................1

## Related Cases Statement

No prior appeals have been taken in this action, or to this Court from any related action.

## JURISDICTIONAL STATEMENT

Jurisdiction for this proceeding was proper in the United States District Court for the District of Colorado under 28 U.S.C. §§ 1331, 1337 and 1343, as Plaintiff-Appellant alleged violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and violation of her rights to the equal protection of the law, as set forth in the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. §§ 1981 and 1983.

The district court entered final judgment in favor of Defendants-Appellees on January 4, 2022. A3-125-142.[1] Plaintiff-Appellant filed a timely motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59 on February 1, 2022, (A3-143-148), which was denied by the district court on April 5, 2022. A3-149-152. On May 3, 2022, Plaintiff-Appellant filed a notice of appeal, (A3-153-154), which notice was timely pursuant to Fed. R. App. P. 4(a)(1) and 4(a)(4)(A)(iv). Jurisdiction in this Court is proper under 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF THE ISSUES

1.    Did the district court err by granting summary judgment as to Gerovic's racially discriminatory discharge claims against the City Defendants,

---

[1] Citations to the pages of Appendix Volumes I, II, and III are cited herein as A1-__, A2-__, and A3-__, respectively.

based upon a finding that she had failed to submit sufficient evidence to establish a reasonable probability that she would not have been fired were she not a non-Hispanic Caucasian?

Proposed answer: Yes.

2.      Did the district court err by granting summary judgment as to Gerovic's Title VII national origin-based discriminatory discharge claims against the City Defendants, based upon a finding that Gerovic failed to exhaust her administrative remedies by raising a national origin discrimination claim in her EEOC complaint?

Proposed answer: Yes.

3.      Did the district court err by granting summary judgment as to Gerovic's national origin-based discriminatory discharge claims, based on a finding that she had failed to submit sufficient evidence giving rise to an inference of discrimination based on national origin?

Proposed answer: Yes.

4.      Did the district court err by granting summary judgment as to Gerovic's retaliatory discharge claims against the City Defendants, based upon a finding that she had not adduced sufficient evidence linking her firing with a protected activity?

Proposed answer: Yes.

5.    Did the district court err by granting summary judgment as to all wrongful discharge claims against the City Defendants, based upon a finding that Gerovic had failed to submit sufficient evidence that the City Defendants' reasons for firing her were pretextual?

Proposed answer: Yes.

6.    Did the district court apply an incorrect legal standard by granting the HSS Defendants' motion for summary judgment, based upon a holding that the HSS Defendants could not have been the "proximate cause" of any violation of Gerovic's rights, as required for her Section 1983 claims against the HSS Defendants, because they acted as intermediaries and did not participate in the decision to issue the BOLO posters that violated Gerovic's rights?

Proposed answer: Yes.

## STATEMENT OF THE CASE

### I.    Factual Background

Gerovic is a naturalized US citizen who arrived in America after enduring many years of war in her birthplace, Bosnia-Herzegovina. A2-125; A3-113. She began her employment with Defendant-Appellee the City and County of Denver ("Denver") on or about August 11, 2014, as a custodian in the Facilities Management Department of the Department of General Services. A1-22, 24; A2-106.

Defendant-Appellee Leroy Lemos ("Lemos"), at all relevant times, was the Facilities Management Operations Supervisor at the Denver Department of General Services, and had supervisory authority over Gerovic. A1-22, 119; A2-106. Lemos is Hispanic. *Id.*

Defendant-Appellee James E. Williamson ("Williamson"), at all relevant times, was the Director of Facilities Management Operations in the Denver Department of General Services. A1-22, 125; A2-106.

From the very beginning of her employment with Denver, Gerovic received unsolicited and repeated praise from the members of the facilities that she cleaned. A2-125; A3-62-85. However, she was subjected to discrimination, and ultimately the termination of her job, due to her race and Bosnian national origin, and was forced to endure unfavorable working conditions, when compared to Hispanic workers in her department. The numerous examples of such discrimination include the following:

Lemos harassed Gerovic by yelling at her frequently, while not doing the same to employees who were Hispanic. A2-125, 165-166. Yvonne Chavez, a Hispanic custodial supervisor, was allowed to harass Gerovic and conduct a "white glove" inspection of an area cleaned by Gerovic, when she did not perform a similar inspection of areas cleaned by a Hispanic custodian. A1-129-130, 166, A2-123. Sharon Romero, Hispanic, was also allowed to harass Gerovic without

consequence. A1-130, 166; A2-124. David Chavez was a custodian who started working one year after Gerovic, and his starting pay was $0.50 an hour more then Gerovic was being paid at that time. A1-26-27, 132-133, 166; A2-123. Gerovic was disciplined, at the request of Lemos, for not wearing safety shoes, while at the same time a Hispanic custodian, John Gandara, was not disciplined for the same offense. A1-128, 165; A2-123; A3-31-32. In contrast to Gerovic, whose employment was terminated for relatively minor infractions, several Hispanic employees remained employed despite more serious misconduct: Viola Chacon, a Hispanic custodian, received a 10-day suspension, instead of a termination, despite stealing a plant from the workplace and then lying about it. A1-155-156, 194-201; A2-121; A3-50-59. Danielle Garcia, Hispanic, was not fired for being rude to a customer and pointing her middle finger at her, but rather was given only a short suspension and a pay cut. A2-125, 140-141. Teresa, a Hispanic custodian, received four or five writeups, including one for having her shirt completely unbuttoned, and had many complaints about poor performance, fighting with and yelling at people, but was not fired. A1-26, 131-132; A2-122.

In addition to the racial prejudice evinced by Lemos' behavior toward Gerovic in particular, Lemos posted Facebook posts in June of 2020 which appear demeaning to white people in general. A2-118; A3-47-49.

In 2015, with the help of her daughter, Gerovic posted profile content on Facebook (the "Facebook Posts") incorrectly listing the Denver Police Department ("DPD") as her employer, and her occupation as "Police Officer." A2-126, 163; A3-118. She also posted several photographs in which she wore clothing with the DPD logo or badge, and a close-up photograph of her DPD-issued access card. *Id*. There is no evidence that Gerovic represented herself, in person, to anyone as a police officer, or that anyone was actually confused or misled by the Facebook Posts, which Gerovic stated were "a joke." A1-122; A3-8. In 2015, Gerovic wore a gray DPD sweatshirt while on the clock at work, and was given a "verbal warning" because it was not part of her facilities management uniform and could cause problems if she were misidentified as a police officer, but she was not dismissed at that time. A2-126, A3-8.

On May 4, 2017, Gerovic received a written reprimand and disciplinary action letter, from Lemos, regarding an incident at the Arie P. Taylor building on March 16, 2017 (the "Building Incident"), in which she asked two men to leave the building because it wasn't open yet. A2-126, 151, 154-155; A3-14-22. One of the men yelled and cursed at Gerovic, and allegedly made a complaint against her. *Id*. Gerovic was disciplined, despite the fact that police Lt. Kenneth Chavez, who worked in the building with Gerovic, conducted an investigation into the incident and commended Gerovic for acting appropriately. A2-127, 156-158; A3-119-121.

6

During his investigation of the Building Incident, Lemos concluded that Gerovic had lied about what had happened, but in her deposition Gerovic denied that the facts were as Lemos portrayed them. A2-127, 153-155. Lt. Chavez attempted to contact Lemos to provide him information regarding the Building Incident but received no response from Lemos or any other member of City management. A2-127; A3-119-121. After the Building Incident, Lemos would not listen to Gerovic's complaints and just said they were "her fault." A2-127, 152.

At various times before and after May 2017, Gerovic tried to complain to Lemos' supervisor that Lemos was harassing her, but the supervisor took no action. A2-127, 135. In May of 2017, Gerovic told Williamson that Lemos was harassing her because she was not Hispanic. A2-117, 133-134, 162.

In 2017, several years after the Facebook Posts were created, Denver's Human Resources Department directed Lemos to investigate Gerovic's Facebook profile. A2-196. On September 11, 2017, Lemos confronted Gerovic about the posts, telling her she was impersonating a police officer and indicating that it was a serious offense. A1-181-182; A2-119. Gerovic told Lemos she would have her daughter assist her to remove the posts immediately, which she did that same day. A2-128, 163.

On September 19, 2017, Gerovic was given a contemplation of discipline letter for her Facebook Posts. A1-159-160; A2-113.

On September 21, 2017, Gerovic was sent Notice of Change in Work Location reassigning her to Denver's "Castro Building." A2-114. Defendant-Appellee HSS, Inc. had a contract with the City to provide security services at the Castro Building. A1-59-87; A2-4. Gerovic tried to schedule a meeting with Murphy Robinson ("Robinson"), the Facilities Management Director, to complain about her shift change, but her request was denied. A1-148-150, 187-189; A2-129, 173-175. Gerovic recalled Robinson's statement at a staff meeting that he "had an open- door policy" so she went to his office to speak with him. *Id.*; A3-38-46. After this meeting, Robinson was able to return Ms. Gerovic to her morning shift, but her request to remain at her work location at Police District 5 was denied. *Id.* When Gerovic reacted emotionally to this decision, caused by Lemos' actions, she was put on administrative leave and asked to undergo a mental health evaluation. *Id.* On September 20, 2017 Commander Ron Thomas of the Denver Police Department sent an email to Robinson raising the issue of Gerovic's unfair treatment. A2-129; A3-96-97.

Just prior to September 22, 2017, Lemos had a conversation with two HSS employees, including Defendant-Appellant Joel Womick ("Womick"), in which Lemos informed Womick that Gerovic "was going to be suspended, and that we needed to get a Be on the Lookout posted." A2-10-11, 17-18, 128, 180, 183-184, 214-215. This was the first time Womick was "told to put together a BOLO for

Emina Gerovic." *Id.* Lemos told Womick that "there had been a social media photograph of [Gerovic] wearing police attire," and that "she was suspended remotely, and she still had possession of her credentials: Her badge and other items." *Id.* Lemos' order to HSS was not unusual, in that, before anyone at HSS made any decision to put out a BOLO for any employees of the City and County of Denver, the source of the BOLO, which would typically be a representative of a City department, would have to be involved. A2-11-12, 21-22. The usual process was that the request for the BOLO would flow from a City department through Facilities Management, and HSS would generate the BOLO based on that request. *Id.* HSS and its employees did not typically take it upon themselves to generate a BOLO on any City employee. A2-12, 22.

On or about September 22, 2017, HSS employee Kyle Knoedler ("Knoedler") made a BOLO poster which Womick emailed to HSS site supervisors to post at all sites. A2-6, 79-81. The poster advised HSS employees in "ALL Buildings" to be on the lookout for Gerovic, and featured a photograph of her. A1-105-106, 114-116; A2-4-5, 80. It stated, "If she is seen entering ANY Building contact your supervisor immediately. Supervisors, please contact the following in order," followed by four names with telephone numbers, beginning with Lemos and Womick. A2-4-5, 13-14, 80. Two additional BOLO posters were created, both dated October 3, 2017. *Id.;* A2-98, 103. One of the two posters incorrectly stated

that Gerovic was no longer an employee. *Id.* A BOLO poster was posted at the security desk at the Castro building the day before Gerovic was to start working at the building. A2-12, 62.

