CASE NO. 22-1148

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

EMINA GEROVIC,
    Plaintiff,

    v.

CITY AND COUNTY OF DENVER,
DEPARTMENT OF GENERAL SERVICES,
LEROY LEMOS,
MURPHY ROBINSON,
JAMES WILLIAMSON,
KEVIN O'NEIL,
JOEL WOMICK,
HSS, INC.,
    Defendants-Appellees.

---

On Appeal from the United States District Court For the District of Colorado
The Honorable Raymond P. Moore
Dist. Ct. Civil Action No. 19-cv-03710-RM-NRN

---

## DEFENDANTS-APPELLEES CITY AND COUNTY OF DENVER'S, LEROY LEMOS', MURPHY ROBINSON'S, KEVIN O'NEIL'S, AND JAMES E. WILLIAMSON'S AMENDED RESPONSE BRIEF

Respectfully submitted,

Shelby A. Felton
Jonathan D. Saadeh
Denver City Attorney's Office
201 W. Colfax Ave., Dept. 1108
Denver, CO  80202
(720) 913-3125
Shelby.felton@denvergov.org
Jonathan.saadeh@denvergov.org

Oral argument is not requested

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................iii-ix

STATEMENT OF PRIOR OR RELATED CASES .............................. ix

I.      STATEMENT OF THE ISSUES ...............................................1

II.     STATEMENT OF FACTS.........................................................1

III.    SUMMARY OF THE ARGUMENT ...........................................13

IV.     ARGUMENT..............................................................................15

        A.      STANDARD OF REVIEW .............................................15

        B.      THE DISTRICT COURT PROPERLY GRANTED SUMMARY
                JUDGMENT AS TO GEROVIC'S RACE DISCRIMINATION
                CLAIM ......................................................................16

        C.      THE DISTRICT COURT PROPERLY DETERMINED THAT
                GEROVIC FAILED TO ADMINISTRATIVELY EXHAUST HER
                NATIONAL ORIGIN CLAIM ...........................................32

        D.      EVEN IF EXHAUSTED, THE DISTRICT COURT PROPERLY
                GRANTED SUMMARY JUDGMENT AS TO THE NATIONAL
                ORIGIN DISCRIMINATION CLAIM.................................35

        E.      THE DISTRICT COURT PROPERLY GRANTED SUMMARY
                JUDGMENT AS TO GEROVIC'S RETALIATION CLAIM..........39

        F.      THE DISTRICT COURT PROPERLY GRANTED SUMMARY
                JUDGMENT BASED ON PLAINTIFF'S FAILURE TO
                DEMONSTRATE PRETEXT............................................45

V.      CONCLUSION...........................................................................50

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPE
FACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ....................51

CERTIFICATE OF PRIVACY REDACTIONS, DIGITAL SUBMISSION, AND VIRUS PROTECTION..............................................................................................52

CERTIFICATE OF SERVICE ..................................................................................53

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Adamson v. Multi–Cmty. Diversified Servs., Inc.,*
   514 F.3d 1136 (10th Cir. 2008) ..................................................... 18, 38

*Alabi v. Vilsack,*
   860 F. App'x 576 (10th Cir. 2021)........................................................34

*Aman v. Dillon Companies, Inc.,*
   645 F. App'x 719 (10th Cir. 2016)........................................................24

*Anderson v. Coors Brewing Co.,*
   181 F.3d 1171 (10th Cir. 1999) ...........................................................41

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)................................................................... 15, 16

*Antonio v. Sygma Network, Inc.,*
   458 F.3d 1177 (10th Cir. 2006) ...........................................................37

*Aramburu v. Boeing Co.,*
   112 F.3d 1398 (10th Cir. 1997) ..................................................... 20, 26

*Argo v. Blue Cross & Blue Shield of Kan., Inc.,*
   452 F.3d  (10th Cir. 2006) ...................................................... 17, 39, 46

*Azzun v. Kansas Dep't of Health & Env't,*
   No. CIV.A. 10-2009-KHV, 2011 WL 903901 (D. Kan. Mar. 15, 2011)............32

*Bones v. Honeywell Int'l, Inc.,*
   366 F.3d 869 (10th Cir. 2004) ...................................................... 22, 25

*Bonner v. Casaus,*
   No. CIV 07-1205 MV/WDS, 2009 WL 10708924 (D.N.M. Feb. 25, 2009) .......23

*Bowdish v. Fed. Express Corp.,*
   699 F.Supp.2d 1306 (W.D.Okla. 2010)........................................... 28, 29

*Brainard v. City of Topeka*,
   597 Fed.Appx. 974 (10th Cir. 2015)....................................................21

*Castleberry v. Boeing Co.*,
   880 F. Supp. 1435 (D. Kan. 1995)......................................................18

*Celotex Corp. v. Cattrett*,
   477 U.S. 317 (1986)..........................................................................15

*Cone v. Longmont United Hosp. Ass'n*,
   14 F.3d 526 (10th Cir. 1994) ..............................................................49

*Cross v. Home Depot*,
   390 F.3d 1283 (10th Cir. 2004) ................................................... 30, 43

*Crowe v. ADT Sec. Servs., Inc.*,
   649 F.3d 1189 (10th Cir. 2011) ..........................................................49

*Cumming v. Questa Sch. Bd. of Educ.*,
   No. CV 17-376 KG/KBM, 2019 WL 652848 (D.N.M. Feb. 15, 2019) ..............18

*Daniels v. United Parcel Serv., Inc.*,
   701 F.3d 620 (10th Cir. 2012) ............................................................17

*Debord v. Mercy Health Sys. of Kan., Inc.*,
   860 F.Supp.2d 1263 (D. Kan. 2012)....................................................47

*Dickerson v. Bd. of Trustees of Metro. State Univ. of Denver*,
   No. 19-CV-2087-WJM-SKC, 2021 WL 492483 (D. Colo. Feb. 10, 2021) .........18

*Donez v. Leprino Foods, Inc.*,
   No. 21-1212, 2022 WL 500549 (10th Cir. Feb. 18, 2022)...................24

*Dudark v. Sw. Med. Ctr., LLC*,
   No. CIV-13-401-M, 2014 WL 1745049 (W.D.Okla. May 1, 2014) ...................29

*E.E.O.C. v. BCI Coca–Cola Bottling Co. of Los Angeles*,
   450 F.3d 476 (10th Cir. 2006) ............................................................27

*E.E.O.C. v. Flasher Co.,*
   986 F.2d 1312 (10th Cir.1992) ..................................................................... 23, 27

*E.E.O.C. v. PVNF, L.L.C.,*
   487 F.3d 790 (10th Cir. 2007) ............................................................................24

*Etsitty v. Utah Transit Auth.,*
   502 F.3d 1215 (10th Cir. 2007) ..........................................................................45

*Evans v. McDonald's Corp.,*
   936 F.2d 1087 (10th Cir. 1991) ..........................................................................35

*Ferrell v. Ezpawn Oklahoma, Inc.,*
   No. CIV-18-607-SLP, 2019 WL 3207797 (W.D. Okla. July 16, 2019) ..............33

*Freeman v. State of Kan.,*
   No. 97-2530-JWL, 1998 WL 259899 (D. Kan. Apr. 10, 1998) .........................33

*Fulcher v. City of Wichita,*
   387 Fed.Appx. 861 (10th Cir. 2010).....................................................................16

*Furr v. Seagate Tech., Inc.,*
   82 F.3d 980 (10th Cir. 1996) ...............................................................................26

*Gunnell v. Utah Valley State Coll.,*
   152 F.3d 1253 (10th Cir. 1998) ...........................................................................32

*Hall v. Interstate Brands Corp.,*
   No. 08-2073-EFM, 2009 WL 2043570 (D. Kan. July 13, 2009) ........................47

*Hankishiyev v. ARUP Labs.,*
   732 Fed.Appx. 673 (10th Cir. Apr. 25, 2018) ......................................................32

*Heno v. Sprint/United Mgmt. Co.,*
   208 F.3d 847 (10th Cir. 2000) .............................................................................16

*Hinds v. Sprint/United Mgmt.,*
   523 F.3d 1187 (10th Cir. 2008) ..................................................................... 40, 42

*Hysten v. Burlington N. & Santa Fe Ry. Co.*,
    296 F.3d 1177 (10th Cir. 2002) ..................................................................... 26, 36

*Jones v. Maritz Rsch. Co.*,
    No. 14-2467-SAC, 2014 WL 6977935 (D. Kan. Dec. 9, 2014) ..........................33

*Jones v. United Parcel Service, Inc.*,
    502 F.3d 1176 (10th Cir. 2007) ...........................................................................34

*Kelley v. Goodyear Tire & Rubber Co.*,
    220 F.3d 1174 (10th Cir. 2000) ...........................................................................24

*Kendrick v. Penske Transp. Servs., Inc.*,
    220 F.3d 1220 (10th Cir. 2000) ........................................... 16, 21, 24, 26, 36, 49

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ...........................................................................38

*Kimble v. Wisconsin Dep't of Workforce Dev.*,
    690 F. Supp. 2d 765 (E.D. Wis. 2010) ......................................................... 23, 27

*Livingston v. Roadway Exp., Inc.*,
    802 F.2d 1250 (10th Cir. 1986) ...........................................................................17

*Lyons v. Red Roof Inns, Inc.*,
    No. 04–1360, 130 F. App'x 957 (10th Cir. 2005) ........................................ 17, 18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................................15

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .............................................................................................16

*McGowan v. City of Eufala*,
    472 F.3d 736 (10th Cir. 2006) .............................................................................21

*Metzler v. Federal Home Loan Bank of Topeka*,
    464 F.3d 1164 (10th Cir. 2006) ...........................................................................44

*Mitchell v. City of Moore*,
   218 F.3d 1190 (10th Cir. 2000) ............................................................43

*Mitchell v. City of Wichita, Kansas*,
   140 F. App'x 767 (10th Cir. 2005).......................................................18

*Morgan v. Hilti, Inc.*,
   108 F.3d 1319 (10th Cir. 1997) ............................................................46

*Murray v. City of Sapulpa*,
   45 F.3d 1417 (10th Cir. 1995) ..............................................................45

*Notari v. Denver Water Dep't*,
   971 F.2d 585 (10th Cir. 1992) ..............................................................18

*Payan v. United Parcel Serv.*,
   792 F. App'x 634 (10th Cir. 2019).......................................................27

*Perry v. Woodward*,
   199 F.3d 1126 (10th Cir.1999) .............................................................36

*Pervez v. Home Depot, U.S.A., Inc.*,
   No. 07-CV-01116-LTB-KMT, 2008 WL 115548 (D. Colo. Jan. 10, 2008)........33

