Appeal No. 22-1148

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

EMINA GEROVIC,

*Plaintiff-Appellant,*

v.

CITY AND COUNTY OF DENVER, *et al.*

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Colorado in Case No. 1:19-cv-03710-RM-NRN
Judge Raymond P. Moore

_____

**APPELLANT'S REPLY BRIEF**
_____

Nathan Davidovich
Davidovich Law Firm, LLC
501 S. Cherry St.
Suite 1100
Denver, Colorado 80246-1325
Tel: 303-825-5529
Fax: 720-409-3668
nathandavidovich@talk-law.com
*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................... ii

Table of Authorities .............................................................................. iii

Argument................................................................................................1

I. The District Court Erred by Granting the City Defendants' Motion for Summary Judgment ...................................................................11

    A. Gerovic met her burden to submit evidence sufficient to support a reasonable inference that she would not have been fired were she not a non-Hispanic Caucasian ......................................................1

    B. Gerovic's EEOC complaint gave sufficient notice of her national origin discrimination claim ...................................................6

    C. The lack of a reference to national origin in the captions in Gerovic's Amended Complaint are not fatal to her claim of discrimination based on national origin...............................................................8

    D. Temporal proximity alone constitutes sufficient evidence to raise a fact question as to a causal connection between Gerovic's firing and her protected activities.............................................................9

    E. Gerovic submitted sufficient evidence to raise a question of fact as to whether the City Defendants' reasons for firing her were pretextual.12

II. The District Court Erroneously Granted the HSS Defendants' Motion for Summary Judgment as to Gerovic's Section 1983 Claims. .....................15

Conclusion ...........................................................................................20

Certificate of Compliance With Type-Volume Limit

Certificate of Service

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998)...........................2, 13

*Carney v. City & Cnty. of Denver*, 534 F.3d 1269 (10th Cir. 2008) .........................1

*Carrero v. Robinson*, No. CIV.A. 05CV02414MSKC, 2007 WL 1655350 (D. Colo. June 5, 2007) ................................................................................10

*Daneshvar v. Graphic Tech., Inc.,* 18 F.Supp.2d 1277 (D.Kan.1998) ......................6

*Dudark v. Sw. Med. Ctr., LLC*, No. CIV-13-401-M, 2014 WL 1745049 (W.D. Okla. May 1, 2014) ................................................................................5

*Eagle v. Louisiana & S. Life Ins. Co.*, 464 F.2d 607 (10th Cir. 1972) .....................3

*E.E.O.C. v. PVNF, LLC*, 487 F.3d 790 (10th Cir. 2007).....................................9, 11

*Fuqua v. City of Altus*, No. CIV-17-115-HE, 2018 WL 1702339 (W.D. Okla. Apr. 6, 2018) ................................................................................15, 17

*Greer v. City of Wichita, Kansas*, 943 F.3d 1320 (10th Cir. 2019).....................4, 13

*Grimes v. Greenblatt*, 47 Colo. 495, 107 P. 1111 (1910)........................................8

*Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253 (10th Cir.1998) .........................6

*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215 (10th Cir. 2006).....................11

*Herrera v. Santa Fe Pub. Sch.*, 41 F. Supp. 3d 1027 (D.N.M. 2014) ...............18, 19

*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187 (10th Cir. 2008)......................13

*Jackson v. City & Cty. of Denver*, 628 F. Supp. 2d 1275 (D. Colo. 2008) .............13

*Johnson v. Salt Lake City Sch. Dist.*, 499 F. Supp. 3d 1126 (D. Utah 2020) ..........11

*Jones v. United Parcel Serv.,* 502 F.3d 1176 (10th Cir.2007)...................................6

*Maestas v. Segura*, 416 F.3d 1182, 1190–92 (10th Cir. 2005)...................15, 16, 17

*Nguyen v. Gambro BCT, Inc.,* 242 F. App'x 483 (10th Cir. 2007)...........................9

*Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992)..................................1

*United States v. Otuonye*, 995 F.3d 1191 (10th Cir. 2021) ......................................5

*Parker State Bank v. Pennington*, 9 F.2d 966 (8th Cir. 1925)..................................8

*Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999)...............................................9

*Rivera v. City & County of Denver,* 365 F.3d 912 (10th Cir.2004) .....................9, 13

*Salazar v. City of Com. City*, 535 F. App'x 692 (10th Cir. 2013)...............15, 16, 17

*Salazar-Limon v. City of Houston, Tex.*, 137 S. Ct. 1277,  197 L. Ed. 2d 751 (2017)
......................................................................................................................................3

*Singh v. Cordle,* 936 F.3d 1022 (10th Cir. 2019) ...................................................11

*Stroup v. United Airlines, Inc.*, 26 F.4th 1147 (10th Cir. 2022).............................12

*White v. York Int'l Corp.*, 45 F.3d 357 (10th Cir. 1995).........................................12

Now comes Plaintiff-Appellant Emina Gerovic ("Gerovic") and submits this, her Brief in Reply to DEFENDANTS-APPELLEES CITY AND COUNTY OF DENVER'S, LEROY LEMOS', MURPHY ROBINSON'S, KEVIN O'NEIL'S, AND JAMES E. WILLIAMSON'S AMENDED RESPONSE BRIEF ("City Defendants' Brief") and HSS DEFENDANTS-APPELLEES' RESPONSE BRIEF ("HSS Defendants' Brief").

## ARGUMENT

I.    **The District Court Erred by Granting the City Defendants' Motion for Summary Judgment**

A.    **Gerovic met her burden to present evidence supporting a reasonable inference that she would not have been fired were she not a non-Hispanic Caucasian.**

On summary judgment, Gerovic was required only to present evidence sufficient to support a *reasonable inference* that she would not have been fired but for her race. See *Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir. 1992), *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). However, in their brief, the City Defendants overstate Gerovic's burden to make out a *prima facie* demonstration of discrimination, claiming that Gerovic must show "*that she would not have been terminated* 'but for' being Caucasian." City Defendants' Brief at p. 32 (emphasis supplied). Gerovic did not bear the burden to prove conclusively that her race or national origin was the reason for her firing, or to establish that there was no evidence from which a reasonable person might draw

1

a contrary conclusion, but only to submit enough evidence to raise a question of fact.

The City Defendants also seek to obscure the law that, on summary judgment, all disputed issues of fact must be viewed in the *non-movant's* favor. See *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The City Defendants repeatedly cite to their own version of various disputed facts, but gloss over the fact that their evidence is controverted by Gerovic's. To wit, they claim that Gerovic, like Viola Chacon, was not terminated for her "first act of dishonesty (being dishonest about letting the man into the building)," (City Defendants' Brief at p. 21), but ignore the fact that Gerovic testified that she was not dishonest with her employer and explicitly disputed that she had let anyone, of any race, into the building. (A2-127, 153-155). The City Defendants cite only to their own written reprimand for their version of the "building incident," which consists of pure hearsay, and simply ignore Gerovic's own testimony. City Defendants' Brief at pp. 4-5; City App. V.I at 147-154. In a similar vein, the City Defendants argue, falsely, that Gerovic's allegations regarding Supervisor Yvonne Chavez and Sharon Romero's disparate treatment and harassment of her are "hearsay," "irrelevant," and "unsupported by competent evidence," (City Defendants' Brief at pp. 22-23), when Gerovic was plainly an eyewitness to her own treatment and competent to testify and present evidence about it. (A1-129-130, 166). Furthermore, the City

Defendants incorrectly describe Gerovic's testimony as to the conduct of Teresa Luyando as "unsupported speculation and hearsay," (City Defendants' Brief at p. 22), when Gerovic testified that she worked directly with Teresa in the PAB and in the Castro Building and had personally viewed at least one disciplinary write up Teresa received. (A131-132).