Gerovic was permitted to return to work after her mental health evaluation. A2-130, 167. She was told to report to work at the Castro building on October 4, 2017, (A2-10, 30), but may have reported to work by request on October 3, as she and Lemos signed a "Memorandum of Expectations in the Workplace" on that date. A2-12, 71-73. On October 5, 2017, while at the Castro building, she encountered female employees from the building, talking about and pointing fingers at her. A2-12-13, 68. One of the women stated to Gerovic, "we need to call the cops on you." *Id.* When Gerovic asked, one of the women told her that she, Gerovic, was not allowed to be in the building and that there was a BOLO picture of her. *Id.*; A2-130, 167. A female employee at the Castro building showed Gerovic the BOLO posted in the security area at the entrance to the building. A2-13, 68-70.

Gerovic was "visibly upset" by the posters and went to Knoedler's office to discuss them. A2-13, 84-85. She told Knoedler that "she was hearing people talk about her as she was working, saying that they had seen her picture somewhere and wondered what she was doing in the Castro building." A2-13, 84-85. She further told Knoedler that "she overheard an employee say they had seen something with

her picture on it, and that the document directed people to tell their supervisor, and that supervisors were to specifically call Leroy Lemos first." *Id.*

After his meeting with Gerovic on October 5, 2017, Knoedler emailed City employee Lemos with a detailed description of the meeting and surrounding circumstances. A2-14, 86-88. That day, City Human Resources employee Anne Carter directed that all BOLO posters of Gerovic were to be removed A1-97; A2-7-8. Gerovic had complained to Carter in September or October 2017 about Lemos treating her differently because she was not Hispanic, constantly harassing her, and yelling at her when he did not do the same to Hispanic employees. A2-165-166.

On October 18, 2017, Gerovic received a Notification of Contemplation of Disciplinary Action, citing the Facebook Posts, failure to follow the chain of command by meeting with Facilities Management Director Murphy Robinson, and a recently received complaint that claimed she used vulgar language in the workplace nearly two years prior. A1-178-186; A2-117.

Denver's Human Resources Representative Christina Howard stated that Denver's ordinary response to an employee apparently misrepresenting the nature of their employment with the City in a Facebook profile would be to "clarify expectations," not to terminate the employee. A2-130; A3-99. However, on November 27, 2017, Gerovic received a Notification of Dismissal indicating she

had been fired. A1-178-186; A2-118. This was signed by Williamson and copied to defendant Lemos. *Id.*

Williamson testified under oath that he made the determination to terminate Gerovic after the contemplation meeting. A1-190-193; A2-117. However, Gerovic testified that in her May 2017 meeting with Williamson about Lemos, Williamson told her that he, Williamson, "[could] do nothing" and "Leroy Lemos [made the] decision," (A2-117, 134) and O'Neil testified that the ultimate decision by Williamson relied on information provided by Lemos. A2-118; A3-35-37.

Lemos was, in fact, deeply involved in the decision to terminate Gerovic. The investigation of the Building Incident, which was one of the reasons for Gerovic's dismissal, was conducted by Lemos A2-107-108, 187-196, 218-221. Likewise, Lemos conducted the investigation into the Facebook Posts, also cited as a main reason for Gerovic's dismissal. A2-107-108, 196. Lemos had also investigated  Gerovic's personal use of work cell phone, at the direction of HR. A2-107-108, 218-219; A3-25.

Following Gerovic's termination, her duties were taken over by floating custodians until a permanent replacement was hired to fill her vacancy on or about December 18, 2017. A2-130; A3-122-124. The replacement was Juanita Ramos, a Hispanic individual. *Id.*

## II.    Procedural History

Gerovic commenced this action by filing a Complaint in the United States District Court for the District of Colorado on December 30, 2019. A1-6. Following service of the Complaint on, or waiver of service by, all Defendants-Appellees, (A1-7-10), a Second Amended Complaint (the "Operative Complaint") was filed on July 16, 2020. A1-20-42. As pertinent to this appeal, the Operative Complaint asserted claims against Denver, Lemos, and Williamson (collectively, the "City Defendants"), as well as HSS, Womick and Knoedler (collectively, the "HSS Defendants"). *Id.* Specifically, Counts I and II of the Operative Complaint asserted Title VII discriminatory and retaliatory discharge against Denver (A1-33-36), and Counts III and IV asserted 42 USC §§1981 and 1983 claims and Fourteenth Amendment equal protection claims against Lemos, Williamson, and the HSS Defendants. A1-36-40.[2]

On May 14, 2021, the HSS Defendants filed a motion for summary judgment, together with a statement of material facts ("SMF"), per local rule. A1-

---

[2] Although the Operative Complaint asserted additional claims, and claims against additional parties, Gerovic indicated in her Brief in Opposition to the City Defendants' Motion for Summary Judgment that she did not object to dismissal of those claims. A1-16; Doc. 115 at p. 8. The district court's dismissal of Gerovic's claims against Robinson and Kevin O'Neil, Counts III and IV against Denver, and of Count V against all City Defendants are not on appeal. The district court's dismissal of Gerovic's §1981 claim against the HSS Defendants is also not on appeal.

14. Gerovic filed her brief in opposition on June 3, 2021, (A1-15), together with her opposing party's response and additional facts ("OSUMF").[3] A2-3-14. The HSS Defendants filed a reply brief on June 17, 2021, together with a moving party's reply statement of material facts ("RSUMF") and supporting evidence. A1-16. With leave of court, Gerovic filed a surreply on July 7, 2021. *Id.*

On May 21, 2021, the City Defendants filed a motion for summary judgment, (A1-12), together with an SMF. A1-14. Gerovic filed her brief in opposition on June 28, 2021, (A1-16), together with her OSUMF. *Id.;* A2-3-226; A3-4-124. The City Defendants filed their reply brief on July 21, 2021, together with their RSUMF. A1-16-17.

On January 4, 2022, the district court entered an order (the "January 4 Order") granting all Defendants-Appellees' motions for summary judgment.[4] A3-125-141.

---

[3] Because the parties motions, briefs, and supporting statements of material facts are voluminous, and all facts necessary for the determination of this appeal are found in Gerovic's OSUMFs, certain of the exhibits thereto, and certain of the exhibits attached to the City and HSS Defendants' SMFs, only the latter group of documents are included in Gerovic's appendix.

[4] The court also denied a motion for partial summary judgment that had been filed by Gerovic on May 21, 2021 (A1-14; Doc. 95) as moot, because Gerovic subsequently withdrew the motion in her Reply (A1-16; Doc. 113), and granted the City Defendants' motion for partial judgment on the pleadings (A1-15; Doc. 108) as to certain claims asserted by Gerovic under C.R.S. §24-34-402.5. The district court's denial of Gerovic's motion for partial summary judgment and entry of partial judgment on the pleadings are not on appeal.

In the January 4 Order, the district court granted the City Defendants' motion for summary judgment as to Gerovic's Title VII discriminatory discharge claim against Denver based on race, finding that Gerovic had failed to submit sufficient evidence to establish a reasonable probability that she would not have been fired were she not a non-Hispanic Caucasian. A3-134-135.

The district court granted the City Defendants' motion for summary judgment on Gerovic's Title VII discriminatory discharge claim based on national origin. A3-135-137. It found that Gerovic had failed to exhaust her administrative remedies by raising a national origin discrimination claim in her EEOC complaint, and that she had failed to establish a *prima facie* case by alleging any facts giving rise to an inference of discrimination based on national origin.

The district court granted the City Defendants' motion for summary judgment on Gerovic's Title VII retaliatory discharge claim against Denver, finding that Gerovic had not adduced sufficient evidence linking her firing with any protected activity. A3-138-140.

The district court dismissed Gerovic's §§ 1981 and 1983 Claims against Williamson and Lemos in their personal capacities, citing the same alleged deficiencies in Gerovic's *prima facie* case under §§ 1981 and 1983 as in her Title VII claim against Denver. A3-139-140.

The district court further dismissed the §§ 1981, 1983, and Title VII claims against the City Defendants on the basis that Gerovic had failed to submit sufficient evidence that the City Defendants' reasons for firing her were pretextual. A3-139-141.

The district court dismissed Gerovic's §1983 claims against the HSS Defendants, reasoning that they "acted as intermediaries and did not participate in the decision to issue the BOLO posters," and therefore were not the "proximate cause" of any violation of Gerovic's rights. A3-131.

On February 1, 2022, Gerovic filed a motion to alter or amend the January 4, 2022 judgment, arguing that the district court had overlooked evidence supporting her retaliatory discharge claim. A3-143-148. The district court denied that motion on April 5, 2022. A3-149-152.

## SUMMARY OF THE ARGUMENT

The district court erred by granting the City Defendants' motion for summary judgment as to Gerovic's Title VII, Section 1981 and Section 1983 race- and national origin-based discriminatory discharge claims, and retaliatory discharge claims, against the City Defendants.

Contrary to the district court's findings, Gerovic submitted sufficient evidence to establish a reasonable probability that she would not have been fired were she not a non-Hispanic Caucasian. She presented evidence that multiple

Hispanic employees were not fired for engaging in the same or similar behavior that purportedly resulted in her termination, and were otherwise given preferential treatment.

She properly exhausted her administrative remedies by raising a national origin discrimination claim in her EEOC complaint. Notwithstanding her failure to check the box for a "national origin" claim, she noted that her birthplace was Bosnia-Herzegovina, and, in the next paragraph, indicated that she endured ongoing discriminatory behavior from Lemos. In context, it could be reasonably inferred from the two statements in proximity that the discriminatory behavior was related to her nation of origin. Additionally, she described a pattern of discrimination against employees who were "not Latino," a description that encompasses Bosnians. The allegations of the EEO Charge were thus sufficient to put the City Defendants on notice of a national origin discrimination claim.

She submitted sufficient evidence giving rise to an inference of discrimination based on national origin by submitting evidence of all four elements of a discriminatory discharge claim based on national origin, which automatically give rise to a rebuttable presumption that the City Defendants unlawfully discriminated against her.

She submitted sufficient evidence linking her firing with a protected activity because, *inter alia*, she submitted evidence that she made a specific complaint about discrimination within a month and a half of her termination.

Gerovic submitted sufficient evidence to raise a question of fact as to whether the City Defendants' proffered reasons for firing her were pretextual because she submitted evidence that certain of the City Defendants' proffered reasons were false, and a reasonable juror could find that the social media posts were an implausible reason for Gerovic's termination, particularly in light of Lemos' extensive involvement in the disciplinary actions against Gerovic, the *de minimis* nature of the alleged misconduct, the City Defendants' failure to terminate Hispanic, non-Bosnian employees for more egregious types of conduct, and testimony by the City's HR representative that an employee would not ordinarily be fired for an inappropriate social media post.

The district court erred by granting the HSS Defendants' motion for summary judgment as to Gerovic's Section 1983 Claims, because, as a matter of law, the HSS defendants can be the "proximate cause" of the violation of her Fourteenth Amendment Equal Protection rights notwithstanding the fact that they acted as intermediaries and did not participate in the decision to issue the BOLO posters. A defendant may have "direct personal responsibility" for a constitutional violation that he effected, notwithstanding the fact that he was acting at the

direction of a third party, and notwithstanding the fact that there is no evidence of discriminatory intent on the part of the "subordinate" defendant himself.