*Plotke v. White*,
   405 F.3d 1092 (10th Cir. 2005) ............................................................36

*Rader v. U.S.D. 259 Wichita Pub. Sch.*,
   844 F. Supp. 2d 1206 (D. Kan. 2011)..................................................32

*Robinson v. Barrett*,
   823 F.App'x 606 (10th Cir. 2020)................................................. 26, 49

*Salguero v. City of Clovis*,
   366 F.3d 1168 (10th Cir. 2004) ................................................... 27, 49

*Scott v. Harris*,
   550 U.S. 372 (2007).............................................................................15

*Singh v. Cordle,*
   936 F.3d 1022 (10th Cir. 2019) .............................................................44

*Smothers v. Solvay Chemicals, Inc.,*
   740 F.3d 530 (10th Cir. 2014) ..............................................................28

*Sorbo v. United Parcel Serv.,*
   432 F.3d 1169 (10th Cir. 2005) .............................................................26

*St. Mary's Honor Ctr. v. Hicks,*
   509 U.S. 502,  113 S.Ct. 2742 (1993)....................................................46

*Stroup v. United Airlines, Inc.,*
   26 F.4th 1147 (10th Cir. 2022) ...................................................... 46, 47

*Texas Dep't of Cmty. Affairs v. Burdine,*
   450 U.S. 248, 101 S.Ct. 1089 (1981)............................................. 17, 36

*Tootle v. Wyatt-Edison Charter Sch.,*
   No. 10-CV-02421-REB-KMT, 2011 WL 5834678 (D. Colo. Oct. 25, 2011) .....33

*United States Dep't of Health & Hum. Servs.,*
   564 F. Supp. 3d 834 (D.S.D. 2021) ......................................................23

*University of Tex. S.W. Med. Ctr. v. Nassar,*
   570 U.S. 338, 133 S.Ct. 2517 (2013)....................................................39

*Ward v. Jewell,*
   772 F.3d 1199 (10th Cir. 2014) .............................................................39

*Watts v. City of Norman,*
   270 F.3d 1288 (10th Cir. 2001) ...................................................... 20, 28

*Williams v. Rice,*
   983 F.2d 177 (10th Cir. 1993) ..............................................................42

Statutes

42 U.S.C. § 1981 ................................................................................24
42 U.S.C. § 1983 ................................................................................24
Title VII, §1981, or §1983 .................................................................24

Rules

10th Cir. R. 25.5 ................................................................................60
Fed. R. App. P. 32(a)(6) .....................................................................59
Fed. R. App. P. 32(a)(7) and (f) .........................................................59
Fed. R. App. P. 32(f) ..........................................................................59
Fed. R. App. P. 32(g) ..........................................................................59
Fed. R. Civ. P. 56(c) ...........................................................................23
Fed. R. Civ. P. 56(e) ...........................................................................23
Fed.R.Civ.P. 26 ..................................................................................14

## **STATEMENT OF PRIOR OR RELATED CASES**

There are no prior or related District Court cases or appeals.

## STATEMENT OF THE ISSUES

**A.** **THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT AS TO THE RACE DISCRIMINATION CLAIM.**

**B.** **THE DISTRICT COURT PROPERLY DETERMINED PLAINTIFF FAILED TO ADMINISTRATIVELY EXHAUST HER NATIONAL ORIGIN CLAIM.**

**C.** **EVEN IF EXHAUSTED, THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT AS TO THE NATIONAL ORIGIN DISCRIMINATION CLAIM.**

**D.** **THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT AS TO THE RETALIATION CLAIM.**

**E.** **THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO DEMONSTRATE PRETEXT.**

## I.     STATEMENT OF FACTS

Plaintiff-Appellant Emina Gerovic (Caucasian) ("Gerovic"), worked as a custodian in the Facilities Management Department of the Department of General Services for Defendant-Appellee City and County of Denver ("the City") from August 11, 2014 through November 27, 2017. **A1 at 20-42**, ¶¶ 4, 13.[1] Defendant-Appellee Leroy Lemos (Hispanic) ("Lemos"), the Operations Supervisor in the City's General Services Agency during Gerovic's tenure with the City (**A1 at 22**, ¶ 6), served on the three-person hiring committee who unanimously decided to offer

---

[1]   Gerovic referred to her appendices as A1, A2, and A3.

1

Gerovic a position with the City. **City App. V.I at 70**, 24:10.[2] Lemos recommended that Gerovic be hired. **City App. V.I at 102, ¶**3.

At the time of Gerovic's employment with the City, Kevin O'Neil (Caucasian) was the Deputy Director of Facilities Management and Lemos' supervisor.[3] **A1 at 23**, ¶ 9. At the time of Gerovic's employment with the City, Defendant-Appellee James Williamson (African-American) ("Williamson") was the Director of Facilities Management and Mr. O'Neil's supervisor. **A1 at 22**, ¶8; **City App. V.I at 76**, 25:12-14. On September 11, 2017, Murphy Robinson (African American) became the Executive Director of General Services and Mr. Williamson's supervisor.[4] **City App. V.I at 99** ¶ 1.

As the Operations Supervisor, Lemos lacked authority to issue any formal discipline independently; while he was authorized to <u>sign</u> written reprimands (and nothing higher), he could not <u>issue</u> a written reprimand absent approval from Director Williamson. **City App. V.I at 71,** 42:3-14; **City App. V.I at 102, ¶** 2. Only Williamson and Mr. Robinson, when he became employed, could issue discipline

---

[2] City Defendants referred to their appendices as "City App. V.I" and "City App. V.II."

[3] Gerovic testified that Mr. O'Neil did not discriminate against her. **City App. V.I at 77**, 26:14-15.

[4] Gerovic testified that Mr. Robinson did not in any way discriminate against her or discipline her. **City App. V.I at 76**, 23:25-24:2, 24:25-25:1.

above a written reprimand to General Services employees. **City App. V.I at 126, ¶ 31.**

On September 21, 2015, Gerovic received a "verbal reprimand" from Custodial Supervisor James Stigall (Caucasian) for not wearing her safety shoes (**City App. V.I at 127**) which did not result in a pay change, change in job duties, or any other change in employment status. **A1 at 27**, ¶18c; **City App. V.I at 85**, 62:15-19. Gerovic's termination letter (**City App. V.I at 194-202**) lists her prior discipline (**City App. V.I at 200-201)** but does not state that any prior discipline was the basis for her termination. On October 1, 2015, Gerovic received a verbal warning from Custodial Supervisor Tony Rios (Hispanic) for receiving a poor to fair inspection report rating. **A1 at 27**, ¶18d, **City App. V.I at 129**. On June 13, 2016, Lemos gave Gerovic a documented counseling conversation regarding her personal use of her City-issued cell phone. **A1 at 27-28**, ¶18e; **City App. V.I at 130**. Gerovic admitted during her deposition that her use of the work phone was a "mistake." **City App. V.I at 87**, 76:19-25.

On March 17, 2017, Gerovic received a documented counseling conversation from Mr. Rios regarding her failure to answer her phone when Lemos called and the fact that she had not set up her voice mail. **A1 at 28**, ¶18f; **City App. V.I at 88**, 88:6-89:1; **City App. V.I at 146**. Gerovic testified that the March 17, 2017, documented counseling had nothing to do with her not being Hispanic. **City App.**

3

**V.I at 89**, 90:16-18. Lemos' testimony clearly states that his investigation regarding Gerovic's work cell phone resulted in a documented counseling conversation; it does not state this was part of the reason for her termination. **A2 at 218-219**, 96:13-97:17.

On May 4, 2017, Lemos issued Gerovic a Written Reprimand Disciplinary Action (revised), which stated on March 16, 2017, Lemos received a phone call from an irate Denver Motor Vehicles (DMV) office customer, Brian J. (African American), who called with Daniel G. (witness to incident) standing next to him so that he could hear the complaint to verify and correct anything Brian said. **City App. V.I at 149**. Brian told Lemos that "he entered the Arie P. Taylor Building (APT) via the unlocked East entrance;" "proceeded down the stairs to the 1st floor lobby to await the DMV office to open, where he encountered Daniel G. also waiting." **City App. V.I at 72**, 52:10-53:10; **City App. V.I at 102-103** at ¶¶ 4-5, **City App. V.I at 149**. The reprimand states, "Daniel said that he got lucky and the nice city worker [Gerovic] let him in" the building. **City App. V.I at 72**, 52:10-53:10; **City App. V.I at 149**.

The written reprimand states that Gerovic then came into the lobby and told Brian, the African-American, the building was not yet open, and he needed to wait outside; but did not say the same to Daniel. This led to a verbal exchange between Gerovic and Brian that was overheard by several witnesses. **City App. V.I at 149-150**. Sequoya Palin, a HSS security agent, submitted a written statement referred to

4

in the written reprimand, which said that Gerovic told her that she let Daniel into the building. **City App. V.I at 103,** at ¶ 8, **City App. V.I at 150, City App. V.I at 157**. As stated in the written reprimand, Anne Carter, with human resources, interviewed Jerrick Perkins, another City employee. Mr. Perkins reported that Gerovic told him she was worried she was going to get into trouble for letting Daniel into the building. **City App. V.I at 122, ¶5.** Ms. Carter and Mr. Lemos met with Gerovic about the incident on March 17, 2017, and Gerovic told them that she did not let Daniel into the building; they asked Gerovic to draft a written statement, which she never did. **City App. V.I at 103,** at ¶10, **City App. V.I at 122** at ¶ 8, **City App. V.I at 151, 153**. A report of the security camera footage stated Brian came through the unlocked door, but not Daniel, which matches the information that Gerovic let Daniel in through the locked door. **City App. V.I at 104, ¶ 11**, **City App. V.I at 150**.

Contrary to Gerovic's assertion, Lt. Chavez did not investigate whether she let Daniel into the building before it was open. Lt. Chavez testified under oath that he only talked to two "witnesses" but did not get their names and he did not get any written statements. **City App. V.II at 116**, CCD_ 3409:5-24. He did not talk to either of the men that had gotten into the building. **City App. V.II at 117,** CCD_3410:3-5. He did not get a written statement from Gerovic. **City App. V.II at 117,** CCD_3410:8-9. He did not review the video. **City App. V.II at 117,** CCD_3410:8-3411:2. He did not review the written witness statements that

5

Gerovic's supervisors requested. **City App. V.II at 118,** CCD_3411:18-20. He was not aware that HSS Agent Sequoia reported that Gerovic told her that Gerovic let one of the gentlemen in the building before hours. **City App. V.II at 119,** CCD_3413:22-25.