It is black letter law that the sworn testimony of a party eyewitness is competent summary judgment evidence. See *Salazar-Limon v. City of Houston, Tex.*, 137 S. Ct. 1277, 1281, 197 L. Ed. 2d 751 (2017). While the City Defendants may dispute the facts to which Gerovic testified, "summary judgment is not proper when an issue turns on credibility." *Eagle v. Louisiana & S. Life Ins. Co.*, 464 F.2d 607, 608 (10th Cir. 1972)(citation omitted). The City Defendants apparently wish for this Court to disregard Gerovic's testimony as "self-serving" but this Court has spoken definitively on that issue:

> …[V]irtually any party's testimony can be considered "self-serving," and self-serving testimony is competent to oppose summary judgment. *See Sanchez v. Vilsack*, 695 F.3d 1174, 1180 n.4 (10th Cir. 2012) (stating that an affidavit resting on personal knowledge and setting forth admissible facts "is legally competent to oppose summary judgment, irrespective of its self-serving nature"). Even standing alone, self-serving testimony can suffice to prevent summary judgment. *See Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1309 (10th Cir. 2007) (concluding that the plaintiff's testimony was sufficient to defeat summary judgment); *accord Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried ... the misconception that uncorroborated

3

> testimony from the non-movant cannot prevent summary
> judgment because it is 'self-serving.' ")

*Greer v. City of Wichita, Kansas*, 943 F.3d 1320, 1325 (10th Cir. 2019).

The City Defendants also misapply the parties' respective burdens of proof as to the question of disparate treatment of Gerovic and her comparators. While the City Defendants are correct that it is "the manager's perception" of the relative performance of employees that is relevant to the question, (City Defendants' Brief at p. 26), they themselves have presented no evidence whatsoever regarding Gerovic's managers' perception of her performance relative to that of her Hispanic coworkers. They simply assert an opinion, unsupported by any citation, about the relative "seriousness" of "taking a plant" versus "lying about letting a White man into a building before hours, but not a Black man; or lying about being a police officer."[1] *Id.* at p. 25. However, only a page later, the City Defendants argue, hypocritically, that *Gerovic's* "subjective beliefs about the seriousness of her conduct are not suitable for summary judgment." *Id.* at p. 26. The City Defendants tacitly ask this court to take the fact that Gerovic was fired, though her comparators were not, as evidence that her managers subjectively perceived her conduct to be more egregious than her comparators' conduct. This line of reasoning simply begs the question of whether the managers acted without discriminatory motive. If the

---

[1] As noted above, Gerovic has presented evidence disputing that she engaged in either the dishonesty or conduct alleged.

mere fact of disparate disciplinary results creates a presumption that the defendants had a subjective good faith belief that the comparators' conduct was less serious, no plaintiff could ever prevail on a "disparate treatment" theory unless the managers voluntarily confessed to discriminatory intent. Instead, in the absence of direct evidence of the managers' subjective beliefs, the finder of fact must be given the opportunity to weigh the relative seriousness of the alleged conduct, and determine whether it is credible that the managers perceived a difference in performance sufficient to justify their actions.

Moreover, a plaintiff can meet her burden to submit evidence supporting a reasonable inference of "but for" causation by presenting evidence that (1) a coworker was racially biased, and (2) the biased coworker's comments or input factored into the termination decision. See *Dudark v. Sw. Med. Ctr., LLC*, No. CIV-13-401-M, 2014 WL 1745049 at *3 (W.D. Okla. May 1, 2014). For the first time on appeal, the City Defendants raise the argument that Gerovic's evidence of Lemos' racial bias is inadmissible because not disclosed in discovery. They waived that argument by failing to present it to the Trial Court. *United States v. Otuonye*, 995 F.3d 1191, 1209 (10th Cir. 2021)(Challenges to admission of evidence raised for the first time on appeal are waived).

Contrary to the City Defendants' claims, the record pages cited in Gerovic's opening brief, A3 at 35-37, do support her claim that O'Neil testified that the

ultimate decision by Williamson to terminate Gerovic's employment relied on

information provided by Lemos. O'Neil explicitly testified that *any* administration

of discipline by Williamson relied "on the information received by Mr. Lemos."

(A3 at 36), and in context, "discipline" did not exclude Gerovic's firing.