## ARGUMENT

## I. The District Court Erred by Granting the City Defendants' Motion for Summary Judgment

### A. Standard of Review: The *McDonnell Douglas* Modified Summary Judgment Standard

This Court "review[s] summary judgment de novo, applying the same legal standard as the district court." *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021) (citation omitted). On summary judgment, impermissible employment decisions under §§1981, 1983 or Title VII—the basis of all Gerovic's claims against the City Defendants—are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). See *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989) (adopting *McDonnell Douglas* framework for § 1981); *Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir.1991) ("[T]he elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas,* whether that case is brought under §§ 1981 or 1983 or Title VII."); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, —— n. 1, 113 S.Ct. 2742, 2746 n. 1, 125 L.Ed.2d 407 (1993) (assuming that *McDonnell Douglas* framework applies to § 1983 actions). Under the

*McDonnell Douglas* framework, "the plaintiff must first establish a *prima facie* case of discrimination…. Once this is done, the employer must offer a facially nondiscriminatory reason for its employment decision." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995), citing *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824; *EEOC v. Flasher Co., Inc.,* 986 F.2d 1312, 1317–19 (10th Cir.1992). The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for" the employment action. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000), quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see also St. Mary's Honor Ctr.,* 509 U.S. at 506, 113 S.Ct. 2742 (the *prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee").

"Once the plaintiff has established a *prima facie* case, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment action. *Kendrick*, 220 F.3d at 1226, citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual." *Id.*, citing *McDonnell Douglas* at 804, 93 S.Ct. 1817.

**B.    Gerovic submitted sufficient evidence to establish a reasonable probability that she would not have been fired were she not a non-Hispanic Caucasian.**

In a discriminatory discharge claim on the basis of race, where the plaintiff is a member of a historically favored group (i.e., "reverse discrimination"), a plaintiff can make a *prima facie* demonstration of discrimination by presenting either direct evidence or indirect evidence sufficient "to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir. 1992). "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). Thus, Gerovic bore a burden to submit evidence to establish a reasonable probability that she would not have been fired but for her Caucasian origin and non-Hispanic status as part of all of her racial discrimination claims against the City Defendants. Contrary to the district court's finding, Gerovic met that burden.

The question of whether a challenged decision would not have been made "but for" a plaintiff's status is a highly fact-specific one, and courts in the Tenth Circuit have found the "but for" element satisfied under a number of different circumstances. See *McGarry v. Bd. of Cty. Comm'rs of Cty. of Pitkin*, 175 F.3d 1193, 1200 (10th Cir. 1999)(Employer representative's statements "that those hired

were not better qualified than [plaintiff] and that these hirings were minority affirmative action hirings" constituted direct evidence supporting an inference of reverse discrimination); *Bradley v. Denver Health & Hosp. Auth.,* 734 F. Supp. 2d 1186, 1199–200 (D. Colo. 2010) (Plaintiff established "but for" element through evidence that he, but not two women who were promoted, met the employer's written minimum qualifications for the supervisory position denied to the plaintiff, and that the defendant had no male supervisors); *Sloan v. Boeing Co.,* No. CIV. A. 92-1014-MLB, 1994 WL 149197, at \*8 (D. Kan. Apr. 1, 1994)(Plaintiff established 'but for" element where he was terminated following an EEO Complaint against him by African American female employee, and evidence was sufficient to support a reasonable inference" that the "plaintiff and [his coworker's] race and/or gender played an impermissible role in [the employer's] investigation of [her] complaints and its decision to terminate plaintiff."); see also *Bonner v. Casaus,* No. CIV 07-1205 MV/WDS, 2009 WL 10708924, at \*7 (D.N.M. Feb. 25, 2009); *Walker v. Answer Topeka, Inc.,* No. 20-02049-EFM, 2020 WL 4200878, at \*4 (D. Kan. July 21, 2020); *Slyter v. Bd. of Cty. Comm'rs for Anderson Cty., Kan.*, No. 11-4044-JAR, 2011 WL 6091745, at \*3 (D. Kan. Dec. 7, 2011); *Dudark v. Sw. Med. Ctr., LLC*, No. CIV-13-401-M, 2014 WL 1745049, at \*3 (W.D. Okla. May 1, 2014); *Bowdish v. Fed. Express Corp.,* 699 F. Supp. 2d 1306, 1319 (W.D. Okla. 2010).

Gerovic has submitted substantial evidence from which a reasonable juror could conclude that she would not have been fired but for being a non-Hispanic Caucasian. Courts in the Tenth Circuit have deemed the "but for" element established where the plaintiff presents evidence that multiple other employees of a different race or gender were not fired for engaging in the same or similar behavior that purportedly resulted in the plaintiff's termination, or that they were otherwise given preferential treatment. See *Bonner,* 2009 WL 10708924, at *7 ("But for" element established where plaintiff was the only non-Hispanic woman in the office, and Hispanic employees were not disciplined for serious infractions or were given preferential treatment by defendant); *Walker*, 2020 WL 4200878, at *4 ("But for" element established where female employees were not fired for similar behavior to male plaintiff's); *Slyter,* 2011 WL 6091745, at *3(same); *Dudark*, 2014 WL 1745049, at *3 ("But for" element established where plaintiff "produced evidence from which a reasonable inference can be made that defendants may have treated African–American employees differently, especially with regards to disciplinary actions.").

In the instant case, there is evidence, from Denver's Human Resources Representative Christina Howard, that Denver's ordinary response to an employee apparently misrepresenting the nature of their employment with the City in a Facebook profile would be to "clarify expectations," and not to terminate the

employee. A2-130; A3-99. There is ample evidence to support a reasonable inference that the reason Denver took the unusual step of firing Gerovic instead of merely "clarifying expectations" with her was that she was non-Hispanic. Gerovic has submitted evidence that Hispanic individuals were not disciplined for acts similar to those for which Gerovic was purportedly fired. Although Gerovic's termination letter listed "dishonesty" as one of the reasons she was terminated, Viola Chacon, a Hispanic custodian, merely received a 10-day suspension, instead of a termination, despite stealing a plant from the workplace and then lying about it A1-155-156, 178-186, 194-201; A2-118, 121; A3-50-59. Gerovic's termination letter indicated that "violating respectful workplace, misconduct, [and] unprofessional and discourteous behavior toward the public" were reasons for her termination, (A1-178-186; A2-118), but Hispanic employees were routinely permitted to engage in harassing and unprofessional behavior toward Gerovic and the public. Danielle Garcia, Hispanic, was given only a short suspension pay cut, and not fired for being rude to a customer and pointing her middle finger at her. A2-125, 140. Teresa, another Hispanic custodian, received four or five writeups, including one for having her shirt completely unbuttoned, and was the object of many complaints about fighting with people and yelling at people, but was not fired. A1-131-132; A2-122. Yvonne Chavez, a Hispanic custodial supervisor, and Sharon Romero, also Hispanic, were permitted to harass Gerovic without

consequence, despite Gerovic's unheeded complaints to Lemos. A1-129-130, 166S
A2-123-124, 138-139.

This evidence must be considered against the background of other evidence
indicating that Hispanic individuals were habitually given other forms of
preferential treatment. Yvonne Chavez performed a "white glove inspection" of an
area Gerovic had cleaned, but did not do the same for Hispanic custodians. A1-
129-130, 166; A2-123. David Chavez, a custodian who started working one year
after Gerovic, received starting pay of $0.50 an hour more than Gerovic was paid
at that time. A1-26-27, 123, 166; A2-23. Gerovic was disciplined, at the request of
Lemos, for not wearing safety shoes, while at the same time another Hispanic
worker, John Gandara, was not disciplined for the same offense. (A1-128, 165;
A2-123; A3-31-32.

The district court held that these comparisons were insufficiently similar to
Gerovic's situation because they involved misconduct that was "factually distinct
from the misconduct that primarily prompted [Gerovic's termination] —
representing herself as a police officer on Facebook." A3-135. However, plainly
the relevant legal standard does not require that the plaintiff provide examples of
conduct *identical* to her own. Evidence that comparators received preferential
treatment is sufficient. For example, in *Bonner,* 2009 WL 10708924, the plaintiff
had purportedly been fired because of "reports that she had engaged in workplace

violence," including elbowing a coworker with the intention to hurt him. 2009 WL 10708924, at *4. The court found that the plaintiff had met her burden to identify facts that would justify an inference of discrimination where she identified a number of acts of misconduct by Hispanic coworkers that had not resulted in termination, none of which included "workplace violence." *Id.* at *6—7. To wit, the plaintiff in *Bonner* met her burden by identifying an appraiser colleague who had received written reprimands for "unethical conduct for having advised taxpayers regarding assessment discrepancies, and for 'blatantly undervaluing properties in his own neighborhood,'" "'acting unprofessionally,' 'in a harassing manner,' and 'in a threatening manner' with a taxpayer," "driving a county vehicle into a telephone pole, failing to report the accident, 'and not being truthful about the accident," and for "vulgar language and angry behavior." *Id.* She also identified another colleague who had "serious problems with absenteeism and tardiness for several years," and a third who had received reprimands for being drunk at work, excessive absenteeism, frequent tardiness, using threatening and offensive language to coworkers, and dishonesty about having completed tasks. *Id.* The court accepted all of these instances as sufficient comparators for the plaintiff's act in elbowing a colleague. *Id.* One does not need factually identical comparators to infer discrimination when a non-Hispanic employee is terminated for a relatively trivial and short-lived indiscretion on social media, and Hispanic employees are

permitted to remain employed despite workplace theft, fighting and public indecency. "To establish that an employee is similarly situated… a plaintiff comparing himself to a better treated employee need not show complete identity, but only substantial similarity." *Kimble v. Wisconsin Dep't of Workforce Dev.*, 690 F. Supp. 2d 765, 771 (E.D. Wis. 2010)(Holding that although two white males who were proposed comparators worked in a different bureau from the African American plaintiff, they were sufficiently similar for purposes of his claims where they were similarly situated in the workplace hierarchy and performed similar functions). To raise an inference of discrimination the plaintiff must meet the "low threshold" of showing that she and the comparator were "involved in or accused of the same *or similar* conduct and [were] disciplined in different ways." *Horn v. United States Dep't of Health & Hum. Servs.*, 564 F. Supp. 3d 834, 850 (D.S.D. 2021)(emphasis supplied; citations omitted)(Holding that white plaintiff had met her burden by producing evidence that Native American colleague were similarly situated "because they both submitted outside activity requests while working as nurses at the Wagner Service Unit, yet only [the colleague's] request was approved," and that alleged differences between the two requests and the treatment of each were better analyzed at the pretext stage of the *McDonnell Douglas* framework, "not when analyzing the fourth element of prima facie race discrimination cases.")