Lemos' investigation into the incident at the AP Taylor building was the basis for Gerovic's written reprimand. **City App. V.I at 147-153**. It was not the basis for her termination and is not identified as such in her termination letter. **City App. V.I at 194-201**. Lemos' testimony that Gerovic's statements were not credible was in relation to the incident at the AP Taylor Building, not in relation to Gerovic's termination. **A2 at 221**, 120:6-13. Other than the present lawsuit, Lemos has not been accused of discrimination or unequal treatment at any time during his employment with the City. **City App. V.II at 68**, 35:16-25; 36:1-8.[5]

Anna Forsberg (Caucasian), a City employee, testified under oath during Gerovic's administrative appeal of her termination that in September of 2017, Ms. Forsberg was told by her daycare provider that Gerovic was representing herself as a Denver Police Officer on her public Facebook page. Ms. Forsberg took a

---

[5]   Plaintiff asserts that Lemos is biased against Caucasians based on some of his Facebook posts. Gerovic should not be permitted to rely on Lemos' Facebook posts (**A3 at 47-49**) as they were not timely disclosed under Fed.R.Civ.P. 26. Furthermore, there is no evidence that Lemos' Facebook posts indicate a bias against white people. **City App. V.II at 76,** 194:4-196:17; **City App. V.II at 87-88**, 143:25-144:3, 145:19-21, 148:8-21; **City App. V.II at 90**, 82:9-12, 84:17-85:2, 85:16-25; **City App. V.II at 93-94**,149:9-151:8.

screenshot of the page and sent it to Anne Carter, the City's human resources representative. **City App. V.I at 176-179**.

Gerovic's public Facebook page listed her occupation as "Police Officer" and her employer as "Denver Police Department." **City App. V.I at 180-182**. It included pictures of Gerovic wearing a t-shirt with a Denver Police Department ("DPD") emblem posted in 2014 (**City App. V.I at 186**); wearing a DPD patrol person's hat posted in 2015 (**City App. V.I at 183-184**); her DPD-issued access card that also features a DPD badge posted in 2014 (**City App. V.I at 185**); and her wearing a hooded sweatshirt with a "DPD" emblem posted in 2015 (**City App. V.I at 187**); **City App. V.I at 104** at ¶ 13. In the comments section of the photographs with Gerovic wearing the police hat, a commenter refers to Gerovic as a "policewoman" in Bosnian. **City App. V.I at 123,** ¶ 12; **City App. V.I at 183-184**. Gerovic testified under oath at her administrative hearing that the photos of her wearing the police hat (**City App. V.I at 183-184,**) were taken at the clerk's office in the City's Police Administration Building ("PAB") (**City App. V.II at 78**, CCD_2234:1-9) and were posted on her Facebook page from the clerk's office in the PAB by the police officer that took the picture, per her request (**City App. V.II at 80,** 2296:22-2297:18; **City App. V.II at 83,** 2309:8-11, 23-25).

Sergeant Randy Steinke of the Denver Police Department interviewed Gerovic about her Facebook posts (**City App. V.II at 110,** 2022:3-4; **City App. V.II**

at 111, 2023:21-25), had Gerovic show him where the pictures were taken (**City App. V.II at 112**, CCD_2026:17-19), and testified under oath at Gerovic's administrative hearing that the pictures of her in the police hat were taken at the information desk in the police lobby (**City App. V.II at 112**, CCD_2026:2-3). Sgt. Steinke also testified that the picture of Gerovic with the embroidered police badge (**City App. V.I at 186**) was taken in a room in the PAB. **City App. V.II at 112, 113**, CCD_2026:18-2027:6. Finally, Gerovic testified that she took the picture of her access badge for the PAB (**City App. V.I at 185**) in the "custodian closet" at the PAB (**City App. V.II at 79**, CCD_2235:5-9). Gerovic testified that she and a police officer posted the photos. **City App. V.II at 83, 84**, CCD_2309:17-2310:6. She never testified her daughter posted the photos. She also admitted that none of the postings stated they were taken outside of working hours. **City App. V.II at 82**, CCD_2302:18-25.

Gerovic had been warned before about wearing police attire. Gerovic wore a gray DPD sweatshirt while on the clock at the PAB in 2015, and was given a "verbal warning" because it was not part of her facilities management uniform and could cause problems if she were misidentified as a police officer. **City App. V.I at 197**.

Gerovic was issued a Contemplation of Discipline letter on September 19, 2017, setting a Contemplation of Discipline meeting to take place on September 28, 2017. **City App. V.I at 123,** at ¶15, **City App. V.I at 188-191**. The only

investigating Lemos did was to view and print Gerovic's Facebook posts (**A2 at 202**, 67:13-22) and record Gerovic's statements about those posts (**A2 at 204-208**, 69:17-70:5; 70:18-25, 71:9-73:10) in the contemplation of discipline letter (**City App. V.I at 188-191, City App. V.I at 249-256, City App. V.II at 73**, 131:2-12). Gerovic does not assert that Lemos incorrectly recorded her answers.

On September 20, 2017, Lemos provided Gerovic a Notice of Change in Work Location which also changed her shift. **City App. V.I at 193**. Mr. O'Neil testified under oath during Gerovic's administrative appeal hearing that he was the one who decided to change Gerovic's location. **City App. V.I at 208**:8-20; **City App. V.I at 214**, ¶3. Gerovic met with Mr. O'Neil on September 21, 2017, regarding the location and shift change. **City App. V.I at 198-199**; **City App. V.I at 214**, ¶4, **City App. V.I at 216**. Gerovic then went and met with Mr. Robinson. **City App. V.I at 99-101**, at ¶3; **City App. V.I at 217-219; City App. V.I at 220-226**. Gerovic admitted to Mr. Robinson that she had made a mistake with her Facebook posts. **City App. V.I at 94**, 157:2-4. Gerovic testified that while she was in Mr. Robinson's office, she was "crying" and admitted she said something to the effect of "even if I killed myself to" prove how good I'm working. **City App. V.I at 94**, 155:20-156:11. Mr. Robinson heard Gerovic say she was going to kill herself, which caused him to fear for her safety. **City App. V.I at 100** at ¶ 7, **City App. V.I at 217**.

As a result, on September 22, 2017, Gerovic was placed on paid administrative leave, and she was scheduled for a fitness for duty exam. **City App. V.I at 124** at ¶¶ 21, 22; **City App. V.I at 228-229**, 105:24-106:8; **City App. V.I at 233-234**. The Administrative Leave Action Notice stated Gerovic should not report to the workplace and Ms. Carter, the HR representative, instructed her the same. **City App. V.I at 124, ¶** 21; **City App. V.I at 230**, 110:18-20; **City App. V.I at 233-234**. Despite that, Gerovic entered the workplace, a secure area in a police building, on the morning of September 22, 2017, and was discovered by her supervisor. **City App. V.I at 74**, 79:19-80:10; **City App. V.I at 105, ¶** 18; **City App. V.I at 124, ¶** 21; **City App. V.I at 231**, 119:4-10; **City App. V.I at 236**.

Therefore, the City asked HSS, the security contractor, to create a Be-on-the-Lookout Poster ("BOLO") so Gerovic's department could be aware of when she was entering City facilities during her administrative leave. **City App. V.I at 74**, 80:1-10; **City App. V.I at 230**, 110:20-25. The BOLO is directed to "HSS Employees in ALL Buildings" and states "[i]f [Gerovic] is seen entering ANY Building, contact your supervisor immediately." **City App. V.I at 237**. The BOLO did not result in any demotion, reduction in pay, or other significant change in job status. **City App. V.I at 124, ¶** 21. Gerovic was placed on administrative leave with pay for nine days from September 22, 2017, through October 3, 2017, and then was returned to her work as a custodian on the same shift with the same pay and no other change in

benefits. **City App. V.I at 95**, 167:11-22; **City App. V.I at 124, ¶ 24**; **City App. V.I at 170**.

The September 19, 2017, Contemplation of Discipline letter was subsequently revised and re-issued on October 18, 2017, to include additional information regarding the Facebook posts; Gerovic's September 20, 2017 meeting with Mr. Lemos; Gerovic's September 21, 2017 meeting with Mr. O'Neil; her September 21, 2017, meeting with Mr. Robinson; and her September 22, 2017, appearance at work when she was on administrative leave. **City App. V.I at 125**, ¶ 27; **City App. V.I at 232**, 124:12-20; **City App. V.I at 249-256**. Gerovic admitted that the October 18, 2017, Notification of Contemplation of Disciplinary Action letter was not issued because of complaints she had filed.  **City App. V.I at 96**, 191:24-192:2. In accordance with the City's Career Service Rules, a contemplation of discipline meeting was held on October 31, 2017, where Gerovic was represented by an attorney and had the opportunity to discuss everything in the Contemplation of Discipline Letter. **City App. V.I at 125**, ¶ 28.

After the contemplation meeting, Defendant Williamson made the determination to terminate Gerovic's employment and testified under oath to that effect at Gerovic's administrative appeal hearing of her termination. **City App. V.I at 259-261**.  Gerovic testified that Williamson told her that Lemos made the decision regarding her May 2017 <u>written reprimand</u>.  **A2 at 159-160**, 113:13-114:2; **A2 at**

**162**, 116:2-7.  Gerovic did not testify that Williamson told her Lemos made the decision about her <u>termination</u>.  Lemos was not involved in the decision to terminate Gerovic. **City App. V.I at 73**, 76:23-77:2; **City App. V.I at 106**, ¶ 21; **City App. V.I at 262-263**, ¶3. There is no evidence that Lemos even made a recommendation whether Gerovic or any other employee should be disciplined or terminated. **City App. V.I at 73-74**, 76:8-14, 76:23-77:2, 77:10-78:2; **City App. V.II at 69-70**, 45:22-46:4. Contrary to Gerovic's assertion (Opening Brf. p. 20), the cited pages of O'Neil's testimony from Gerovic's administrative hearing (**A3 at 35-37**) do not state "that the ultimate decision [termination] by Williamson relied on information provided by Lemos."  On November 27, 2017, Williamson issued a Notification of Dismissal to Gerovic. **City App. V.I at 194-202**.  The City never replaced Gerovic. **City App. V.I at 107**, ¶ 26.

Gerovic filed her EEOC Charge on September 21, 2018, and checked the boxes for "retaliation," "race," and "color," but did not check the box for "national origin discrimination." **City App. V.I at 76**, 22:20-23:4; **City App. V.I at 268-273**. It is clear that the EEOC itself was not on notice that Gerovic had a national origin claim since it described Gerovic's charge as "because of her color, not-specified, and race, white."  **City App. V.II at 95**.