**B.** **Gerovic's EEOC complaint gave sufficient notice of her national origin discrimination claim.**

The City Defendants cite dozens of cases in support of the proposition that a

presumption exists that a plaintiff is not asserting claims of boxes not checked on

her EEOC Complaint (City Defendants' Brief at pp. 32-33)—a proposition

conceded in Gerovic's opening brief. However, they fail to acknowledge that it is a

*rebuttable* presumption See *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253,

1260 (10th Cir.1998); *Jones v. United Parcel Serv.,* 502 F.3d 1176, 1186 (10th

Cir.2007); *Daneshvar v. Graphic Tech., Inc.,* 18 F.Supp.2d 1277, 1284

(D.Kan.1998). Defendants cite no authorities whatsoever for their argument that

the other contents of Plaintiff's EEOC Complaint were insufficient to rebut the

presumption. As explained in *Daneshvar*, 18 F. Supp. 2d at 1284, a charge may

simultaneously provide notice of a race discrimination and national origin

discrimination complaint, even where it does not include "specific references" to

both, because in cases involving individuals of non-American origin the line

between the two kinds of claims is blurred:

The line between national origin discrimination and race discrimination is often not clear. *See Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 614, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) ("[T]he line between discrimination based on 'ancestry or ethnic characteristics' and discrimination based on 'place or nation of ... origin' is not a bright one.") (Brennan, J. concurring). *See also Aramburu v. Boeing Co.,* 112 F.3d 1398, 1411 n. 10 (10th Cir.1997) (claims of discrimination based on Mexican–American ancestry fall within § 1981's protection against racial discrimination). In light of plaintiff's particular claim (*i.e.,* discrimination based on Iranian ancestry and national origin), the court concludes that a discrimination claim based on race is "reasonably related" to the allegations of national origin discrimination in plaintiff's charges submitted to the KHRC and the EEOC. *See Tovar v. County of Alameda,* No. C 94–0261 SI, 1998 WL 196467, at *1 n. 1 (N.D.Cal. Apr.14, 1998) (court addressed merits of plaintiff's race claim because plaintiff's initial claim of national origin discrimination was reasonably related to claim of race discrimination); *Fraser v. New York City Bd. of Educ.,* No. 96–CIV–0625(SHS), 1998 WL 55170, at *3–4 (S.D.N.Y. Feb.10, 1998) (assuming without deciding that plaintiff's claim of race discrimination based on status as Hebrew Israelite was reasonably related to discrimination claims based on national origin, religion and color). Moreover, an investigation of plaintiff's national origin claims would necessarily include an investigation into potential race claims where, as here, the alleged underlying conduct is the same for either claim. *See Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1416 n. 7 (10th Cir.1993) ("[C]onsideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made.").

Where, as here, a foreign-born individual files an EEOC Complaint referring both her national origin and her ethnicity, and the alleged underlying conduct is the same for either claim, any competent investigation would uncover evidence of either form of discrimination.

**C.     The lack of a reference to national origin in the captions of Gerovic's Amended Complaint is not fatal to her claim of discrimination based on national origin.**

The City Defendants argue that Gerovic failed to assert a national origin discrimination claim in her Second Amended Complaint because the caption of her first claim did not refer to national origin discrimination. However, "[t]he nature of the cause of action depends upon the facts pleaded in the complaint as a whole," regardless of the caption it is given by the plaintiff. *Parker State Bank v. Pennington*, 9 F.2d 966, 970 (8th Cir. 1925)(Colorado case decided before the division of the 8th Circuit into the 10th and 8th Circuits); See also *Grimes v. Greenblatt*, 47 Colo. 495, 501, 107 P. 1111, 1115 (1910)("We are not concerned with the names which counsel assign to actions.") The Trial Court did not enter summary judgment against Gerovic on the basis of the caption of her national origin claim, and the caption is not a valid alternate basis to dismiss the claim.