The district court further found that Gerovic had failed to meet her burden because she had not provided the disciplinary histories of the employees in question or the identities of their supervisors, facts which the district court deemed necessary to make a "proper comparison." A3-135. However, these facts were not necessary to make a proper comparison: providing additional disciplinary histories for the comparators would have been superfluous, because, even assuming the comparators all had otherwise spotless disciplinary histories, a reasonable juror could still infer that the relatively serious infractions for which the comparators were *not* fired outweighed the relatively trivial ones for which Gerovic *was* fired.

Moreover, it could be reasonably inferred from the facts presented that Lemos was the supervisor for all of the proposed comparators. Lemos testified that his "direct reports" were "who the custodians report to." A1-119. It was undisputed that Lemos was "*the* Facilities Management Operations Supervisor, at the Department of General Services" A1-22; A2-106. Taking all reasonable inferences favorable to Gerovic, as the court was required to do on summary judgment, (see *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 [10th Cir. 1998]), the district court should have inferred that Lemos was the supervisor for all of the comparators. However, as noted above, it is not a requirement that comparators work for identical supervisors, or even in the same bureau. See *Kimble*, 690 F. Supp. 2d at 771.

The district court also overlooked the other evidence of "but for" causation adduced by Gerovic that was in addition to the unequal treatment of comparators. District Courts in the Tenth Circuit have held that evidence of racial bias by a coworker is sufficient to raise a question of fact as to "but for" causation of the plaintiff's termination, even if the coworker was not the person who formally made the termination decision, where there is evidence that the biased coworker's comments or input factored into the decision to terminate the plaintiff. In *Bowdish.,* 699 F. Supp. 2d at 1319, the Court held that the "but for" element had been met, despite the absence of any evidence of direct racial discrimination by the person who made the final decision to terminate the plaintiff's employment. The court stated:

> Although Defendant has consistently maintained that Beaury made the final decision to terminate Plaintiff's employment, this fact is not dispositive. The court of appeals has endorsed a subordinate bias theory of liability, under which a racially biased investigator may issue reports and recommendations that cause a decision maker who relies on those reports to make a discriminatory employment decision. *See E.E.O.C. v. BCI Coca–Cola Bottling Co.,* 450 F.3d 476, 487 (10th Cir.2006), *cert. dismissed,* 549 U.S. 1334, 127 S.Ct. 1931, 167 L.Ed.2d 583 (2007); *see also Young v. Dillon Companies, Inc.,* 468 F.3d 1243, 1253 (10th Cir.2006). Plaintiff has identified sufficient facts and evidence to suggest that Williams controlled the investigation and supplied critical information on which the termination decision was based. The evidence, when viewed most favorably to Plaintiff, would permit a reasonable inference that Williams may have caused Plaintiff's termination. Further, Plaintiff has

> presented some evidence of racial bias by Williams, specifically with regard to the position of operations manager, that might permit an inference of a racially motivated investigation and recommendation for termination. An inference of discriminatory motive may arise from discriminatory statements directed at the plaintiff's position. *See Young,* 468 F.3d at 1252; *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1457 (10th Cir.1994). Finally, the facts could also be read to suggest that Plaintiff's job responsibilities were assumed to some extent by a minority employee, Neals.

*Id.*

Similarly, in *Dudark,* 2014 WL 1745049, at *3, although her immediate supervisor was someone else, the court held that the plaintiff had sufficiently alleged "but-for" causation of her termination where she alleged that "all the actions that were taken against her were the result of or through" the decisions of one Doyle, an African–American, against whom other employees had made complaints of racial discrimination, and it appeared that "Doyle was involved in some capacity during some of the discussions regarding some of the challenged decisions, including the interviewing of some of the individuals who made the allegations that resulted in a written warning against plaintiff and the process/decision on whether or not to allow plaintiff to go part time, in what capacity, and plaintiff's ultimate termination."

There is evidence from which a reasonable juror could conclude that Lemos was motivated by racial bias against Gerovic, and that such bias improperly

affected his investigations that led directly to the termination of her employment. Not only did Gerovic testify that Lemos repeatedly disregarded her complaints of harassment by Hispanic employees, (A2-127, 152), but Lemos made several Facebook posts in June of 2020 which could be construed as demeaning to non-Hispanic Caucasians in general. A2-118; A3-47-49.

Gerovic has submitted evidence that Lemos, who was racially biased against non-Hispanic Caucasians, controlled or substantially contributed to the investigation and ultimate decision to terminate her. A reasonable juror could conclude that this evidence permits the conclusion that Gerovic's race factored impermissibly into the decision to terminate her employment.

It is undisputed that James Williamson made the formal determination to terminate Gerovic's employment. A2-117. However, Gerovic testified that in a May 2017 meeting with Williamson about Lemos, in which Gerovic told Williamson that Lemos was harassing her because she was not Hispanic, Williamson told her that he, Williamson, could do nothing and that it was Lemos who made the decision, (A2-117, 134), and O'Neil testified that the ultimate decision by Williamson relied on information provided by Lemos. (A2-118; A3-35-36.

Lemos personally conducted the investigations of many of the incidents that served as the stated bases for Gerovic's dismissal, including the building incident,

the Facebook posts, and Gerovic's alleged personal use of her work cell phone.
(A2-107-108, 187-196, 218-221; A3-25). Although Lemos concluded in his
investigation of the building incident that Gerovic was lying, Gerovic has testified
that she was not lying, and that the facts were not as Lemos portrayed them. A2-
127, 153-155. Lemos also ordered the posting of the "BOLO" Posters which
triggered Gerovic's complaints to O'Neill and Robinson which allegedly served as
additional bases for her termination. A2-10-11, 17-18, 128, 180, 183-184, 214-215.

### C.    Gerovic properly exhausted her administrative remedies by raising a national origin discrimination claim in her EEOC complaint.

A plaintiff's failure to file an EEOC charge regarding a discrete employment
incident permits the employer to raise an affirmative defense of failure to exhaust.
See *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). Thus,
exhaustion of Gerovic's administrative remedies as to her national origin
discrimination claims was necessary for her Title VII national origin
discriminatory discharge claims against the City Defendants.

Although failure to mark the box on the EEO form for a particular allegation
of discrimination on an EEO complaint creates a presumption that plaintiff did not
assert claims represented by boxes not checked, it is not dispositive. *Gunnell v.
Utah Valley State Coll.,* 152 F.3d 1253, 1260 (10th Cir.1998); See *Jones v. United
Parcel Serv.,* 502 F.3d 1176, 1186 (10th Cir.2007) (consideration of acts not

expressly included in administrative charge appropriate where alleged conduct would fall within scope of EEOC investigation which would reasonably be expected to follow charge of discrimination actually made); *Daneshvar v. Graphic Tech., Inc.,* 18 F.Supp.2d 1277, 1284 (D.Kan.1998) (where gist of plaintiff's allegations go to his being "Iranian—American," they logically comprise both plaintiff's country of origin and racial group).

Gerovic properly asserted her claims of national origin discrimination in her EEOC charge, despite not checking the box. The very first two paragraphs of the charge read, "Emina Gerovic is a naturalized US citizen who arrived in America after enduring many years of war in her birthplace, Bosnia-Herzegovina…. Ms. Gerovic endured ongoing discriminatory behavior by a supervisor Leroy Lemos and the Department of General Services." A3-114. There is no mention of Gerovic's non-Hispanic status in either of the first two paragraphs, (*Id.*), and a reasonable interpretation of the paragraphs is that the discriminatory behavior resulted from her country of origin. Additionally, the charge describes Lemos' "pattern of disciplining employees under him more harshly when the employee is *not Latino*," (emphasis supplied), a description that encompasses both non-Hispanic Caucasians in general and Bosnians in particular. *Id.* The allegations of the EEO Charge were sufficient to put the City Defendants on notice of both a race discrimination claim and a natural origin discrimination claim, and Gerovic

properly exhausted her administrative remedies with respect to both kinds of claims.

### D. Gerovic submitted sufficient evidence giving rise to an inference of discrimination based on national origin.

The district court erroneously found that Gerovic had failed to establish a prima facie case of national origin discrimination "by alleging any facts giving rise to an inference of discrimination based on national origin." A3-135-137. In national origin discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981, 1983 or Title VII. See *Carney*, 534 F.3d at 1273; *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir.1979) (National origin may be the basis for a claim under § 1981); *Ramirez v. Dep't of Corr., Colo*., 222 F.3d 1238, 1243 (10th Cir. 2000) (National origin discrimination may be the basis for a claim under § 1983.) To establish a prima facie case of discriminatory discharge on the basis of national origin, the plaintiff must show that "(1) [s]he belongs to a protected class; (2) [s]he was qualified for [her] job; (3) despite [her] qualifications, he was discharged; and (4) the job was not eliminated after [her] discharge." *Rivera v. City & County of Denver,* 365 F.3d 912, 920 (10th Cir.2004), citing *Kendrick,* 220 F.3d at 1229; see also *Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160, 1160 (10th Cir.2000). That is the full extent of the employee's *prima facie* burden: once it is met, "a rebuttable presumption arises that the defendant unlawfully discriminated against her." *Perry v.*

*Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999), citing *St. Mary's Honor Ctr.,*
509 U.S. at 506-507, 113 S. Ct. 2742, 2751, 125 L. Ed. 2d 407.

Unlike a discriminatory discharge claim based on "reverse discrimination,"
where the plaintiff faces a heightened burden (See *Notari*, 971 F.2d at 590), there
is *no* requirement that a plaintiff originating from a foreign country present any
evidence, as part of her *prima facie* case, to support an inference that but for
plaintiff's status the challenged decision would not have occurred.

Gerovic presented evidence as to all four elements of her discriminatory
discharge claim, and by doing so, inherently alleged facts giving rise to an
inference of discrimination based on national origin, under the standard articulated
in *Perry* and *Hicks.* It is undisputed that Gerovic is a naturalized US citizen from
Bosnia-Herzegovina and that she was terminated from her job as a custodian on
November 27, 2017. A1-178-186; A2-106, 125; A3-113. As a person of Bosnian
origin, she is a member of a protected class. See *Napreljac v. John Q. Hammons*
*Hotels, Inc.*, 461 F. Supp. 2d 981, 1028 (S.D. Iowa 2006), *aff'd,* 505 F.3d 800 (8th
Cir. 2007); *Cackovic v. HRH Chicago, LLC*, No. 12-CV-07386, 2014 WL
2893198, at *6 (N.D. Ill. June 26, 2014). Thus, the first and third prongs of the
*prima facie* test are satisfied. Gerovic worked for Denver in her job as a custodian
for more than three years prior to her termination. (A1- 23; A2-106). During that
time she consistently received praise from her employer and coworkers. A2-125;

A3-62-85. At the *prima facie* stage, these showings are sufficient to establish that Ms. Gerovic was qualified for her job, notwithstanding any evidence of alleged misconduct presented by the City Defendants. See *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1470 (10th Cir.1992); *Nguyen v. Gambro BCT, Inc.,* 242 F. App'x 483, 488–89 (10th Cir. 2007); *Luke v. Hosp. Shared Servs.,* No. 10-CV-03087-WJM-BNB, 2012 WL 1833425, at *4 (D. Colo. May 21, 2012),*aff'd sub nom. Luke v. Hosp. Shared Servs., Inc.*, 513 F. App'x 763 (10th Cir. 2013)(Fact that defendant believed there was cause to terminate plaintiff based on misconduct was not relevant to her job qualifications). Gerovic submitted evidence that, following her termination, her duties were taken over by floating custodians until a permanent replacement was hired to fill her vacancy, on or about December 18, 2017. A2-130; A3-122-124.The replacement was a Hispanic individual. *Id.* That evidence was sufficient to establish the fourth element of the *prima facie* test, which is met if a discharged plaintiff can show either that someone was sought or hired to replace her (See *Perry*, 199 F.3d at 1138- 1140) or that the position remained open. See *Nguyen*, 242 Fed. App'x at 489.