## II.    SUMMARY OF THE ARGUMENT

The district court properly granted summary judgment in favor of City Defendants (collectively Defendants City and County of Denver, Leroy Lemos, and James Williamson).[6] First, Gerovic's reverse race discrimination claim fails because she provided no evidence that the City would not have terminated her but for her status as a non-Latino Caucasian. Gerovic's supervisor, Lemos, was Hispanic; his supervisor was Caucasian; and his supervisor, Williamson, the one that ultimately had the authority and made the decision to terminate Gerovic's employment was African-American. The City terminated Gerovic's employment for the reasons cited in her termination letter, including her public Facebook posts stating that she was a police officer and her dishonesty surrounding those posts. The City terminated the employment of a similarly situated Hispanic employee—an employee with the same supervisor who committed conduct of comparable seriousness—who violated the City's dishonesty rules.

Second, the district court properly determined that Gerovic failed to administratively exhaust her national origin claim. Gerovic concedes that she did not check the "national origin" box on her EEOC charge. Additionally, the content of her charge did not put the EEOC nor City Defendants on notice of a national

---

[6] Gerovic is not appealing that portion of the order granting summary judgment to Defendants Murphy Robinson and Kevin O'Neil. Opening Brf. n.2.

origin claim. The EEOC described Gerovic's claim as "**because of her color, not-specified, and race, white**."  Even if Gerovic had properly exhausted a national origin claim, the district court properly granted summary judgment because Gerovic failed to establish a *prima facie* case by alleging any facts giving rise to an inference of discrimination based on her national origin.

Third, the district court district court properly granted summary judgment as to Gerovic's retaliation claim. Gerovic proffers no evidence of a causal connection—let alone a "but for" causal connection—between her alleged protected activity and the decision to terminate her employment. Gerovic failed to prove a causal connection because she neither alleged nor proved that Williamson knew of her alleged complaints to others about Lemos.

Finally, even assuming that Gerovic had evidence of a prima facie case of discrimination or retaliation, City Defendants articulated legitimate, non-discriminatory reasons for terminating Gerovic's employment.  Therefore, Gerovic had the burden to present evidence that the City's reasons were unworthy of credence—a mere pretext for discrimination or retaliation. The district court properly granted summary judgment based on Gerovic's failure to demonstrate pretext. Gerovic did not present any evidence aside from her own subjective belief that the City or Williamson exaggerated the seriousness of her misconduct.  Gerovic provides no evidence that Lemos (assuming he was involved) or Williamson shifted

rationales; that they did not actually believe Gerovic was dishonest; or that either of them ever contradicted their statements that Gerovic was dishonest.

## III.  ARGUMENT

### A.  STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings" and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material only if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

While the initial burden is on the moving party to demonstrate there are no genuine issues of material fact, this burden may be discharged by showing an absence of evidence to support an essential element of the non-movant's claim. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). The non-movant must proffer evidence demonstrating the existence of a *genuine* material issue of fact for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact."). A fact is "material" if it pertains to an element

of a claim or defense; a factual dispute is "genuine" if the evidence is so

contradictory that if the matter went to trial, a reasonable jury could return a verdict

for either party. *Anderson*, 477 U.S. at 248.

### B. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT AS TO GEROVIC'S RACE DISCRIMINATION CLAIM.

#### 1. *McDonnell Douglas* Framework.

As pertinent here, Gerovic alleged that City Defendants discriminated against

her in violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981

through 42 U.S.C. § 1983. Regardless of whether the claim is brought pursuant to

Title VII, §1981, or §1983, the establishment of a *prima facie* case is the same.

*Fulcher v. City of Wichita*, 387 Fed.Appx. 861, 864 (10th Cir. 2010) (unpublished)

("the elements of a discrimination lawsuit are the same whether it is brought under

§§ 1981 or 1983 or Title VII"); *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d

1220, 1225-26 (10th Cir. 2000) (applying *McDonnell Douglas* to §1981 and §1983);

*Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 852 (10th Cir. 2000) (liability under

Title VII and §1981 are coextensive).

Where, as here, there is no direct evidence of discrimination, the burden-

shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04

(1973) applies. Under this framework, Gerovic bore the initial burden of establishing

a *prima facie* case of discrimination/retaliation. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). If she did, the burden would shift to City Defendants to state a legitimate, non-discriminatory reason for the adverse action. *Id.* This is a burden of production, not of persuasion. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089 (1981).

If City Defendants articulated a nondiscriminatory reason, the court would be required to grant summary judgment in their favor unless Gerovic could have then shown a genuine issue of material fact as to whether the stated reason for the adverse action was pretextual. The "ultimate burden" of proving intentional discrimination remains "at all times" with Gerovic. *Id.* at 253.

> 2. <u>Modified *prima facie* standard in "reverse discrimination" cases.</u>

Gerovic alleged in her complaint that the City discriminated against her based on her race/color (Caucasian). **A1 at 33**. Because Gerovic is Caucasian and not a member of a minority or historically disfavored group, her claim is one for reverse race/color discrimination. *Lyons v. Red Roof Inns, Inc*., No. 04–1360, 130 F. App'x 957, 963 (10th Cir. 2005) (unpublished), *Livingston v. Roadway Exp., Inc.,* 802 F.2d 1250, 1251 (10th Cir. 1986). Gerovic's burden to establish a *prima facie* case under a reverse discrimination theory "requires a stronger showing" than in traditional discrimination actions. *Argo v. Blue Cross & Blue Shield of Kan., Inc*., 452 F.3d 113, 1201 (10th Cir. 2006).

To assert a *prima face* case of reverse race/color discrimination, Gerovic was required to demonstrate either: background circumstances which demonstrate that the defendant is that unusual employer who discriminates against the majority or, alternatively, that but for Gerovic's status the challenged employment decision would not have occurred. *See Adamson v. Multi–Cmty. Diversified Servs., Inc.,* 514 F.3d 1136, 1149 (10th Cir. 2008); *Lyons,* 130 F.App'x at 963. Gerovic concedes in her Opening Brief that the "but for" standard[7] applies to her burden to establish a *prima facie* case relying on *Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir. 1992). Opening Brf. p. 21.

3.   The district court properly determined that Gerovic failed to meet the "but for" standard.

The City terminated Gerovic's employment for the reasons cited in her termination letter, including her public Facebook posts stating that she was a police

---

[7]  Plaintiff claims that the "but for" standard is "a highly fact specific" standard and cites several cases within this Circuit where the standard has been satisfied.  Opening Brf. p. 21-22. However, the cases she cites do not hold it is a "highly fact specific standard" and there are a number of cases which have held the standard was not met. *See Cumming v. Questa Sch. Bd. of Educ.*, No. CV 17-376 KG/KBM, 2019 WL 652848, at *7 (D.N.M. Feb. 15, 2019) (unpublished), *Mitchell v. City of Wichita, Kansas*, 140 F. App'x 767, 781 (10th Cir. 2005) (unpublished), *Dickerson v. Bd. of Trustees of Metro. State Univ. of Denver*, No. 19-CV-2087-WJM-SKC, 2021 WL 492483, at *6 (D. Colo. Feb. 10, 2021) (unpublished), *Castleberry v. Boeing Co.*, 880 F. Supp. 1435, 1440 (D. Kan. 1995).

officer, her ongoing dishonesty surrounding those posts and other incidents, and her negative comments about other employees. **City App. V.I at 194-201**. This misconduct was serious and violated the City's Career Service Rules. *Id.* Gerovic proffers no evidence that the City would not have terminated her, but for her status as a Caucasian or non-Latino. To the contrary, the evidence demonstrates the City terminated Viola Chacon, a Hispanic, and the sole custodian with a prior disciplinary history similar to Gerovic's, who also had Lemos as her supervisor, and who—like Gerovic—violated the Career Service Rule prohibiting dishonesty. **City App. V.I at 106-107, ¶24; City App. V.I at 274-280.** For these reasons alone, Gerovic failed to satisfy the burden imposed on a reverse-discrimination plaintiff in establishing a *prima facie* case, and the district court dismissed her claim accordingly.

Gerovic's assertion that she "submitted substantial evidence" that she would not have been terminated but-for her race is misleading, inaccurate, and conflates her own conjecture with probative facts. Opening Brf. p. 23. First, Gerovic maintains that she satisfied her but-for burden because former HR representative Christina Howard stated that "Denver's ordinary response to an employee apparently misrepresenting the nature of their employment with the City in a Facebook profile would be to 'clarify expectations' and not to terminate the employee." Opening Brf. pp. 23-24. The e-mail cited in purported support of this proposition says nothing about the "City's ordinary response," says nothing about whether an employee could

or would be terminated in this situation, and does not address a situation where an employee has violated the Career Service Rule prohibiting dishonesty (let alone for the second time). **A3 at 99**. The email also discusses employees who committed misconduct "outside of work," (**A3 at 99)** whereas Gerovic's Facebook photos were taken at work and posted at work. **City App. V.II at 54-58, RSUMF ¶¶**85, 86.[8]

Gerovic also attempts to establish but-for causation by comparing Hispanic individuals that she claims, "were not disciplined for acts similar to those for which [she] was purportedly fired." Opening Brf. p. 24. The burden is on Gerovic to show she is similarly situated to the employees with whom she is comparing herself. *Watts v. City of Norman,* 270 F.3d 1288, 1293 (10th Cir. 2001). Individuals are considered "similarly situated" when they deal with the same supervisor. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1404 (10th Cir. 1997).  Employees who are similarly situated

---

[8]  Gerovic testified that the photos of her wearing the police hat (**City App. V.I at 183-184**,) were taken at the clerk's office in the PAB (**City App. V.II at 78**, CCD_2234:1-9) and were posted on her Facebook page from the clerk's office in the PAB by the police officer that took the picture, per her request (**City App. V.II at 80,**  2296:22-2297:18; **City App. V.II at 83,** 2309:8-11, 23-25). Sgt. Steinke testified the pictures of her in the police hat were taken at the information desk in the police lobby.  **City App. V.II at 112**, CCD_2026:2-3. He also testified that the picture of Gerovic with the embroidered police badge (**City App. V.I at 186**) was taken in a room in the PAB. **City App. V.II at 112, 113**, CCD_2026:18-2027:6. Gerovic testified that she took the picture of her access badge for the PAB (**City App. V.I at 185**) in the "custodian closet" at the PAB. **City App. V.II at 79**, CCD_2235:5-9.

must also have been disciplined for conduct of "comparable seriousness." *Kendrick,* at 1230.