Gerovic established the *prima facie* elements of her national origin discrimination claim. Gerovic's OSUMF admittedly states both that it is "undisputed" that she was never replaced by the City, (A2 at 13), and that

following her termination she was replaced by an Hispanic custodian. A2 at 26. However, the evidence cited in the OSUMF, the Declaration of Susan Tessler, makes it clear that these statements do not conflict: "Following Ms. Gerovic's termination as an employee of the City and County of Denver, her duties were taken over by floating custodians until a permanent replacement was transferred to fill her vacancy…The replacement was Juanita Ramos, an Hispanic individual, who replaced Ms. Gerovic as a custodian." A3-123-124. Gerovic asserts that the facts are as described by Ms. Tessler, but ultimately it is not relevant whether Gerovic was "replaced" by an Hispanic custodian or whether, as the City Defendants contend, the position remained open: either showing would meet Gerovic's burden to show that the job was not eliminated after her discharge. *Rivera v. City & County of Denver,* 365 F.3d 912, 920 (10th Cir.2004); *Perry v. Woodward*, 199 F.3d 1126, 1138-1140 (10th Cir. 1999); *Nguyen v. Gambro BCT, Inc.,* 242 F. App'x 483, 489 (10th Cir. 2007).

### D.    Temporal proximity alone constitutes sufficient evidence to raise a fact question as to a causal connection between Gerovic's firing and her protected activities.

The City Defendants ignore the fact that under the law of this Circuit, a causal connection between protected activity and adverse employment action may be shown by nothing but *close* temporal proximity between the protected activity and the challenged actions. See *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 804 (10th

Cir. 2007). The record does not provide a precise date when Gerovic complained to Anne Carter, but it is clear that it occurred in September and October of 2017. (A2-165-166). Commander Ron Thomas' letter on Gerovic's behalf was sent on September 20, 2017. (A3-96-97). The City attempts to argue that because these instances of protected activity may not have occurred before the *investigation* of Gerovic's facebook posts began on September 8, 2017, they could not have caused any challenged actions. However, "commencing an investigation" alone is not an adverse employment action, and September 8, 2017 is not the effective date of the City Defendants' adverse actions against Plaintiff. See *Carrero v. Robinson*, No. CIV.A. 05CV02414MSKC, 2007 WL 1655350, at \*10 (D. Colo. June 5, 2007)("The Court cannot say that an investigation alone constitutes an adverse employment action.") Unless and until an investigation results in a change in the terms and conditions of the Plaintiff's employment, it is not adverse employment action. *Id.* Thus, the adverse employment action against Plaintiff commenced on September 19, 2017, when she was given a contemplation of discipline letter setting a contemplation of discipline meeting for her Facebook posts (A1-159-160) or October 18, 2017, when she received the Notification of Contemplation of Disciplinary Action that ultimately resulted in the termination of her employment. (A1-178-186; A3-86-95). These actual adverse employment actions occurred within mere weeks of her protected activities.

The City Defendants incorrectly cite *Singh v. Cordle,* 936 F.3d 1022, 1038, 1043 (10th Cir. 2019) for the proposition that a plaintiff relying on temporal proximity must nonetheless present evidence that the decisionmakers knew of the protected conduct. City Defendants' Brief p. 44. *Singh* involved a situation where there were "approximately two months" between the protected conduct and the challenged action. *Id.* at 1043. It was therefore a case involving temporal proximity, but not events "very close in time," which include events six weeks or fewer apart. See *PVNF,* 487 F.3d at 804. Where temporal proximity is "very close in time," that fact alone is sufficient to give rise to an inference of causation. See *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) ("Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time. Otherwise, the plaintiff must offer additional evidence to establish causation."); *PVNF,* 487 F.3d at 804 (temporal proximity of 24 days or 6 weeks alone is sufficient to allow an inference of the existence of a causal connection between two events). In a case, like this one, involving proximity of six weeks or fewer, there is no additional requirement that the plaintiff show or allege that the decisionmaker knew about the alleged protected activity. See *Johnson v. Salt Lake City Sch. Dist.*, 499 F. Supp. 3d 1126, 1139 (D. Utah 2020)(No showing of knowledge required in case involving close temporal proximity).