### E. Gerovic submitted sufficient evidence linking her firing with a protected activity.

To establish a prima facie case of retaliation, a plaintiff must show (1) that plaintiff engaged in protected opposition to discrimination; (2) that plaintiff suffered an adverse employment action; and (3) that there is a causal connection

between the protected activity and the adverse employment action. *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir.2001). Retaliation may be the basis for a claim under either Title VII, § 1981 or §1983, and the *prima facie* elements are the same. See *Carney*, 534 F.3d at 1273 (The elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII); *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017)(§1981); *Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434, 448 (D. Colo. 2007)(§1983). Thus, a causal connection between protected opposition to discrimination and Gerovic's firing was necessary for all of her Title VII, §§ 1981 and 1983 retaliatory discharge claims against the City Defendants.

To establish that a causal connection exists between Gerovic's complaints of racial discrimination and her discharge, she "may proffer "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Proctor v. United Parcel Serv.,* 502 F.3d 1200, 1208 (10th Cir. 2007). Proximity is measured based on the employee's "last instance of protected activity." *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 804 (10th Cir. 2007) ("[T]he challenged actions were within a month of [the plaintiff's] last instance of protected activity. We have previously held that such temporal proximity, alone, is sufficient to allow an inference of the existence of a causal connection between the two events.")

Gerovic engaged in acts of protected activity in September and October of 2017, including complaining to Anne Carter about Lemos treating her differently because she was not Hispanic and constantly harassing her. A2-165-166. Additionally, Commander Ron Thomas of the Denver Police Department sent an email to Murphy Robinson on Gerovic's behalf on September 20, 2017 raising the issue of unfair treatment of Gerovic (A2-129; A3-96-97). On September 19, 2017, Gerovic was given a contemplation of discipline letter for her Facebook posts A1-159-160; A2-113. and on October 18, 2017, she received the Notification of Contemplation of Disciplinary Action that ultimately resulted in the termination of her employment. A1-178-186; A2-117 ; A3-86-95. Such temporal proximity (less than a month, and practically contemporaneous) is sufficient as a matter of law to support an inference of causality between the protected activity and the retaliatory action.

The Court's ruling granting summary judgment on Gerovic's Title VII Retaliation Claim was explicitly based, in part, on the erroneous determination that Gerovic had not cited any evidence in the record that a specific complaint about discrimination was made within a month and a half of her termination, which occurred in November of 2017. A3-139. Gerovic did, in fact, adduce evidence that she complained of discrimination to a City representative in September or October of 2017. Specifically, Gerovic's Separate Statement of Undisputed Material Facts

("OSUMF") in Opposition to the City Defendants' Motion for Summary

Judgment, Item 99 states:

> Gerovic complained to Anne Carter in September or
> October 2017 about Lemos treating her differently
> because she was not Hispanic and constantly harassing
> her. Exhibit E pp. 145:5-146:22a.

A2-129.

Gerovic's OSUMF contains a typographical error, in that the referenced

evidence is in fact found on pages 145:5-146:22 of Gerovic's OSUMF Exhibit A,

which is Gerovic's own deposition, (A2-165-166), not in Gerovic's OSUMF

Exhibit E, which is Anne Carter's deposition. A3-23-30. However, the relevant

portion of Gerovic's deposition was submitted with her summary judgment

materials, and she brought the typographical error to the court's attention in her

motion to alter or amend. A1-18; A3-144-146. The district court could have

considered it in ruling on summary judgment. See Fed. R. Civ. P. 56(c) ("A party

asserting that a fact…is genuinely disputed must support the assertion by: …citing

to particular parts of materials in the record, including depositions, …The court

need consider only the cited materials, but it may consider other materials in the

record.")

The district court noted that Gerovic had "not shown that Defendant

Williamson, who made the decision to fire her, knew about any…protected

activity." A3-139. However, a plaintiff relying on temporal proximity to establish an inference of causal connection bears no burden to prove such additional facts.

Even if temporal proximity alone *doesn't* support an inference of retaliatory motive, the plaintiff may present additional evidence to establish the necessary causal connection. *Proctor*, 502 F.3d at 1209, citing *Piercy v. Maketa*, 480 F.3d 1192, 1198–99 (10th Cir. 2007) ("[T]he passage of time does not necessarily bar a plaintiff's retaliation claim if *additional* evidence establishes the retaliatory motive."); *Id.* citing *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) ("Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time. Otherwise, the plaintiff must offer additional evidence to establish causation.") The fact that Gerovic's complaints were largely about discrimination against her *by* Lemos, and, as described above, the decision to terminate Gerovic was made by or heavily influenced by Lemos himself, is sufficient to permit a reasonable juror to infer a retaliatory motive.

### F.    Gerovic submitted sufficient evidence that the City Defendants' reasons for firing her were pretextual.

Under the *McDonnell Douglas* Modified Summary Judgment Standard, once the plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason' for its employment action. *Kendrick*, 220 F.3d at 1226, citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct.

1817. "If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual." *Id.*, citing *McDonnell Douglas* at 804, 93 S.Ct. 1817.

To show pretext, a plaintiff must demonstrate that the defendant was more likely motivated by a discriminatory reason or that its proffered reason "is unworthy of credence." *Jackson v. City & Cty. of Denver*, 628 F. Supp. 2d 1275, 1285 (D. Colo. 2008), citing *Munoz,* 221 F.3d at 1167. Pretext may be shown, *inter alia* "by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Jackson*, 628 F. Supp. 2d at 1285, citing *Rivera,* 365 F.3d at 925. If a "genuine issue of material fact exists on the question whether [the employer's] purported justification for [the plaintiff's] termination was pretextual," summary judgment must be denied so that the matter may proceed to trial. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008).

The recently decided case of *Stroup v. United Airlines, Inc.*, 26 F.4th 1147 (10th Cir. 2022) makes it clear that a plaintiff can meet her burden to show pretext merely by pointing to evidence that the employer's proffered explanations are inconsistent or implausible. In *Stroup*, the court found that the plaintiffs had met their burden to establish pretext by "showing alleged inconsistencies in [the

employer's] explanations, attacking the credibility of [its] witnesses, and pointing out purported procedural irregularities," despite the fact that the plantiffs "did not contest the violations they committed but minimized them as 'commonplace' or 'minor.'" *Id.* at 1154.

On summary judgment, the City Defendants proffered three purported non-discriminatory, non-retaliatory reasons for Gerovic's termination: (1) her public Facebook posts; (2) her alleged dishonesty surrounding those posts and other incidents, and (3) her allegedly "negative" and "disruptive" comments about other employees.

The district court held that, "[a]s set forth in the City Defendants' eight-page dismissal letter, the City found [Gerovic]'s most egregious misconduct was representing herself as a police officer on Facebook, but her disciplinary history included various instances of less serious misconduct as well. [Gerovic] has not shown these reasons are unworthy of belief, and, taken together, they provide a legitimate, nondiscriminatory basis for her firing." A3-137. In so holding, the district court improperly assumed disputed facts about the "less serious misconduct" in favor of the City Defendants, rather than in the non-movant, Gerovic's favor. Gerovic disputes that she engaged in dishonesty surrounding her Facebook posts or other incidents, or that any comments she made about other employees were negative and disruptive, and such questions of credibility should

have been reserved for the trier of fact. Specifically, Gerovic testified that she was not dishonest with her employer (A2-127, 153-155), and issues of credibility cannot be resolved on summary judgment. She submitted numerous instances where she was praised by her coworkers, including Commander Thomas in September of 2017, (A2-125; A3-70-85), raising questions as to the seriousness of her alleged "disruptive" behavior. Moreover, Gerovic submitted evidence from which a reasonable juror could conclude that Lemos was biased against white people, (A2-118; A3-47-49), and that Lemos effectively controlled the investigation and discipline of Gerovic for the "misconduct" that Denver identified as bases for her dismissal. A2-107-108, 187-196, 218-221; A3-25. Gerovic disputes that many of the events investigated by Lemos occurred as described, including the Building Incident, her failure to wear safety shoes, the "white glove" inspection of areas assigned to Gerovic, and her use of her cell phone. A2-109-112; 148-150; 154-155.

For purposes of summary judgment, the district court should have assumed disputed issues as to whether the "less serious violations" occurred in Gerovic's favor, but instead it improperly assumed disputed facts in favor of the City Defendants.

Although Gerovic did admit that she was responsible for the Facebook posts, the district court also misapplied the burden on summary judgment by finding, as a

43

matter of law, that Gerovic had failed to present evidence that Denver's explanation for firing her was so weak or implausible that a reasonable factfinder could find it unworthy of credence. How "weak" or "implausible" it was that the City could have fired her for her Facebook posts should have been a jury question, particularly in light of the fact that Denver's Human Resources officer indicated that an employee would not ordinarily be fired for an inappropriate social media post. Denver's Human Resources Representative Christina Howard stated that the City's ordinary response to an employee apparently misrepresenting the nature of their employment with Denver in a Facebook profile would be to "clarify expectations," and not to terminate the employee. A2-130; A3-99. Moreover, Lemos, who could reasonably be found to have been motivated by discriminatory attitudes, was involved in the investigation of the Facebook posts A2-107-108, 196. As discussed in detail above, Gerovic presented evidence that other, similar employees were not terminated for dishonesty or negative and disruptive behavior.

There is no evidence that Gerovic held herself out to anyone, live, and represent that she was a police officer, or that any actual person was confused or misled by her Facebook posts, which Gerovic stated were merely "a joke." A1-122; A3-8 When confronted, she immediately deleted the posts. A2-128, 162-163, 205. Such is evidence from which reasonable juror could conclude that the Defendants exaggerated the seriousness of the Facebook posts, and fabricated or

exaggerated misconduct by Gerovic, as pretext to discharge her for retaliatory or discriminatory reasons. Because Gerovic was purportedly terminated, contrary to the City's ordinary response, for a social media post, and other, Hispanic, non-Bosnian employees were *not* terminated for more egregious behavior, a reasonable juror could conclude that the only reasonable explanation for her termination is race or national origin discrimination. Gerovic did not bear a burden, on summary judgment, to establish conclusively that the City Defendants' purported justification for her termination was pretextual, but only to raise a question of fact for the jury on the issue. Gerovic's evidence was not so weak that no reasonable juror could find in her favor, and the district court erred by taking the question away from the jury. See *Hinds*, 523 F.3d at 1197.

## II. The District Court Erroneously Granted the HSS Defendants' Motion for Summary Judgment as to Gerovic's Section 1983 Claims.