To make such a showing, Gerovic must prove that the comparators are "similarly-situated in all respects," *i.e.*, had the same supervisor, were subject to the same standards, and engaged in the same misconduct without such differentiating circumstances that would distinguish their misconduct or the employer's treatment of them. *Brainard v. City of Topeka*, 597 Fed.Appx. 974, 979 (10th Cir. 2015) (unpublished) (employee with same title but different responsibilities and experience was not similarly situated to the plaintiff). Gerovic, however, failed to proffer any competent summary judgment evidence to the district court that other non-White custodians who engaged in conduct similar to hers were not terminated for that conduct. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

First, Gerovic discusses Viola Chacon. Opening Brf. p. 24. However, it is undisputed that the City <u>terminated</u> Hispanic custodian Viola Chacon, the same as Gerovic, for a dishonesty violation. **City App. V.I at 106-107, ¶24**; **City App. V.I at 274-280**. Gerovic's insistence that Ms. Chacon "merely received a 10-day suspension, instead of a termination" for her <u>first</u> act of dishonesty (Opening Brf. p. 24) ignores that Gerovic <u>merely</u> received a <u>written</u> <u>reprimand</u> for her <u>first</u> act of dishonesty (being dishonest about letting the man into the building (**City App. V.I at 147-154**), a lesser form of discipline than Ms. Chacon. **City App. V.II at 32, 47;**

**RSUMF** ¶25, 68. Nor can Hispanic employee Danielle Garcia serve as a comparator. Opening Brf. p. 24. Ms. Garcia was not a custodian, worked for the Utility Department, worked under different supervisors, had been employed substantially longer, received less prior discipline and, was demoted for misconduct that did not include a dishonesty violation.[9] **City App. V.I at 107, ¶25; City App. V.I at 282-288; City App. V.II at 97; City App. V.II at 48, RSUMF ¶¶** 69-70.

Gerovic's comparison to Teresa Luyando (Opening Brf. p. 24) is likewise unavailing, as Ms. Luyando was employed substantially longer than Gerovic and there is no evidence that Ms. Luyando was dishonest on more than one occasion and Gerovic provides only unsupported speculation and hearsay regarding Ms. Luyando's conduct. **City App. V.II at 49,** RSUMF ¶71. *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings[; they] must be based on more than mere speculation, conjecture, or surmise.") Similarly, Gerovic's vague allegations regarding Supervisor Yvonne Chavez and Sharon Romero's alleged "harassment" of her (Opening Brf. p. 24) are hearsay, irrelevant, unsupported by

---

[9]  Gerovic falsely states that Ms. Garcia was given a "short suspension pay cut," (Opening Brf. p. 24), despite admitting elsewhere that Ms. Garcia was demoted.  **A2 at 122**, ¶69; **City App. V.II at 74-75**, 180:18-182:11; **City App. V.II at 86**, 139:18-140:17; **City App. V.II at 92**, 143:25-145:12.

competent evidence (**City App. V.II at 50-51,** RSUMF ¶¶ 76, 78), and do not create

a genuine issue for trial on her reverse discrimination claim.[10]

Gerovic complains that the district court held that her "comparisons were

insufficiently similar" and claims that the relevant legal standard does not require

that she provide examples of conduct identical to her own. Opening Brf. p. 25.

Gerovic believes that "evidence that comparators received preferential treatment is

sufficient." *Id.* Gerovic relies on *Bonner v. Casaus,* No. CIV 07-1205 MV/WDS,

2009 WL 10708924, at *7 (D.N.M. Feb. 25, 2009) (unpublished).[11] However, the

court in *Bonner* analyzed the facts of that case under the alternate theory that the

employer, "Defendant Sandoval County is one of those unusual employers who

discriminate against the majority." 2009 WL 10708924, at *6. Contrary to *Bonner*,

this case is proceeding under the "but-for" analysis. Furthermore, the district court

---

[10] Even assuming that Gerovic identified similarly-situated Hispanic employees with
the same position and supervisor, and who had engaged in similar misconduct but
were not terminated, "[m]erely finding that people have been treated differently
stops short of the crucial question: *why* people have been treated differently."
*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1321 (10th Cir. 1992) (emphasis in
original). Gerovic provides no evidence, beyond her own subjective belief, to show
that an <u>unlawful,</u> anti-Caucasian motive explains any alleged difference in treatment.

[11] Plaintiff also relies on *Kimble v. Wisconsin Dep't of Workforce Dev.*, 690 F. Supp.
2d 765, 771 (E.D. Wis. 2010) and *United States Dep't of Health & Hum. Servs.*, 564
F. Supp. 3d 834, 850 (D.S.D. 2021) regarding establishing that an employee is
similarly situated. Opening Brf. p, 27. Neither of these cases have been cited by any
court within the Tenth Circuit. Therefore, they do not have any precedential value
to this Court especially in light of the plethora of cases regarding this issue within
this Circuit.

in the present case did not hold that the comparator conduct had to be "identical" to Gerovic's (**A3 at 135**), but it was "within the district court's discretion to conclude that none of these employees' misconduct was comparable . . . ." *Aman v. Dillon Companies, Inc.*, 645 F. App'x 719, 728 (10th Cir. 2016) (unpublished).

"The burden is on the plaintiff to demonstrate he is similarly situated to the employees to whom he is comparing himself." *Kelley v. Goodyear Tire & Rubber Co.,* 220 F.3d 1174, 1178 (10th Cir. 2000). To survive summary judgment, Gerovic must prove that employees who are similarly situated must also have been disciplined for conduct of "comparable seriousness." *Kendrick,* 220 F.3d at 1230. "A company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct." *Id.* at 1233. The decision in *Kendrick* determined that a plaintiff who was disciplined for coming into physical contact with a supervisor was not similarly situated to an employee who verbally threatened a supervisor with a crowbar. *See also E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) (employee chronically late to work, that often made personal calls on her company-issued cell phone during work hours; and that often could not be found in her office when her staff needed her was not similarly situated to employee who was tardy or who drank behind the dealership during late evening business hours because his conduct did not prevent him or others from completing their duties). *Donez v. Leprino Foods, Inc.*, No. 21-1212, 2022 WL

500549, at *8 (10th Cir. Feb. 18, 2022) (unpublished) (conduct was not of comparable seriousness because although both made physical contact with co-workers, that contact was qualitatively different). Here, Gerovic simply did not provide comparators whose misconduct was of comparable seriousness—lying about taking a plant (Opening Brf. p. 13, 32) is not as serious as lying about letting a White man into a building before hours, but not a Black man; or lying about being a police officer.

Even if, as Plaintiff hopes, preferential treatment were enough, there is no evidence of such treatment in this case. As "background . . . of preferential treatment," Gerovic claims that Yvonne Chavez performed a "white glove inspection" where Gerovic cleaned, but did not do the same for Hispanic custodians. Opening Brf. p. 25. Gerovic provides no evidence to support this allegation other than her own speculation which is insufficient to survive summary judgment. **City App. V.II at 28, 50-51,** RSUMF ¶¶12, 76. *Bones,* 366 F.3d at 875. Gerovic claims David Chavez was paid $.50 per hour more than she was at his time of hire (Opening Brf. p. 25), but she entirely ignores his employment history. At the time Mr. Chavez was hired by the City, he had been a Facilities Manager at DPS for 22 years. **City App. V.I at 106, ¶**23. Gerovic claims that a verbal reprimand given by her supervisor James Stigall (Caucasian) (**A3 at 31-32**), was given at the direction of Lemos, while another employee, John Gandara, was not disciplined for the same offense. Opening

Brf. p. 25. Again, however, Gerovic failed to provide any actual evidence of this to defeat summary judgment. **City App. V.II at 50,** RSUMF ¶73.

Gerovic next claims error because the district court held Gerovic failed to provide the discipline histories of her comparators. Opening Brf. p. 28. However, the district court properly cited *Kendrick*, 220 F.3d at 1232, for its holding that comparators must be subject to the same performance standards e.g., discipline histories. **A3 at 135**. Furthermore, the case law is clear, "[a] court should also compare the relevant employment circumstances, <u>such as work history</u> . . . ." *Aramburu*, 112 F.3d at 1404 (emphasis added).

Gerovic then claims, without any factual or legal citation whatsoever, that the discipline history was "superfluous" because the "serious infractions" of the comparators "outweighed" Gerovic's "relatively trivial" infractions." Opening Brf. p. 28. Gerovic's subjective beliefs about the seriousness of her conduct are not suitable for summary judgment. "[I]t is the <u>manager's</u> perception of the employee's performance that is relevant, not the plaintiff's subjective evaluation of [her] own relative performance." *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) (emphasis added).[12] *See also Robinson v. Barrett*, 823 F.App'x 606, 612 (10th Cir.

---

[12]  A plaintiff can establish an inference of discrimination by showing that similarly situated employees were treated differently. *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). However, that same evidence can be used to establish pretext (*Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173-74 (10th Cir. 2005) (where comparison to others similarly situated is the method chosen by the

2020). Courts "afford substantial latitude to employers in making discipline related decisions, and are reluctant to act as a super personnel department that second guesses employers' business judgments." *Salguero v. City of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004) (internal quotations omitted). Therefore, Gerovic's belief that her misconduct is trivial is not the standard by which her conduct is judged.

Gerovic claims that the district court improperly held her responsible for identifying the supervisors of her comparators and that according to *Kimble v. Wisconsin Dep't of Workforce Dev.*, 690 F. Supp. 2d 765 (E.D. Wis. 2010), it is not a requirement that comparators work for identical supervisors. Opening Brf. p. 28. To the contrary, in the Tenth Circuit to be "similarly situated" to the plaintiff, the other employee must "share <u>the same</u> supervisor" or decision maker. *E.E.O.C. v. BCI Coca–Cola Bottling Co. of Los Angeles,* 450 F.3d 476, 489 (10th Cir. 2006) (emphasis added). *See also Payan v. United Parcel Serv.*, 792 F. App'x 634, 648 (10th Cir. 2019).

> This is because different treatment by itself does not always indicate pretext. Differences in disciplinary decisions "may be explained by the fact that the discipline was administered by different supervisors, or that the events occurred at different times when the company's attitudes toward certain infractions were different." *E.E.O.C. v. Flasher Co.,* 986 F.2d 1312, 1320 (10th Cir.1992) (quotations and citations omitted).

---

plaintiff to raise an inference of discrimination, evidence may be analyzed at the pretext stage). *Furr, Robinson,* and *Salguero*, *infra* are all pretext cases.

*Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014). The burden is on Gerovic to show she is similarly situated to the employees with whom she is comparing herself. *Watts v. City of Norman,* 270 F.3d 1288, 1293 (10th Cir. 2001).