**E.      Gerovic submitted sufficient evidence to raise a question of fact as to whether the City Defendants' reasons for firing her were pretextual.**

The City Defendants argue that Gerovic "completely misquotes" this court's holding in *Stroup v. United Airlines, Inc.*, 26 F.4th 1147 (10th Cir. 2022), but do not point to any actual discrepancy between the holding of *Stroup* and Gerovic's accurate presentation of it in her brief. City Defendants' Brief at pp. 46-47. The City Defendants merely note that *Stroup* discussed a plaintiff who met the burden to show pretext at a jury trial, whereas the instant appeal is not of a jury ruling, but of an order granting summary judgment. *Id.* In so doing, they make a distinction without a difference. The plaintiff's burden on summary judgment is merely to point to evidence from which a reasonable juror or finder of fact could find in her favor at trial. The jury in *Stroup* found for the plaintiffs on the issue of pretext because the plaintiffs showed that the employer's proffered explanations were inconsistent, that its witnesses were not credible, and that there had been procedural irregularities. *Stroup*, 26 F.4th at 1154. "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). It would completely defeat the purpose of summary judgment to hold that, under *Stroup*, a plaintiff *could* prevail, at trial, on a showing that an employer's proffered explanations are not credible, but that the employer can foreclose her ability to do so merely by bringing a

12

motion for summary judgment. The Trial Court cannot make credibility determinations on summary judgment, but where, as here, the plaintiff is able to point to inconsistencies or gaps in the employer's evidence from which a reasonable juror could conclude that the employer's proffered explanation is not credible, the plaintiff must be permitted to make her argument to the fact finder at trial. See *Jackson v. City & Cty. of Denver*, 628 F. Supp. 2d 1275, 1285 (D. Colo. 2008, citing *Rivera,*365 F.3d at 925; *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1197 (10th Cir. 2008).

The City Defendants argue, incorrectly, that "Gerovic did not present any evidence aside from her own subjective belief that the City or Williamson exaggerated the seriousness of her misconduct." City Defendants' Brief at p. 48. The fault in the City Defendants' argument is that they again assume that Gerovic's own eyewitness testimony is not competent evidence for purposes of summary judgment, or that the court should presume that it is not credible, when in fact, for purposes of summary judgment, the court must view the evidence and draw all appropriate inferences in the light most favorable to Gerovic, (*Adler*, 144 F.3d at at 670), and Gerovic's testimony is competent summary judgment evidence. *Greer*, 943 F.3d at 1325.

Gerovic testified that she was not dishonest with her employer, that the events investigated by Lemos did not occur as described, including the Building

Incident (A2-153-155), her failure to wear safety shoes, the "white glove" inspection, and her use of her cell phone (A2-109-112; 148-150; 154-155), that her Facebook posts were a joke (A1-122; A3-8), and that she deleted them immediately when confronted (A2-162-163, 205). In addition to her own testimony, Gerovic submitted other evidence from which a reasonable juror could conclude that the City Defendants' proffered explanations for her firing were not credible, including praise from her coworkers (A3-70-85), Lemos' racially inflammatory Facebook posts, (A3-47-49), and testimony from Anne Carter, and Lemos himself, that Lemos effectively controlled the investigation and discipline of Gerovic for the "misconduct" that Denver identified as bases for her dismissal. A2-187-196, 218-221; A3-25. Finally, Gerovic presented evidence that Denver's Human Resources Representative Christina Howard stated that "[a]s for city protocol [regarding Gerovic's Facebook posts] I wouldn't think is much different other than city employees activities outside of work—which can sometimes reflect their work environment. Often it is enough to let the employee know it has come to our attention and clarify expectations." A3-99. Contrary to the City Defendants' attempt to minimize the relevance of the email, it directly responded to the facts of Gerovic's personal situation and indicated that a normal response would be to communicate with the employee and "clarify expectations," not fire her.

For purposes of summary judgment, the Trial Court should have accepted all of this evidence as fact.

## II.    The District Court Erroneously Granted the HSS Defendants' Motion for Summary Judgment as to Gerovic's Section 1983 Claims

The HSS Defendants argue that they cannot be liable in the absence of evidence that they, themselves, either exercised "decision-making authority over Ms. Gerovic's BOLOs" or possessed a retaliatory or hostile motive toward Gerovic. See HSS Defendants' Brief at pp. 14-15. However, none of the cases cited by the HSS Defendants actually imposes this binary requirement.