### A. Summary Judgment Standard

The standard of review on summary judgment is de novo. *Marcantel*, 993 F.3d at 1221. Because Gerovic's § 1983 claims against the HSS Defendants are not based on discriminatory discharge, but on denial of equal protection under the Fourteenth Amendment, the ordinary summary judgment standard applies, rather than the *McDonnell Douglas* modified standard applicable to her claims against the City Defendants.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if it could affect the outcome of the suit under governing law. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" if a rational jury could find in favor of the nonmovant on the evidence presented. *Id.*

The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). In cases where the nonmoving party bears the burden of proof at trial on a dispositive issue, that party must then "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotations and citation omitted). In reviewing a motion for summary judgment, the court must view the evidence and draw all appropriate inferences in the light most favorable to the nonmoving party. *Id.* at 670. Ultimately, a judge's inquiry on summary judgment "is not himself to weigh the evidence and determine

46

the truth of the matter but to determine whether there is a genuine issue for trial."
*Anderson*, 477 U.S. at 249.

> **B.    Gerovic submitted sufficient evidence that the HSS Defendants were the proximate cause of the violation of her Fourteenth Amendment Equal Protection rights.**

Gerovic's claims against the HSS Defendants under 42 U.S.C. §1983 were based on the HSS Defendants' participation in the creation and posting of the BOLO posters at Gerovic's place of employment. To establish a § 1983 claim, a plaintiff must allege (1) a violation of rights protected by the Constitution or created by federal law, (2) proximately caused (3) by the conduct of a person (4) who acted under color of state law. *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005). The district court found that the HSS Defendants could not have been the "proximate cause" of any violation of Gerovic's rights because they "acted as intermediaries and did not participate in the decision to issue the BOLO posters." A3-131. However, the case law does not support the assertion that, as a matter of law, a party who carried out a discriminatory act at the direction of another is not the "proximate cause" of the violation.

In order to be liable under §1983, a defendant must have "direct personal responsibility" for the deprivation of a constitutional right. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). Gerovic submitted evidence that each of the Movants personally participated in the creation and posting of the BOLOs which

effected a deprivation of Plaintiff's constitutional rights. A2-6, 79-81, 86-104.

However, there is no requirement that the defendant have been the *originator* of

the idea or plan to perpetrate the constitutional deprivation- a defendant may have

"direct personal responsibility" for a constitutional violation that he effected,

notwithstanding the fact that he was acting at the direction of a third party, and

there is no evidence that the "subordinate" defendant himself had discriminatory

intent. A defendant may be liable for a §1983 violation, even when acting at the

suggestion or direction of another person. See, e.g. *Brill v. Correct Care Sols.,*

*LLC*, 286 F. Supp. 3d 1210, 1217 (D. Colo. 2018)(Plaintiff stated §1983 wrongful

discharge claim against former employer, a private medical provider, where he

alleged that county had encouraged former employer to retaliate against him for his

testimony in litigation pertaining to inmate's medical treatment); *Herrera v. Santa*

*Fe Pub. Sch.*, 41 F. Supp. 3d 1027, 1176–77 (D.N.M. 2014)(Plaintiffs stated §1983

claims against private security firm that had conducted allegedly illegal searches

and seizures of plaintiffs' possessions before high school prom at direction and

encouragement of school); *Jackson v. Curry Cty.*, 343 F. Supp. 3d 1103 (D.N.M.

2018)(Plaintiff concert promoters stated § 1983 action against contractor who

managed event center where contractor had canceled concert as a result of actions

of county representatives in repeatedly expressing disapproval and concerns

regarding the concert). There was no requirement, in *Brill, Herrera*, or *Jackson*,

that the plaintiffs establish either "decision-making authority" or discriminatory or retaliatory motive on the part of the "subordinate" defendants. Therefore, there is no requirement for the plaintiff to prove additional facts to establish that a defendant had discriminatory or retaliatory intent to *indirectly* cause an action taken by a third party.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Emina Gerovic respectfully requests that the district court's orders granting summary judgment as to her discriminatory and retaliatory discharge claims against Denver, her 42 U.S.C. §§1981 and 1983 claims against Lemos and Williamson, and her 42 U.S.C. § 1983 claims against the HSS Defendants be reversed and vacated, and that this matter be remanded to the district court for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested to ensure that any shortcomings in counsel's

written presentation are revealed and corrected in colloquy with the Court.

Date: July 20, 2022

/s/ Nathan Davidovich

Nathan Davidovich
Davidovich Law Firm, LLC
501 S. Cherry St.
Suite 1100
Denver, Colorado 80246-1325
Tel: 303-825-5529
Fax: 720-409-3668
nathandavidovich@talk-law.com
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,106 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2021 in Times New Roman 14-point font.

Date:  July 20, 2022

*/s/ Nathan Davidovich*
Nathan Davidovich
Davidovich Law Firm, LLC
501 S. Cherry St.
Suite 1100
Denver, Colorado 80246-1325
Tel: 303-825-5529
Fax: 720-409-3668
nathandavidovich@talk-law.com
*Attorney for Plaintiff-Appellant*

# ORDERS UNDER REVIEW AND FINAL JUDGMENT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 19-cv-03710-RM-NRN

EMINA GEROVIC,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER,
LEROY LEMOS,
MURPHY ROBINSON,
JAMES E. WILLIAMSON,
KEVIN O'NEIL,
JOEL WOMICK,
KYLE KNOEDLER, and
HSS, INC.,

     Defendants.

---

**ORDER**

---

     This employment discrimination and retaliation case is before the Court on four motions: the Motion for Summary Judgment by Defendants Womick, Knoedler, and HSS, Inc. (the "HSS Defendants") (ECF No. 92), the Motion for Summary Judgment by Defendants City and County of Denver, Lemos, Robinson, Williamson, and O'Neil (the "City Defendants") (ECF No. 97), the Motion for Partial Judgment on the Pleadings by the City Defendants (ECF No. 108), and the Motion for Partial Summary Judgment by Plaintiff (ECF No. 95). The Motions have been fully briefed and are ripe for review.

## I.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

### B.     Judgment on the Pleadings

"Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgments as a matter of law."  *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138,

2

4

1141 (10th Cir. 2012) (quotation omitted).  A motion for judgment on the pleadings is reviewed

under the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Ward v. Utah*,

321 F.3d 1263, 1266 (10th Cir. 2003).  Accordingly, the Court must assess whether the

complaint is legally sufficient to state a claim for which relief may be granted.  *Brokers' Choice*

*of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014).

## II.    BACKGROUND

These facts are undisputed.  Plaintiff, "a Caucasian female of Bosnian ethnicity," worked

for Defendant City and County of Denver (the "City") as a custodian in the Facilities

Management Department from August 2014 until November 2017, when she was fired.  (ECF

No. 126, ¶ 1.)  She worked at Denver Police District Five before being reassigned to a different

building.  (ECF No. 98-22 at 3.)  Defendant Lemos, who is Hispanic,[1] served on Plaintiff's

hiring committee and became her supervisor once she was hired.  (ECF No. 126, ¶ 2.)  During

her employment, Plaintiff received reprimands for not wearing her safety shoes, receiving a poor

to fair inspection report rating, personal use of her City-issued cell phone, and failure to answer

her phone.  (*Id.* at ¶¶ 11-13, 15.)

In September 2017, the City received information that Plaintiff was representing herself

as a Denver Police Officer on her public Facebook page, and Defendant Lemos confirmed that

her Facebook page listed her occupation as "Police Officer" and her employer as "Denver Police

Department."  (*Id.* at ¶¶ 28, 29.)  Plaintiff was issued a Contemplation of Discipline letter and,

the next day, assigned to a different building and a different shift.  (*Id.* at ¶¶ 31, 32.)  Plaintiff

then met with Defendant Williamson, the Director of Facilities Management, in his office, where

---

[1] The Court uses the term "Hispanic" for the purposes of this Order because that is the term used by the parties.

3

she became very emotional.  (*Id.* at ¶¶ 3, 35-37.)  As a result of the meeting, Plaintiff was placed on paid administrative leave and scheduled for a fitness for duty exam.  (*Id.* at ¶ 39.)

Defendant HSS, a private contractor, was hired by the City to provide security personnel services at government buildings.  (ECF No. 112, ¶ 3.)  Around the time Plaintiff was put on administrative leave, the City directed HSS employees Defendants Womick and Knoedler to make and distribute be-on-the-lookout ("BOLO") posters with Plaintiff's picture on them and directing HSS employees to contact their supervisor if they saw Plaintiff entering any building. (*Id.* at ¶¶ 4, 5, 7.)  Plaintiff contends she learned about the BOLO posters when she returned from administrative leave and another employee told her she was not allowed to be in the building.  (*Id.* at ¶ 25.)  Plaintiff further contends as part of this lawsuit that the BOLO posters were a discriminatory act that caused her great embarrassment and humiliation and that some of them contained false information about when she was fired.  (*Id.* at ¶ 6.)  According to the HSS Defendants, the BOLO posters were kept at a security desk that was not accessible to the public or non-HSS employees.  (ECF No. 92 at 3.)

Before returning to work in early October 2017, Plaintiff received a notice that her shift at the building to which she was reassigned had been changed back to her previous schedule. (ECF No. 126, ¶ 46.)  Later that month, the City revised and re-issued the Contemplation of Discipline letter to include additional information about Plaintiff's Facebook posts.  (*Id.* at ¶ 49.) Still later that month, Defendants Williamson and Lemos, Plaintiff, her attorney, and others attended a discipline meeting.  (*Id.* at ¶ 50.)  Afterward, Defendant Williamson made the decision to fire Plaintiff, and he issued a Notification of Dismissal on November 27, 2017.  (*Id.* at ¶¶ 51, 54.)

The notification set forth Plaintiff's disciplinary history, which included written and verbal reprimands, two instances of documented counseling, and a verbal warning. (ECF No. 98-22 at 7-8.) But the primary focus of the notification was Plaintiff's public Facebook profile—which included pictures of Plaintiff wearing a sweatshirt with a Denver Police Department ("DPD") embroidered badge, a patrolman's hat, and a t-shirt with an embroidered DPD patch and a close-up photo of her DPD-issued access card that also featured a DPD badge—as well as Plaintiff's evasive and inconsistent answers with respect to the investigation into her Facebook posts. (*Id.* at 3-5.) The notification stated that "[f]alsely identifying yourself to the public as a police officer is both troubling and unacceptable" and further advised Plaintiff that "[r]epresenting yourself a police officer, as a joke or to impress others, is not only deceitful, but could be perceived as impersonating a police officer, which is a serious offense." (*Id.* at 4-5.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), checking the boxes for "retaliation," "race," and "color," but not the box for "national origin." (ECF No. 126, ¶ 62.) The gist of Plaintiff's discrimination charges is that she believed she was singled out by Defendant Lemos for disciplinary action and punishment because she "is not Latino." (ECF No. 98-42 at 5.) After obtaining a "right to sue" letter, Plaintiff filed this lawsuit. In the Second Amended Complaint, she alleges that Defendants "created and condoned a work environment that was hostile to employees who are not Hispanic" (ECF No. 53, ¶ 15) and asserts five claims for relief: (1) Title VII race and color discrimination against the City, (2) Title VII retaliation against the City, (3) an equal protection claim under 42 U.S.C. § 1981 against all Defendants except the City, (4) an equal protection under 42 U.S.C. § 1983 against all Defendants, and (5) violation of the Family Medical Leave Act against the

City.