Instead of meeting that burden, Gerovic contends the district court should have inferred that all of her comparators had the same supervisor she did, Lemos, based on his title. Opening Brf. p. 28.  However, Gerovic provides no evidence or legal authority that Lemos' title alone renders him the supervisor over all of the comparators.

Apparently recognizing that she cannot identify similarly-situated custodians, Gerovic claims the district court failed to consider her argument that evidence of racial bias by a coworker is sufficient to raise a question of fact as to "but for" causation. Opening Brf. p. 29-31. Gerovic argues she satisfied her burden because her supervisor, Lemos, was motivated by racial bias against her, and that such bias improperly affected his investigations that led directly to the termination of her employment. *Id.*  Gerovic relies on *Bowdish v. Fed. Express Corp.*, 699 F.Supp.2d 1306, 1316-17 (W.D.Okla. 2010) (Opening Brf. pp. 29-30), however, contrary to her assertion, that case did not address whether the plaintiff had satisfied the <u>but-for standard</u>, but instead addressed whether that plaintiff had established background circumstances supporting an inference that the defendant was one of those unusual employers who discriminates against the majority.  *Id*. at 1316, n.10.

Unlike here, the plaintiff in *Bowdish* satisfied his *prima facie* burden by "present[ing] facts and evidence" that the employer discriminated against the majority by: (1) employing a disproportionate percentage of minorities; (2) implementing an affirmative action plan; (3) assessing manager performance and offering incentives based on the diversity of the workforce; (4) supporting charitable organizations promoting minority causes; and (5) the minority manager stating that she wanted to increase diversity in the position occupied by the plaintiff. *Id*. at 1316-17. No such evidence exists here and Gerovic is proceeding under the but-for standard.

Gerovic also relies on *Dudark v. Sw. Med. Ctr., LLC*, No. CIV-13-401-M, 2014 WL 1745049, *3 (W.D.Okla. May 1, 2014) (unpublished). Opening Brf. p. 30. There, the court held the plaintiff met the but-for standard where four former employees and other undisclosed parties accused the plaintiff's African-American supervisor of racial discrimination, and the plaintiff "produced evidence" that the employer may have disciplined African-American employees more leniently. Here, in contrast, the alleged discriminator, Lemos, has never (other than this lawsuit) been accused of any discrimination (**City App. V.II at 68,** 35:16-36:8) and there is no evidence of disparate treatment of other Caucasian employees, beyond Gerovic's own subjective assertions (**City App. V.II at 46-51,** RSUMF ¶¶ 66-78).

29

Gerovic claims without citation to the record that she has submitted evidence that Lemos was racially biased against non-Hispanic Caucasians and that he controlled or substantially contributed to the investigations and ultimate decision to terminate her. Opening Brf. p. 31. It is Gerovic's burden to ensure that the factual dispute is portrayed with particularity without depending on this Court or the district court to conduct its own search of the record. *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004). Termination decisions were beyond Lemos' authority. **City App. V.I at 71,** 42:3-14; **City App. V.I at 102**, at ¶2. Gerovic claims that while Williamson made the "formal" decision to terminate her, Williamson told her in May 2017 that he "could do nothing and that it was Lemos who made the decision." Opening Brf. p. 31. This is but one example of Gerovic's attempts to distort the record—the May 2017 discussion that Gerovic had with Williamson regarding the "decision" Lemos made refers to a <u>written reprimand</u>, not her termination. **A3 at 159-160**, 113:13-114:2; **A3 at 162,** 116:2-7; **City App. V.II at 26-27, 29, 40, 51, RSUMF ¶¶** 10, 14, 51, 79. It is clear that this discussion could not have been in reference to Gerovic's termination because her termination did not occur until November 2017. **City App. V.I at 194-201**. Gerovic also distorts the record when she states, "O'Neil testified that the ultimate decision by Williamson relied on information provided by Lemos." Opening Brf. p. 31. The cited pages of O'Neil's

testimony from Gerovic's administrative hearing do not refer to Williamson's decision to terminate Gerovic. **A3 at 35-37**.

Gerovic refers to the "investigations" that Lemos conducted. Lemos' investigations regarding Gerovic's cell phone usage (Opening Brf. p. 32) and her misconduct at the Arie P. Taylor building (Opening Brf. p. 31-32) had nothing to do with her termination.   Instead, they resulted in a documented counseling and a written reprimand, respectively. **City App. V.I at 130, 146, 147-153, 194-202**. While Gerovic insinuates discriminatory animus in Lemos' review of her Facebook posts (Opening Brf 31-32), Gerovic does not allege that Lemos instigated the review or altered her posts in any manner. **City App. V.I at 175-187; City App. V.II at 33, 34, 54-57,** RSUMF ¶¶28, 29, 85. The false content of the posts themselves is undisputed. *Id*. Similarly, Gerovic provides no connection between Lemos' involvement in the BOLO posting and her termination. Opening Brf. p. 32; **City App. V.II at 24-26, 63-64,** RSUMF ¶¶8, 100.

Gerovic contends that Lemos disregarded her complaints of harassment, but the cited pages of the record do not contain that information.  Opening Brf. 31 citing **A2 at 127, 152**. Additionally, Gerovic states that she testified that she "told Williamson that Lemos was harassing her because she was not Hispanic." Opening Brf. 31 citing **A2 at 134**. However, there is no such testimony at that record cite. Nor does Gerovic provide admissible evidence that Lemos is "demeaning to non-

Hispanic Caucasians in general." Opening Brf. p. 31. Her reliance on a Facebook graphic reposted by Lemos (Opening Brf. p. 31) misses the mark completely, as the graphics do not denote animus, were posted <u>years after</u> Gerovic's termination and were in no way related to her termination, and Gerovic failed to disclose this document during discovery. **City App. V.II at 40-41,** RSUMF ¶52.

Simply put, Gerovic has not made the "stronger showing" necessary to establish a case of reverse discrimination—that she would not have been terminated "but for" being Caucasian and the district court properly granted summary judgment.

## C.    THE DISTRICT COURT PROPERLY DETERMINED THAT GEROVIC FAILED TO ADMINISTRATIVELY EXHAUST HER NATIONAL ORIGIN CLAIM.

Gerovic did not exhaust a claim for national origin discrimination because she did not check the "national origin" box on her EEOC Charge; her Charge only alleges race and color discrimination as a "non-Latino," and, therefore, the district court properly granted summary judgment. **A3 at 111-115**. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998) (presumption that a plaintiff is not asserting claims of boxes not checked), *Hankishiyev v. ARUP Labs*., 732 Fed.Appx. 673, 677-78 (10th Cir. Apr. 25, 2018) (unpublished) (same).[13]

---

[13] *See also Rader v. U.S.D. 259 Wichita Pub. Sch.*, 844 F. Supp. 2d 1206, 1210 (D. Kan. 2011) (failure to exhaust national original claim where plaintiff did not mark the box for national origin discrimination and charge did not refer to national origin discrimination); *Azzun v. Kansas Dep't of Health & Env't*, No. CIV.A. 10-2009-KHV, 2011 WL 903901, at *4 (D. Kan. Mar. 15, 2011) (unpublished) (failure to

Gerovic concedes, as she must, that she did not check the "national origin" box, but asserts her Charge includes a national original claim because it states she is "a naturalized US citizen" whose "birthplace [is] Bosnia-Herzegovina" and because "[t]here is no mention of her non-Hispanic status in either of the first two paragraphs." Opening Br. at 33. Gerovic claims that a reasonable interpretation of these paragraphs is that the discrimination resulted from her country of origin. *Id.* However, an equally reasonable interpretation is that the citizenship and birthplace statements are nothing more than background information. The statement does not tell the EEOC whether Gerovic became a U.S. citizen when she was 5, 25, or 50 or whether anyone with the City had any knowledge of her birthplace. There are no allegations within her Charge that anyone with the City ever made a comment

---

exhaust where plaintiff did not mark the space for race or national origin discrimination.) *Pervez v. Home Depot, U.S.A., Inc.*, No. 07-CV-01116-LTB-KMT, 2008 WL 115548, at *4 (D. Colo. Jan. 10, 2008) (unpublished) (failure to exhaust race discrimination claim where only national origin box checked); *Ferrell v. Ezpawn Oklahoma, Inc.*, No. CIV-18-607-SLP, 2019 WL 3207797, at *5 (W.D. Okla. July 16, 2019) (unpublished) (failure to exhaust where national origin box not checked); *Tootle v. Wyatt-Edison Charter Sch.*, No. 10-CV-02421-REB-KMT, 2011 WL 5834678, at *3 (D. Colo. Oct. 25, 2011) (unpublished), *report and recommendation adopted,* No. 10-CV-02421-REB-KMT, 2011 WL 5834795 (D. Colo. Nov. 21, 2011) (unpublished) (failure to exhaust claim of race discrimination where EEOC charge only checked the box for national original discrimination); *Jones v. Maritz Rsch. Co.*, No. 14-2467-SAC, 2014 WL 6977935, at *2 (D. Kan. Dec. 9, 2014) (unpublished) (where only the box for race checked and not the box for national origin, only a race claim may be brought); *Freeman v. State of Kan.*, No. 97-2530-JWL, 1998 WL 259899, at *5 (D. Kan. Apr. 10, 1998) (unpublished) (national origin claim dismissed where box not checked, and charge did not contain any allegations).

regarding her birthplace or a comment about her being Bosnian nor does her charge contain any information regarding the national origins of any comparators. **A3 at 113-15**.

Gerovic also claims the charge describes a national origin claim because it states her belief that "Mr. Lemos has a pattern of disciplining employees under him more harshly when the employee is *not Latino*." Opening Brf. p. 33, quoting **A3 at 114** (emphasis supplied). Gerovic states that "*not Latino*" is "a description that encompasses both non-Hispanic Caucasians in general and Bosnians in particular." Opening Brf. p. 33 (emphasis added).  It is unclear how "*not Latino,*" is related to Bosnians in particular and not Serbians, Romanians, Croatians, Bulgarians, Hungarians, Russians, Germans, Danish, Irish, Italians, Scottish, Swiss, Finish, Greek, Lebanese, Saudi Arabians, Iranians, Ethiopians, Libyans or Americans. Gerovic's assertion that she was discriminated against because she was *not Latino* is not a statement that put the City on notice of a national origin claim.