The gravamen of the cases cited by the HSS Defendants is not that a "subordinate" defendant without "decision-making authority" who acts on another defendant's suggestion to engage in activity depriving the plaintiff of her constitutional rights is relieved of liability under §1983, but rather that a defendant *who does not otherwise appear to have "personally participated" in the decision to terminate or transfer the plaintiff* may nonetheless be liable for wrongful termination or transfer, where it is shown that he or she possessed a discriminatory or retaliatory motive and "set in motion" the events which led to the adverse employment action. See *Maestas v. Segura*, 416 F.3d 1182, 1190–92 (10th Cir. 2005); *Salazar v. City of Com. City*, 535 F. App'x 692, 701–02 (10th Cir. 2013); *Fuqua v. City of Altus*, No. CIV-17-115-HE, 2018 WL 1702339, at \*4 (W.D. Okla. Apr. 6, 2018).

In *Maestas*, the plaintiffs, employees of the City of Albuquerque's Solid Waste Management Department ("SWMD") brought an action for retaliatory transfer against the city and several defendants employed by the SWMD, alleging that plaintiffs were transferred for speaking out about waste and inefficiency concerns. Among the defendants was one Pratt, a supervisor to whom one of the plaintiffs had complained about the alleged waste and inefficiencies. Because Pratt himself was not alleged to have made the decision to transfer the plaintiffs, the court held that the requisite "causal link" between the complaint to Pratt and their transfer could exist only if Pratt "possessed a retaliatory motive which set in motion the events that ultimately led to Plaintiffs' transfers," which the plaintiffs failed to prove. *Id.*, 416 F.3d at 1190-92. *Maestas* is plainly distinguishable from the case at bar because Pratt, unlike Movants, did not have any direct involvement with the alleged constitutional deprivation, and therefore could *only* be liable under a subordinate liability theory.

*Salazar* is similar: in that case, a former employee of Commerce City alleged retaliatory and discriminatory discharge, including claims against the city's mayor and human resources director. Because neither the mayor nor the HR director had made the decision to terminate her employment, the plaintiff relied on a cat's paw theory, alleging that the mayor "participated behind the scenes and exerted his influence to bring about her termination," and that the HR director's

"involvement in drafting her termination letter and failure to investigate her discrimination complaints shows that Ms. Spencer was sufficiently involved in the termination to be liable under § 1981." *Id*. at 701-02. The court held that there was insufficient evidence to support a cat's paw argument as to either defendant. *Id*. Again, unlike the instant case, in which the Movants were directly responsible for the creation and posting of the BOLOs, *Salazar* did not involve any evidence that the defendants in question had *directly* implemented the adverse employment action. While the HR director had reviewed the draft termination letter prepared by another defendant, there was no evidence that she had provided any input, and the court found such *de minimis* involvement insufficient to support a claim. *Id.*

Finally, *Fuqua* involved a plaintiff who was a former employee of the City of Altus who alleged that he had been placed on a performance improvement plan, and ultimately fired, as a result of religious discrimination. He asserted claims against the City Clerk and Chief Financial Officer, notwithstanding the fact that it was undisputed that they had no "formal role in the evaluation of plaintiff's performance or the decision to fire him." 2018 WL 1702339, at *4. Again, the court found insufficient evidence that they had influenced the city's employment decisions vis-a-vis the plaintiff to find liability under a cat's paw theory. *Fuqua*, like *Maestas* and *Salazar*, and unlike the case at bar, involved no evidence that the

defendants in question had directly participated in the wrong that was the basis for the plaintiff's claim.

*Herrera v. Santa Fe Pub. Sch.*, 41 F. Supp. 3d 1027, 1176–77 (D.N.M. 2014) establishes that a "subordinate" defendant who *does* directly participate in the wrong may be liable for a §1983 violation, without proof of either "decision-making authority" or discriminatory or retaliatory motive. In *Herrera,* a public school had directed a private security firm to conduct allegedly improper searches and seizures of the plaintiff students' possessions. The students brought §1983 claims against the security firm. The court held that, notwithstanding the fact that the private security firm claimed it was "not responsible for the decision-making phase of the state action that harmed the Plaintiffs," it had "freely engaged" in the harmful conduct along with the state agents from the school district and was therefore a state actor for purposes of the students' §1983 claims.