## III.    DISCUSSION

In her Response to the City Defendants' Motion, Plaintiff states that she does not object to the dismissal of her claims against Defendants Robinson and O'Neil or her third, fourth, and fifth claims against the City.  (ECF No. 115 at 8 n.1.)  The Court now turns to the remaining claims and the pending Motions.

### A.    The HSS Defendants' Motion for Summary Judgment

Although it is not entirely clear from the Complaint, Plaintiff's Opposition to the HSS Defendants' Motion indicates that her claims against them are premised on their role in creating and distributing the BOLO posters.

#### 1.    Section 1983 Claim

To establish a § 1983 claim, a plaintiff must allege (1) a violation of rights protected by the Constitution or created by federal law, (2) proximately caused (3) by the conduct of a person (4) who acted under color of state law.  *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005).

The HSS Defendants moved for summary judgment on the § 1983 claim against them on the grounds that they did not act under color of state law when they created and distributed the BOLO posters.  Several tests are used in this Circuit to determine whether a private entity is acting under color of state law, including the nexus test, the symbiotic relationship test, the joint action test, and the public functions test.  *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 595-96 (10th Cir. 1999).  At the heart of each test is the requirement that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.  *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).  In their Motion, the HSS

Defendants argue they are not state actors under any of the tests. In her Opposition, Plaintiff argues that they are state actors under the nexus test[2] because "the evidence clearly shows that the City expressly encouraged, explicitly directed, and, to a large extent, controlled, the posting and subsequent removal of the BOLOs." (ECF No. 102 at 7-8.)

In their Reply, the HSS Defendants stand by their argument that the state action element is not met but also raise the additional argument that they cannot be held liable under § 1983 because they acted as intermediaries and did not participate in the decision to issue the BOLO posters, and therefore the second element above is not satisfied.[3] The Court agrees, and therefore does not reach the issue of whether the HSS Defendants were state actors for purposes of § 1983.

Section 1983 imposes liability on state actors who cause any citizen to be subjected to the deprivation of their constitutional rights. 42 U.S.C. § 1983; *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). The requisite causal connection is satisfied if the defendants set in motion a series of events that they knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights. *Martinez*, 697 F.3d at 1255. Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* (quotation omitted).

---

[2] "Under the nexus test, a plaintiff must demonstrate that there is a sufficiently close nexus between the government and the challenged conduct such that the conduct may be fairly treated as that of the State itself." *Johnson v. Rodrigues*, 293 F.3d 1196, 1203 (10th Cir. 2002) (quotation omitted). "[U]nder this approach, a state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (quotation omitted).

[3] Recognizing that the arguments in their Reply might be deemed new, the HSS Defendants also stated that they did not object to Plaintiff filing a Sur-Reply, which she proceeded to file. Accordingly, the Court finds that any prejudice to Plaintiff stemming from the HSS Defendants raising new issues or arguments in their Reply has been cured.

In her Sur-Reply, Plaintiff argues that the HSS Defendants may be held liable for implementing the BOLO posters even though they acted at the direction of the City. But Plaintiff points to no evidence that the HSS Defendants knew or should have known that creating and posting the BOLO posters might violate Plaintiff's rights.[4] The mere fact that the HSS Defendants followed the City's directives to make and distribute the BOLO posters does not mean that they were the proximate cause of the alleged constitutional violation in this case. According to Plaintiff, the HSS Defendants "made the offending BOLO posters at the express request of the City," and BOLO posters for City employees "were *always* initiated directly by City departments." (ECF No. 102 at 8.) Plaintiff further asserts that "the City—not HSS— directed the removal of the BOLOs from all locations." (*Id.*) Thus, the record shows that the City was responsible for causing the BOLO posters to be issued, and there is no evidence that the HSS Defendants had any role in the City's decision. *Cf. Maestas v. Segura*, 416 F.3d 1182, 1191 (10th Cir. 2005) (citing cases where subordinate employees were held liable for significantly contributing to adverse employment decisions made by others). Although the HSS Defendants had a ministerial role in implementing the City's decision, there is no evidence that they could have reasonably foreseen that the notices would violate Plaintiff's rights. Nor are there allegations that the HSS Defendants harbored a discriminatory or retaliatory motive in performing their role. *See id.* Under these circumstances, the Court finds Plaintiff has failed to raise a genuine issue as to whether the HSS Defendants may be held liable for the alleged constitutional violation, and they are entitled to summary judgment on Plaintiff's § 1983 claim.

---

[4] In neither their Motion nor their Reply do the HSS Defendants challenge Plaintiff's contention that the BOLO posters effected a deprivation of her constitutional rights.

2.    <u>Section 1981 Claim</u>

To establish a prima facie case of discrimination under § 1981, a plaintiff must show

(1) that she is a member of a protected class, (2) that the defendant had the intent to discriminate

on the basis of race, and (3) that the discrimination interfered with a protected activity as defined

in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001).

In their Motion, the HSS Defendants argue that the absence of state action is fatal to

Plaintiff's § 1981 claim as well as her § 1983 claim. In response, Plaintiff argues that state

action is not required to state a "full and equal benefit" claim under § 1981. In their Reply, the

HSS Defendants raise the additional argument that there is no evidence any HSS Defendant had

the intent to discriminate on the basis of race. Plaintiff did not respond to this argument in her

Sur-Reply.

The Court finds that Plaintiff's failure to adduce any evidence that the HSS Defendants

intended to discriminate on the basis of race is fatal to her § 1981 claim against them, and the

HSS Defendants are entitled to summary judgment on this claim as well.

**B.    The City Defendants' Motion for Summary Judgment**

Plaintiff's Response to the City Defendants' Motion indicates that her claims against the

City Defendants are based solely on her termination.

1.    <u>Title VII Discrimination Claims</u>

Title VII of the Civil Rights Act of 1964 prohibits an employer from firing someone

because of their race, color, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). A plaintiff may

prove discrimination with either direct or circumstantial evidence. *See Adamson v. Multi Cmty.*

*Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Where, as here, a plaintiff relies

9

on circumstantial evidence, the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), is used to determine whether the evidence raises an inference of invidious discriminatory intent sufficient to survive summary judgment. *See Adamson*, 514 F.3d at 1145. First, the plaintiff must establish a prima face case of discrimination. *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011). Second, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for its action. *Id.* Third, if the defendant proffers such reasons, the burden shifts back to the plaintiff to show they are pretextual. *Id.*

Ordinarily, to establish a prima face case of discrimination, a plaintiff must show that she belongs to a protected class, was qualified for her position, suffered an adverse employment action, and was treated less favorably than others. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). "In a reverse discrimination case, however, a prima facie case of discrimination requires a stronger showing." *Id.* When a plaintiff does not belong to a protected group, she must establish either "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority" or "facts sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* (quotations omitted). For the reasons below, the Court finds Plaintiff has not established a prima facie case nor shown that the City's stated reasons for firing her were pretextual.

       a.   *Discrimination based on race or color*

The City Defendants first argue that Plaintiff has failed to make the showing required to establish a prima facie case for a reverse discrimination claim. In response, Plaintiff argues that

there is a reasonable probability that she would not have been fired were she not "of Caucasian origin and non-Hispanic." (ECF No. 115 at 12.)  To support her argument, she lists a handful of alleged incidents of misconduct by Hispanic employees that did not result in their being fired.  For example, she states that one Hispanic employee was suspended for stealing a plant from the workplace, and that another was written up for having her shirt unbuttoned.  (*Id.* at 2.)

The Court finds such incidents are factually distinct from the misconduct that primarily prompted Plaintiff's firing—representing herself as a police officer on Facebook.  Further, these incidents, as presented by Plaintiff, are not helpful to her because she has not provided obviously pertinent information needed to make a proper comparison, such as the disciplinary histories of the employees involved or who their supervisors were.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (stating that employees are similarly situated to the plaintiff if they deal with same supervisor and are subject to the same standards governing performance evaluation and discipline and that courts should also compare the relevant employment circumstances, such as work history and company policies).  Thus, the Court finds these incidents do not provide a basis for establishing that Plaintiff would not have been fired if she were not non-Hispanic, and Plaintiff cannot establish a prima facie case of reverse discrimination.

        b.    *Discrimination based on national origin*

Nor is the Court persuaded by Plaintiff's contention that she established a prima facie case of discrimination based on national origin.  Although she did not check the box for "national origin discrimination" on her EEOC complaint, she argues that the issue is administratively exhausted because the allegations therein put the City Defendants on notice of

11

13

both a race discrimination claim and a national origin discrimination claim.  This argument lacks merit.  Plaintiff's three-page description attached to her EEOC complaint contains a single mention of her national origin, stating that she "is a naturalized US citizen who arrived in America after enduring many years of war in her birthplace, Bosnia-Herzegovina."  (ECF No. 98-42 at 3.)  The EEOC complaint, like the Complaint in this case, is devoid of any allegations that Plaintiff was treated differently because she came from Bosnia or even that her national origin was ever mentioned or alluded to by any Defendant.  Although precise pleading is not required in an EEOC complaint and claims in a subsequently filed complaint are deemed administratively exhausted if they are reasonably related to the allegations in the EEOC charge, *see Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003), the Court finds Plaintiff failed to exhaust her claim based on national origin discrimination.

Moreover, Plaintiff's single mention of her national origin along with failing to check the box for "national origin" did not put the City on notice of a discrimination claim based on national origin.  The purpose of the EEOC exhaustion requirement, in addition to giving notice of the alleged violation to the charged party, is "to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance."  *Smith v. Cheyenne Ret. Invs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).  The Court finds the allegations in Plaintiff's EEOC complaint did not effectuate Title VII's goal of giving the EEOC an opportunity to conciliate such a claim by securing voluntary compliance.  *See Smith v. Cheyenne Ret. Invs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).  The Court further finds that even if the claim was exhausted, Plaintiff has failed to establish a prima facie case by alleging any facts giving rise to an inference of discrimination based on national origin.  *See EEOC v. PVNF,*

12

14

*L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

c.   <em>Pretext</em>

The City Defendants also argue they are entitled to summary judgment because Plaintiff has failed to establish pretext. The Court agrees. As set forth in the City Defendants' eight-page dismissal letter, the City found Plaintiff's most egregious misconduct was representing herself as a police officer on Facebook, but her disciplinary history included various instances of less serious misconduct as well. Plaintiff has not shown these reasons are unworthy of belief, and, taken together, they provide a legitimate, nondiscriminatory basis for her firing. *See Adamson*, 514 F.3d at 1146. The Court's role is not to act as a "super personnel department" by second guessing employers' business judgments; rather, it must determine whether its stated rationale is genuine. *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006). Thus, "[t]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119 (10th Cir. 2007) (quotation omitted). Conclusory assertions are insufficient to support an inference of discrimination. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1266 (10th Cir. 2019).