A plaintiff's Title VII claim is limited to the scope of the administrative investigation that reasonably can be expected to follow the discriminatory acts alleged in the charge of discrimination submitted to the EEOC. *Jones v. United Parcel Service, Inc.,* 502 F.3d 1176, 1186 (10th Cir. 2007); *Alabi v. Vilsack*, 860 F. App'x 576, 579-581 (10th Cir. 2021). However, the two statements Gerovic relies on in her charge are not enough to cause the EEOC to investigate a national origin

claim. In fact, the EEOC itself described Gerovic's charge <u>only as "because of her</u> <u>color</u>, not-specified, and <u>race</u>, white." **City App. V.II at 95** (emphasis added).

A national origin claim was not administratively exhausted and was not properly before the district court. Accordingly, the district court properly granted summary judgment. **A3 at 135-36** ("The EEOC complaint, like the Complaint in this case, is devoid of any allegations that Gerovic was treated differently because she came from Bosnia or even that her national origin was ever mentioned or alluded to by any Defendant.").

### D. EVEN IF EXHAUSTED, THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT AS TO THE NATIONAL ORIGIN DISCRIMINATION CLAIM.

As master of her Second Amended Complaint, Gerovic captioned Claim I as "Title VII Race and Color Discrimination." **A1 at 33**. She did not assert a cause of action for "Title VII National Origin Discrimination." **A1 at 33-41**. Rather, Gerovic attempted to advance a new theory of national origin discrimination at the summary judgment stage of the lawsuit. The introduction of a cause of action via summary judgment briefing has been rejected by this Circuit. *See Evans v. McDonald's Corp*., 936 F.2d 1087, 1091 (10th Cir. 1991). Accordingly, the district court properly dismissed this claim on summary judgment.

The district court held that, even had Gerovic effectively exhausted and pled a claim for national origin discrimination, she failed to establish a *prima facie* case

35

by alleging <u>any</u> facts giving rise to an inference of discrimination based on national origin. **A3 at 136**. Regardless of the context of the claim, "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick*, 220 F.3d at 1227, *quoting Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089 (1981). As stated previously, generally, a plaintiff can demonstrate an inference of discrimination by showing that similarly situated employees were treated differently. *Hysten*, 296 F.3d at 1181. In discriminatory discharge cases, this showing could also be made by demonstrating that job was not eliminated after the discharge, or by showing that someone else was hired to replace the plaintiff. *Perry v. Woodward,* 199 F.3d 1126 (10th Cir.1999). A plaintiff may also proffer evidence of discriminatory remarks by a decision-maker in connection with the challenged employment decision. *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005). Gerovic makes none of these showings.

As set forth above, Gerovic provided no evidence to the district court that she was treated differently than employees from countries other than Bosnia. In fact, Gerovic did not provide evidence of the countries of origin of any other employees. Gerovic did not provide evidence of anti-Bosnian remarks made by the decisionmaker, Williamson, and even assuming Lemos was somehow involved in

the termination decision, Gerovic did not provide any evidence that Lemos made anti-Bosnian remarks.

Gerovic attempts to claim her position was left open and then attempts to claim that she was replaced by a Hispanic. Opening Brf. p.36. This is directly contrary to Gerovic's specific admission that the City did not replace her. **City App. V.II at 42,** OSUMF ¶ 54 ("Gerovic was never replaced by the City. Undisputed"); *see also* **City App. V.I at 107, ¶ 26**). Contrary to Gerovic's assertion, the City did not replace her with Juanita Ramos. Opening Brf. p.36. Ms. Ramos became employed by the City in June 1991 and as a custodian in February 1996, therefore, she was employed long before Gerovic and it is false that she was hired to replace Gerovic. **City App. V.II at 96-97, ¶**2. After Gerovic was reassigned to the Castro Building on October 4, 2017, Ms. Ramos and other City custodians simply provided their regular custodial duties in Gerovic's prior assigned police building. *Id.*¶3. In July 2018, custodial duties in that building and other police buildings were turned over to contract workers with Roth Property Maintenance. *Id.* Gerovic's position was never replaced by the City. *Id.* ¶4.

Gerovic also faces an especially high hurdle in establishing an inference of discrimination in this lawsuit given that the alleged discriminator was involved in the initial decision to hire her. *Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1183 (10th Cir. 2006) (where the alleged discriminator hired the plaintiff there is an

inference that no discriminatory animus motivated the employer's actions). This action is based entirely on Gerovic's position that Lemos discriminated against employees who were not Latino, and that the City allegedly allowed Lemos to carry out that discrimination. It is, however, undisputed that Lemos was on the three-person hiring committee for Gerovic's employment, and that Lemos in fact recommended that the City hire Gerovic. **City App. V.I at 70,** 24:10-13, **City App. V.I at 102,** ¶3. There is a strong presumption that Lemos would not hire someone in Gerovic's class only to discriminate against her later.

Even if Gerovic had asserted a national origin claim and could demonstrate a prima facie case of discrimination, then the burden shifts to City Defendants to show a legitimate, nondiscriminatory reason for the adverse action. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). As discussed above, the City Defendants established multiple, legitimate non-discriminatory reasons for Gerovic's termination. As such, even if Gerovic had asserted a national origin claim, the burden shifted to her to either show that her national origin "was a determinative factor in Defendant's employment decisions, or show that the Defendant's explanation for its action was merely pretext." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Pretext is addressed below, in Section F.

**E.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT AS TO GEROVIC'S RETALIATION CLAIM.**

Gerovic's claim of retaliation fares no better. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in a protected activity;[14] (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action. *Argo*, 452 F.3d at 1202. Gerovic's termination clearly satisfies the second prerequisite. However, the lack of objective evidence connecting her termination with protected activity defeats this claim as a matter of law.

Gerovic bears an especially onerous burden in establishing the necessary causal nexus because "retaliation claims must be proved according to traditional principles of but-for causation." *University of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2533 (2013). Evidence of the requisite but-for causation "must be based on more than mere speculation, conjecture, or surmise." *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014). Here, Gerovic proffers no evidence of a causal connection—let alone a "but for" causal connection—between her alleged protected activity and Williamson's decision to terminate her employment.

---

[14] Although all the testimonial and documentary evidence in this action (with the exception of Gerovic's testimony) demonstrates that she did not report that Lemos was treating her unfairly *because of her race/color*, the City did not dispute this element solely for purposes of summary judgment.

Specifically, there is no evidence of unlawful intent on the part of Williamson to terminate her based on her alleged prior complaints about Lemos. Gerovic testified that she "can't say now" whether Williamson retaliated against her and that "[o]nly Leroy Lemos" retaliated against her and only because "she has a great relationship with the police department, and he doesn't." **City App. V.I at 98**, 207:5-23. Having a great relationship with the police department is not protected conduct. Gerovic testified that she had no evidence that Lemos knew she made complaints about him. **A2 at 182**, 202:5-13. Lemos—who did not terminate her employment—testified he was unaware that Gerovic had ever complained about him. **City App. V.II at 68**, 35:6-15. Gerovic further admitted she believes she would have received the Notification of Dismissal even if she had not made any purported complaints. **City App. V.I at 97**, 199:21-200:5.

Further defeating a showing of causation is the fact that a plaintiff asserting retaliation must demonstrate that the decision-maker knew of her purported protected activity. *Hinds v. Sprint/United Mgmt.*, 523 F.3d 1187, 1203 (10th Cir. 2008). Here, Gerovic neither alleged nor proved that Williamson knew of her alleged complaints to others about Lemos. Although Gerovic claims that she complained to Williamson about Lemos, she identifies the timing of that complaint May of 2017 (Opening Brf. p. 15), approximately six months prior to her November 27, 2017, termination, respectively. Where, as here, the adverse action is not very closely

40

connected in time to the protected activity, Gerovic must rely on additional evidence to establish causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). No such additional evidence has been proffered, defeating Gerovic's retaliation claim.

Gerovic claims her protected activity was "complaining to Anne Carter about Lemos treating her differently" in "September and October of 2017," and a September 20, 2017 email sent by Commander Ron Thomas of DPD to Mr. Robinson regarding Gerovic's purported "unfair treatment." Opening Brf. p.38. She then argues that, because she received a Contemplation of Discipline letter on September 19, 2017, and a revised letter on October 18, 2017 that "ultimately resulted in the termination of her employment" on November 27, 2017, the temporal proximity alone demonstrates the requisite causal nexus. *Id*. These attempts fail.

First, it is undisputed that the City first began investigating Gerovic's Facebook posts on September 8, 2017. **City App. V.I at 176-179; City App. V.II at 33,** RSUMF ¶28. Gerovic proffers no evidence that her alleged complaint to Ms. Carter took place prior to September 8, 2017, and the Commander's letter (**A3 at 96-97**) post-dates the initiation of the disciplinary investigation by three weeks, destroying any causal connection.

Furthermore, while the City disputes the facts relied on by Gerovic (**City App. V.II at 63,** RSUMF ¶¶ 98, 99), those facts are immaterial because to establish

causation, Gerovic must demonstrate that the decision-maker, Williamson, was aware of her alleged complaint to Ms. Carter and the email from Cmdr. Thomas to Mr. Robinson. *See Hinds v. Sprint/United Mgmt.*, 523 F.3d 1187, 1203 (10th Cir. 2008). Gerovic proffers no such evidence.

Gerovic's final effort to establish causation rests on her argument that her complaints were about Lemos and Lemos made or heavily influenced the decision to terminate her. Opening Brf. p. 40. Again, while the City disputes that Lemos was involved in the termination decision (**City App. V.II at 26-27, 29, 40-42,** RSUMF ¶¶ 10, 14, 51, 53), this fact is immaterial because Gerovic proffers no evidence or argument that Lemos knew of Gerovic's purported complaints about him. Gerovic testified that she had no evidence that Lemos knew she made complaints about him. **A2 at 182**, 202:5-13  Lemos was unaware that Gerovic had ever complained about him. **City App. V.II at 68**, 35:6-15. This defeats a retaliation claim. *See Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).

Gerovic contends that the district court erroneously determined that she failed to cite any evidence in the record that she made a specific complaint about discrimination within a month and a half of her termination. Opening Brf. p. 38. Gerovic addressed this issue with the district court in her Motion to Alter or Amend Judgment. **A3 at 143-147**. There and here she admits her summary judgment brief contained a typographical error directing the Court to the wrong deposition

transcript, but that the correct deposition transcript was, in fact, included with Gerovic's moving papers, and the district court could have considered it in ruling on summary judgment. Opening Brf. p. 38, **A3 at 143-147.** Gerovic's assertion that the district court should have ignored her own admittedly erroneous record citation and should instead have sifted through the record to find support for her allegation mischaracterizes the court's role in the adjudication of summary judgment motions. Contrary to Gerovic's position, courts are not obligated to search the record on a litigant's behalf to find evidence supporting her summary judgment interests. *See Cross v. Home Depot*, 390 F.3d 1283, 120 (10th Cir. 2004) (explaining that, in the summary judgment context, "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without … depending on the trial court to conduct its own search of the record."); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him.").