The HSS Defendants attempt to distinguish *Herrera* on the basis that the court "ultimately held that the company was *not* liable for Section 1983 violations under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977) and the doctrine of qualified immunity." HSS Defendants' Brief at p. 18. However, the HSS Defendants direct this court's attention to the wrong portion of *Herrera*. *Herrera* involved two separate issues: (1) unconstitutional searches of the Plaintiffs' *persons*, as to which the court granted the security firm's motion for summary

18

judgment on immunity grounds, and (2) unconstitutional searches and seizures of the Plaintiffs' *possessions*, as to which the court *denied* the security firm's motion for summary judgment. 41 F. Supp. 3d at 1188. Notwithstanding the security firm's argument that it had not been involved in the decision-making phase of the state action, the case contained no discussion of any requirement that the students make any showing that the security firm possessed any discriminatory intent.

Although *Herrera* noted that there were additional defenses to the plaintiffs' claims regarding their possessions that the security firm had failed to assert, any purported requirement that the students make a showing of intent by the firm to violate the students' constitutional rights would have been part of their *prima facie* claim. There is no indication in any part of the one hundred sixty-one-page decision that the student plaintiffs presented any evidence of individual intent on the part of the security firm or its agents, as to any part of their claims, or that they had any obligation to do so.

Here, the HSS Defendants each personally participated in the creation and posting of the BOLOs. A2-79-81, 86-104. Although they may not have originated the idea to post the BOLOs, they had substantial decision-making authority in the content, presentation and placement of the posters, which decisions had an effect on Gerovic's rights equal to or greater than that of the simple decision by the City Defendants to create the posters in the first place. Their activities effected a

deprivation of Gerovic's constitutional rights, and the HSS Defendants therefore bore direct personal responsibility for, and were the proximate cause of, the violation.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Emina Gerovic respectfully requests that the district court's orders granting summary judgment as to her discriminatory and retaliatory discharge claims against Denver, her 42 U.S.C. §§1981 and 1983 claims against Lemos and Williamson, and her 42 U.S.C. § 1983 claims against the HSS Defendants be reversed and vacated, and that this matter be remanded to the district court for further proceedings.

Date: September 12, 2022

/s/Nathan Davidovich

Nathan Davidovich
Davidovich Law Firm, LLC
501 S. Cherry St.
Suite 1100
Denver, Colorado 80246-1325
Tel: 303-825-5529
Fax: 720-409-3668
nathandavidovich@talk-law.com
*Attorney for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4601 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2021 in Times New Roman 14-point font.

Date:  September 12, 2022                    */s/Nathan Davidovich*
                                            Nathan Davidovich
                                            Davidovich Law Firm, LLC
                                            501 S. Cherry St.
                                            Suite 1100
                                            Denver, Colorado 80246-1325
                                            Tel: 303-825-5529
                                            Fax: 720-409-3668
                                            nathandavidovich@talk-law.com
                                            *Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I certify that on this 12th day of September 2022, I electronically filed
**APPELLANT'S REPLY BRIEF** using the CM/ECF NextGen system, which will
send notification of such filing to the following:

Clerk of the Tenth Circuit U.S. Court of Appeals
Byron White U.S. Courthouse
1823 Stout St.
Denver, CO 80257

Shelby A. Felton
Jonathan D. Saadeh
Denver City Attorney's Office
201 W. Colfax Ave., Dept. 1108
Denver, CO 80202
Shelby.felton@denvergov.org
Jonathan.saadeh@denvergov.org

Michael A. Watts
Retherford, Mullen & Moore
2 N. Cascade, Suite 500
Colorado Springs, Colorado 80903
mwatts@rmmattys.com

> *s/Nathan Davidovich*
> Nathan Davidovich
> Counsel for Plaintiff-Appellant Emina Gerovic

2