Here, Plaintiff admits she was responsible for the Facebook posts but argues, essentially, that they were just a joke and that the City made too big a deal out of them. However, she has not shown that the City's explanation for firing her contains such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions that a reasonable factfinder could find it unworthy of credence. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000). As explained in the Notification of Dismissal, during the investigation into the

13

Facebook posts, Plaintiff made multiple evasive and nonresponsive statements that the City found difficult to reconcile. The City also noted that Plaintiff had received a verbal reprimand for wearing a Denver Police Department sweatshirt while on the job, and that other misconduct had resulted in reprimands, documented counseling, and a verbal warning. Considering the facts as they appeared to the City at the time she was fired, Plaintiff has not shown that its stated reasons for firing her were not honestly held. Plaintiff's subjective beliefs about her own job performance do not raise a genuine issue of material fact regarding the City's stated bases for her termination. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006). Therefore, the City is entitled to summary judgment on Plaintiff's discrimination claim for the additional reason that there is no genuine issue as to whether its explanation for firing her was pretextual.

2.    Title VII Retaliation Claim

Plaintiff's retaliation claim is also assessed under the burden-shifting framework set forth in *McDonnell Douglass*, 411 U.S. at 802-04. To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity, (2) the City Defendants took an adverse action against her, and (3) a causal connection between the protected activity and the adverse action. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004). If Plaintiff establishes a prima face case of retaliation, the burden of production shifts to the City Defendants to articulate a legitimate, nondiscriminatory reason for firing her. Once they do so, they are entitled to summary judgment unless Plaintiff can show a genuine issue of material fact as to whether the stated reasons were pretextual. *See id.* at 1267.

The City Defendants argue that Plaintiff cannot establish a prima facie retaliation case

14

16

because she has not adduced evidence linking her firing with any protected activity.  Again, the

Court agrees.  And, even if she were able to establish a prima facie case, her retaliation claim

would fail because, as discussed above, she has not raised a genuine issue as to whether

Defendant's reasons for firing her were pretextual.

Plaintiff alleges "that she complained about racial discrimination a number of times

without any action being taken."  (ECF No. 115 at 17.)  For present purposes, the Court will

assume that Plaintiff engaged in some protected activity by complaining about Defendant Lemos

"treating her differently because she was not Hispanic and constantly harassing her."  (*Id.*)

However, she has not adduced any evidence that such complaints prompted the investigation into

her Facebook posts, which is what ultimately lead to her termination.  Nor has she cited evidence

in the record that any specific complaint was made within a month and a half of her termination.[5]

*See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing precedent for

the propositions that a one-and-a-half-month period may, by itself, establish causation, while a

three-month period, standing alone, is insufficient).  In *Anderson*, the court declined to decide the

issue of whether two months and one week was sufficient to support a prima facie case of

retaliation.  Here, Plaintiff has adduced no evidence to support her assertion that she complained

in September or October 2017.  (*See* ECF No. 126, ¶ 99 (noting that the cited pages of the

deposition are not included in the record and that the deposition itself contains no testimony

supporting this assertion).)  She also has not shown that Defendant Williamson, who made the

decision to fire her, knew about any such protected activity.  Nor has she pointed to any other

---

[5] To the extent Plaintiff's Response suggests the re-issuance of the Contemplation of Discipline letter was an adverse employment action (*see* ECF No. 115 at 18), the Court disagrees.  The Court further finds, based on statements and headings in the Response, that Plaintiff has waived the argument that any conduct other than her termination supports her retaliation claim against the City Defendants.

15

evidence to support causation. Evidence of but-for causation on a retaliation claim must be based on more than mere speculation, conjecture, or surmise. *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014). On the current record, the Court find Plaintiff has failed to make a sufficient showing as to causation to establish a prima facie case of retaliation. Accordingly, the City is entitled to summary judgment on this claim.

    3.    <u>Claims Under Sections 1981 and 1983</u>

Plaintiff's claims under §§ 1981 and 1983 also assessed under the burden-shifting framework set forth in *McDonnell Douglass*, 411 U.S. at 802-04, *see Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991), and are subject to dismissal for the same reasons her Title VII claims fail. Plaintiff has not established either a prima facie case or adduced evidence of pretext to sustain a wrongful discharge claim against the City Defendants.

    **C.**    **The City Defendants' Motion for Partial Judgment on the Pleadings**

In her Motion for Partial Summary Judgment, Plaintiff asserted a claim for relief under Colorado's lawful activities statute, Colo. Rev. Stat. § 24-34-402.5. In their Motion for Partial Summary Judgment on the Pleadings, the City Defendants assert that this claim should be dismissed because it is not properly pleaded in the operative Second Amended Complaint or in any of Plaintiff's prior iterations of the Complaint. In her Response, Plaintiff concedes that her § 24-34-402.5 claim "is untimely both on failure to exhaust administrative remedies and statutes of limitation grounds." (ECF No. 121 at 2.) Accordingly, the Court grants the City Defendants' Motion and dismisses with prejudice any claim under § 24-34-402.5.

The City Defendants' request for attorney fees is denied without prejudice. This Court's Practice Standards do not permit a filing to contain a separate motion. *See* Civ. Practice

16

18

Standard IV.A.  And, the City Defendants have not complied with the requirements of

D.C.COLO.LCivR. 54.3.

        **D.**       **Plaintiff's Motion for Partial Summary Judgment**

       After the City responded to Plaintiff's Motion for Partial Summary Judgment, Plaintiff

agreed to withdraw the Motion or allow the Court to deny it.  (ECF No. 113 at 2.)  Therefore, the

Motion is denied as moot.

**IV.**      **CONCLUSION**

       Accordingly, the HSS Defendants' Motion for Summary Judgment (ECF No. 92), the

City Defendants' Motion for Summary Judgment (ECF No. 97), and the City Defendants'

Motion for Partial Judgment on the Pleadings (ECF No. 108) are GRANTED.  Plaintiff's Motion

for Partial Summary Judgment (ECF No. 95) is DENIED AS MOOT, and the Clerk is directed to

CLOSE this case.

       DATED this 4th day of January, 2022.

                    BY THE COURT:

                    _____

                    RAYMOND P. MOORE
                    United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-03710-RM-NRN

EMINA GEROVIC,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER,
LEROY LEMOS,
MURPHY ROBINSON,
JAMES E. WILLIAMSON,
KEVIN O'NEIL,
JOEL WOMICK,
KYLE KNOEDLER, and
HSS, INC.,

     Defendants.

---

**FINAL JUDGMENT**

---

     In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

     Pursuant to the Order (Doc. 129) by Judge Raymond P. Moore entered on January 4, 2022, it is

     ORDERED that judgment is entered in favor of the defendants and against the plaintiff.   It is

     FURTHER ORDERED that this case is closed.

     Dated this 4th of January, 2022.

                     FOR THE COURT:
                     JEFFREY P. COLWELL

                     By:   s/C. Pearson, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 19-cv-03710-RM-NRN

EMINA GEROVIC,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER,
LEROY LEMOS,
MURPHY ROBINSON,
JAMES E. WILLIAMSON,
KEVIN O'NEIL,
JOEL WOMICK,
KYLE KNOEDLER, and
HSS, INC.,

     Defendants.

---

### ORDER

---

Before the Court is Plaintiff's Motion to Alter or Amend Judgment (ECF No. 135),

seeking relief under Federal Rule of Civil Procedure 59(e) from the Court's January 4, 2022,

Order (ECF No. 129), which, inter alia, granted the City Defendants' Motion for Summary

Judgment (ECF No. 97). The Motion has been fully briefed (ECF Nos. 136, 137, 140) and is

denied for the reasons below.

**I.**     **LEGAL STANDARD**

     **A.**     **Rule 59(e)**

Grounds for granting relief under Fed. R. Civ. P. 59(e) include (1) an intervening change

in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear

error or prevent manifest injustice. *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012). But such a motion "cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment." *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 536 (10th Cir. 2016) (quotation omitted).

## II.    BACKGROUND

Defendant was fired from her position as custodian after her employer, Defendant City and County of Denver (the "City"), learned she was representing herself as a Denver Police Officer on her public Facebook page. In her Motion, she argues the Court should reverse its determination that she failed to state a Title VII retaliation claim against the City Defendants.

## III.    ANALYSIS

In its Order, the Court ruled that Plaintiff had failed to establish a prima face case of retaliation because she had not adduced evidence linking her firing with any protected activity. Her retaliation claim failed for the additional reason that she failed to raise a genuine issue as to whether the City's stated reasons for firing her were pretextual.

Plaintiff contends that the Order contains a material error, which she attributes to a typographical error in her Opposing Party's Response and Additional Facts and Supporting Evidence. There, she stated as follows:

> Gerovic complained to Anne Carter in September or October 2017 about Lemos treating her differently because she was not Hispanic and constantly harassing her. Exhibit E pp. 145:5-146:22a.

(ECF No. 126, ¶ 99.) In their Reply and Supporting Evidence, the City Defendants responded as follows:

> Disputed. Plaintiff failed to include the cited pages in her Exhibit E (Anne Carter's deposition). The Court and the City are not required to "scour the record in search

2

22

of support for counsel's arguments." *Thome*, 2013 WL 3242813, at *2, n.3. There is no testimony in Anne Carter's deposition to support this fact.

(*Id.*)

The Court issued its Order more than five months later, during which time Plaintiff made no attempt to correct her error or clarify her position. She now argues that she meant to cite "Exhibit A," her own deposition, and sets forth an excerpt from that deposition in her Motion, citing "ECF No. 116-1, pp. 53-54." (ECF No. 135 at 4.) Plaintiff's counsel appears not to have learned from its previous carelessness, as the excerpt in fact appears at pages 35-36 of ECF No. 116-1. In any event, a Rule 59(e) motion "cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment," *Sprint Nextel*, 822 F.3d at 536, so the Court could deny her Motion on that basis alone.

But even if the Court considers the stray testimony at this late hour, it does not provide a basis for reversing summary judgment. The testimony is that Plaintiff complained of harassment by Defendant Lemos *to Anne Carter*, who is not a Defendant in this case, in September or October. But Defendant Williams made the decision to fire Plaintiff in November, and there is no evidence that he was made aware of such a complaint. Therefore, the causation element of a prima facie case for retaliation is still lacking. Nor does the testimony raise a genuine issue as to whether the stated reasons for Plaintiff's firing were pretextual. As set forth in the Order, there was ample evidence in the record that the City Defendants genuinely believed Plaintiff had engaged in egregious misconduct by representing herself online as a Denver Police Officer.

In her Reply, Plaintiff takes a new approach, arguing that the Court must reexamine its Order in light of a recently decided age discrimination case, *Stroup v. United Airlines, Inc.*, 26 F.4th 1147 (10th Cir. Feb. 28, 2022). But although she quotes the case extensively, Plaintiff fails

3

to develop any argument that the case constitutes an intervening change in law for purposes of Rule 59(e). Nor does she identify any new evidence—relying instead on evidence that was before the Court when it ruled on the City Defendants' Motion.

Accordingly, the Court finds Plaintiff has failed to meet her burden with respect to establishing grounds for relief under Rule 59(e).

## IV.    CONCLUSION

The Motion to Alter or Amend Judgment (ECF No. 135) is DENIED.

DATED this 5th day of April, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

4

24