Second, and more significantly, the amendment of the judgment "to note that Gerovic met her burden to raise genuine issues of material fact as to the causation element" of a *prima facie* retaliation claim would be futile, as that would not alter the ultimate judgment in favor of the City Defendants. Adopting Gerovic's proposed revision would not somehow create a *prima facie* case of retaliation or demonstrate that the City's reason for terminating her was pretextual. In rendering summary

judgment in favor of the City Defendants on Gerovic's retaliation claim, the district court "assume[d] that Gerovic engaged in some protected activity by complaining about Defendant Lemos 'treating her differently because she was not Hispanic and constantly harassing her.'" **A3 at 139**.  On that basis, in granting summary judgment, Gerovic notes that the district court held that Gerovic had "not shown that Defendant Williamson, who made the decision to fire her, knew about any…protected activity." Opening Brf. p. 39-40, quoting **A3 at 139**.

Gerovic claims, again without any legal citation whatsoever, that "a plaintiff relying on temporal proximity to establish an inference of causal connection bears no burden to prove such additional facts." Opening Brf. p. 40.  To the contrary, "[A] plaintiff may show a causal connection by presenting evidence that the 'temporal proximity' between the protected conduct and the materially adverse action 'justif[ies] an inference of retaliatory motive.' . . . [b]ut a plaintiff who seeks to show causation in this manner still must present evidence that the decisionmakers *knew* of the protected conduct." *Singh v. Cordle,* 936 F.3d 1022, 1038, 1043 (10th Cir. 2019) quoting *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171-72 (10th Cir. 2006) (emphasis added).  Gerovic failed to make this showing and, therefore, the district court properly granted summary judgment on the retaliation claim.

Finally, even assuming that Gerovic could make out a *prima facie* case of retaliation, as set forth in Section F below, she cannot demonstrate that the City's articulated reasons for her termination are pretextual. Therefore, the district court properly granted summary judgment in favor of the City on Gerovic's retaliation claim.

## F.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO DEMONSTRATE PRETEXT.

Even assuming that Gerovic had supported a *prima facie* case of discrimination or retaliation, the City articulated legitimate, non-discriminatory reasons for Gerovic's termination: namely, Gerovic violated multiple Career Service Rules, including Rule 16-29(D) prohibiting "[a]ny act of dishonesty;"[15] Gerovic falsely identified herself as a Denver Police Officer on her public Facebook page; Gerovic told other falsehoods; and Gerovic failed to follow protocols and was disruptive in the workplace. **City App. V.I at 54-58, 61-63** RSUMF at ¶¶ 28-30, 32, 34-36, 40-41, 47, 48, 58-61. These constitute legitimate reasons "in terms that are not facially prohibited by" anti-discrimination statutes. *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007); *see also Murray v. City of Sapulpa*, 45 F.3d

---

[15] Plaintiff had also received a written reprimand for dishonesty four months earlier. (**City App. V.I at 51-53,** RSUMF at ¶¶ 18-26.)

1417, 1421 (10th Cir. 1995) (employees' rules violations constituted nondiscriminatory reasons for their terminations).

Because the City articulated facially non-discriminatory reasons for Gerovic's termination, the burden shifted back to Gerovic to demonstrate that these reasons were pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 113 S.Ct. 2742 (1993). To satisfy this burden, Gerovic had to present evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo*, 452 F.3d at 1203. "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment" and "a plaintiff's allegations alone will not defeat summary judgment." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323-24 (10th Cir. 1997).

Gerovic cites, but completely misquotes this Court's holding in *Stroup v. United Airlines, Inc.*, 26 F.4th 1147 (10th Cir. 2022). Opening Brf. p. 41-42. Unlike the present case, *Stroup* involved an age claim that resulted in a jury verdict in favor of the employees who brought the case. Therefore, the jury heard a multitude of witnesses and the jury made credibility determinations based on that testimony. This Court held, "the <u>jury</u> reasonably could have determined that [the defendant's

46

witness] was not credible." *Id*. at 1161 (emphasis added). This Court "concluded that there was substantial evidence to support <u>the jury's verdict</u>. More specifically, there was sufficient evidence for <u>the jury</u> to reasonably determine that United's stated reasons for disciplining plaintiffs were a pretext for unlawful age discrimination." *Id.*(emphasis added).

Here, in contrast, Gerovic proffered no objective proof that the City's reasons for her termination were a mere pretext for discrimination or retaliation. *Hall v. Interstate Brands Corp.,* No. 08-2073-EFM, 2009 WL 2043570 (D. Kan. July 13, 2009), *aff'd,* 395 F. App'x 519 (10th Cir. 2010) (unpublished) (no pretext where for each adverse action against employee, he had violated company policy or improperly performed his job); *Debord v. Mercy Health Sys. of Kan., Inc*., 860 F.Supp.2d 1263 (D. Kan. 2012), *aff'd*, 737 F.3d 642 (10th Cir. 2013) (no pretext where employer terminated employee based on posts on a social networking site and employee denied making those posts).

Gerovic asserts a theory of pretext whereby the "Defendants exaggerated the seriousness of the Facebook posts, and fabricated or exaggerated misconduct by Gerovic, as pretext to discharge her for retaliatory or discriminatory reasons." Opening Br. pp. 44-45. In support of this theory, Gerovic argues that "[t]here is no evidence that Gerovic held herself out to anyone, live, and represent that she was a police officer, or that any actual person was confused or misled by her Facebook

posts, which Gerovic stated were merely 'a joke.'" Opening Br. p. 44. Gerovic also claims pretext because she was praised by her coworkers, disputed many of the events, and goes on to claim that the district court improperly assumed disputed facts about the serious nature of her conduct.

However, Gerovic did not present any evidence aside from her own subjective belief that the City or Williamson exaggerated the seriousness of her misconduct. The investigation showed that the comments in response to the photos she posted on Facebook were serious and supportive, and none of the comments indicated the photos were a joke. **City App. V.I at 123, ¶¶** 12, 13; **City App. V.I at 183-184**. Williamson wrote in the dismissal letter:

> Falsely identifying yourself to the public as a police officer is both troubling and unacceptable. . . . By wearing clothing items that have police badges, posting pictures of yourself in police issued clothing and posting a copy of your police building access card, you can create public confusion regarding your role, responsibilities and duties. It can also be dangerous to you and the public, should someone need police assistance or intervention and come to you for help. Representing yourself a [sic] police officer, as a joke or to impress others, is not only deceitful, but could be perceived as impersonating a police officer, which is a serious offense.

**A1 at 181-82**.

Gerovic's belief in her performance, her characterization of her posts, or her belief that the City exaggerated its response, is not enough to get past summary judgment. "A court must look at the facts as they appeared to the person making the

48

termination decision, not as they may have appeared to the terminated employee." *Kendrick*, 220 F.3d at 1231. "[I]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *Robinson v. Barrett*, 823 F.App'x 606, 612 (10th Cir. 2020). Courts "afford substantial latitude to employers in making discipline related decisions, and are reluctant to act as a super personnel department that second guesses employers' business judgments." *Salguero v. City of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004).

To show pretext, Gerovic must produce evidence that the City shifted rationales; that the proffered justification was false, incoherent, or contradictory; or evidence that similarly-situated employees were treated differently. *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011). Gerovic provides no evidence that Lemos (assuming he was involved) or Williamson shifted rationales; that they did not actually believe Gerovic was dishonest; or that either of them ever contradicted their statements that Gerovic was dishonest.

Because the "[f]ailure to come forward with evidence of pretext will entitle [the employer] to [summary] judgment," (*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir. 1994)), the district court properly entered summary judgment in favor of the City Defendants on Gerovic's discrimination and retaliation claims.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the district court properly granted summary judgment in favor of City Defendants as to Gerovic's discrimination and retaliation claims brought pursuant to Title VII and §§ 1981 and 1983.  City Defendants respectfully request an order affirming the decision of the district court.

Respectfully submitted this 23rd day of August 2022.

SHELBY A. FELTON
JONATHAN D. SAADEH
Assistant City Attorneys

*s/ Shelby A. Felton*
Denver City Attorney's Office
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
E-mail        shelby.felton@denvergov.org
               Jonathan.saadeh@denvergov.org
*Attorneys for Defendants-Appellees City and County of Denver, Department of General Services and Facilities Management, Leroy Lemos, Murphy Robinson, James Williamson, and Kevin O'Neil*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPE FACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

I hereby certify pursuant to Fed. R. App. P. 32(g) that this Appellees' Response Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and (f) because, excluding the parts of the response brief exempted by Fed. R. App. P. 32(f), this Response Brief contains <u>12,244</u> words.

I further certify that this response brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because this response brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

<u>s/    Shelby A. Felton</u>
*Attorney for City Defendants-Appellees*

51

## CERTIFICATE OF PRIVACY REDACTIONS, DIGITAL
## SUBMISSION, AND VIRUS PROTECTION

I hereby certify that all required privacy redactions pursuant to 10th Cir. R. 25.5 have been made to this Appellees' Response Brief.

I also certify that the hard copies of this response brief submitted to the Court are exact copies of the version submitted electronically to the Court.

Additionally, I certify that the electronic submission of this response brief has been scanned for viruses with the most recent version of McAfee VirusScan Enterprise + Anti Spyware Enterprise, Version 8.8.0 (8.8.0.1599), updated <u>August 22, 2022</u>, and according to that program, is free of viruses.

<u>s/      Shelby A. Felton</u>
*Attorney for City Defendants-Appellees*

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of August 2022, I electronically filed the **DEFENDANTS-APPELLEES CITY AND COUNTY OF DENVER'S, LEROY LEMOS', MURPHY ROBINSON'S, KEVIN O'NEIL'S, AND JAMES E. WILLIAMSON'S AMENDED RESPONSE BRIEF** using the CM/ECF NextGen system, which will send notification of such filing to the following:

Clerk of the Tenth Circuit U.S. Court of Appeals
Byron White U.S. Courthouse
1823 Stout St.
Denver, CO 80257

Nathan Davidovich
Davidovich Law Firm, LLC
501 S. Cherry St., Suite 1100
Denver, Colorado 80246
nathandavidovich@talk-law.com

Michael A. Watts
Retherford, Mullen & Moore
2 N. Cascade, Suite 500
Colorado Springs, Colorado 80903
mwatts@rmmattys.com


*s/ Nichole Bryant*
Paralegal, Denver City Attorney's Office